**The New York Times**

U.S.

# Questions of Preferential Treatment Are Raised in Florida Sex Case

By ABBY GOODNOUGH    SEPT. 3, 2006

PALM BEACH, Fla. — In the summer and autumn of last year, when most of the mansions here stood empty behind their towering hedges, the police stealthily watched one at the end of a waterside lane. They monitored the comings and goings of its owner's private jet, subpoenaed his phone records and riffled through his trash.

The owner was Jeffrey Epstein, 53, an intensely private New York money manager with several billionaire clients. Months earlier, the stepmother of a 14-year-old girl told the Palm Beach police that a wealthy older man, whom the girl later identified as Mr. Epstein, might have had inappropriate sexual contact with her.

In sworn statements to the police, the 14-year-old and other teenage girls said a friend had arranged for them to visit Mr. Epstein's home and give him massages, usually in their underwear, in exchange for cash.

Most of the girls, according to the police, said Mr. Epstein had masturbated during the massages, and a few said he had penetrated them with his fingers or penis. They identified him in photos and accurately described the inside of his home. Some recalled that his employees had fed them snacks or rented them cars.

Mr. Epstein pleaded not guilty in August to the crime he was ultimately charged with, soliciting prostitution. But at a time when prosecutors around the nation have become increasingly severe in dealing with people accused of sex offenses, the case has raised questions about whether Mr. Epstein's prominence won him preferential treatment.

By the account of the police, they found probable cause to charge Mr. Epstein with much more serious offenses: one count of lewd and lascivious molestation and four counts of unlawful sexual activity with a minor.

But instead of proceeding with such charges on his own, the Palm Beach County state attorney took the rare step of presenting a broad range of possible charges to a grand jury, which indicted Mr. Epstein in July on the lesser count. In Florida, prosecutors usually refer only capital cases to grand juries.

Even before the indictment, the Palm Beach police chief, Michael Reiter, had accused prosecutors of giving Mr. Epstein special treatment and asked the state attorney, Barry E. Krischer, to remove himself from the case.

In an editorial, The Palm Beach Post attacked Mr. Krischer, a Democrat whose post is elective, saying the public had been left "to wonder whether the system tilted in favor of a wealthy, well-connected alleged perpetrator and against very young girls who are alleged victims of sex crimes."

The case has taken a toll on the reputation of Mr. Epstein, who owns a palatial home in Manhattan, has pledged $30 million to Harvard and once flew former President Bill Clinton on his 727. Politicians including Eliot Spitzer, a Democratic candidate for governor in New York, and Gov. Bill Richardson of New Mexico, also a Democrat, have returned campaign contributions from him.

But Mr. Epstein fought back, assembling a team of star lawyers, including Gerald B. Lefcourt and Alan M. Dershowitz, a friend of his, to look into the backgrounds of his young accusers.

Mr. Lefcourt says that the police acted "outrageously" and that his client has been wrongfully dragged through the mud.

"He disputes that he ever had sex with any under-age person or anything like that," said Mr. Lefcourt, whose clients have included Russell Crowe, Martha Stewart and Abbie Hoffman.

Neither the police nor the state attorney's office would discuss the case in detail. But the police released a thick report on the 13-month investigation after the indictment was unsealed in late July.

The police started investigating Mr. Epstein in March 2005, almost immediately after they were contacted by the stepmother of the 14-year-old, who, according to the report, was in a special school for students with disciplinary problems.

The girl, the report said, told the police that an older friend had "offered her an opportunity to make money" and had driven her to Mr. Epstein's house one Sunday. The friend, identified by the police as Haley Robson, a local community college student, told the girl to say she was 18 if Mr. Epstein asked, the report said.

The girl told the police that Mr. Epstein's assistant had led her upstairs to a room with a massage table and that Mr. Epstein had come in and told her to remove her clothes. She said Mr. Epstein had masturbated as she massaged him, had pressed a vibrator against her underwear and had given her $300 afterward.

In October, the police interviewed Ms. Robson, then 19, who told them Mr. Epstein had routinely paid her to bring teenage girls to his home. The police then interviewed a total of 5 alleged victims and 17 witnesses, many of whom told similar stories about what they had observed or participated in at Mr. Epstein's home. According to the report, at least one said Mr. Epstein had engaged in intercourse with her.

Mr. Lefcourt, his lawyer, said one girl who told the police of having had sex with Mr. Epstein as a minor had lied about both the sex and her age and had not shown up for grand jury questioning. He also said Mr. Epstein had passed a lie-detector test clearing him of any sexual involvement with under-age girls.

A spokeswoman for the Palm Beach police said that early this year, the police went to Mr. Krischer, the state attorney, intending to apply for warrants to arrest

Mr. Epstein. Instead, she said, they were told that Mr. Krischer would convene a grand jury to examine the evidence and decide what charges, if any, to bring.

Around that time, the police report said, Mr. Dershowitz met with prosecutors to share information about the accusers, including statements they had posted on MySpace.com, the social networking site, concerning use of drugs and alcohol. According to the report, Mr. Krischer's office then decided to delay the grand jury session for several months.

The Palm Beach police grew frustrated, the report said, and on May 1 the department asked prosecutors to approve warrants to arrest Mr. Epstein.

Chief Reiter also wrote Mr. Krischer questioning "the unusual course that your office's handling of this matter has taken" and suggesting that Mr. Krischer disqualify himself. Chief Reiter refused several requests to be interviewed, and his spokeswoman would not say explicitly why he had urged the prosecutor to step aside.

Mike Edmondson, a spokesman for Mr. Krischer, said the state attorney's office sometimes sent noncapital cases to grand juries when there were questions about witness credibility. Mr. Krischer does not recommend a particular charge in such cases, Mr. Edmondson said, but gives the grand jury a list of possible charges.

Bruce J. Winick, a law professor at the University of Miami, said that while prosecutors in Florida rarely referred noncapital cases to grand juries, they sometimes did so with sensitive cases to be extra-cautious.

Mr. Lefcourt said the police were wrong to have released the report so soon, especially without correcting information that later proved wrong. He cited his assertion that one accuser had lied about her age, adding that she had also been arrested on drug charges and had been fired by her employer for stealing.

"What I'm trying to focus on," Mr. Lefcourt said, "is, What's motivating the selective and misleading release of information to the public?"

A version of this article appears in print on , on Page A19 of the New York edition with the headline: Questions of Preferential Treatment Are Raised in Florida Sex Case.

© 2017 The New York Times Company