*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*86 Chambers Street*
*New York, New York 10007*

May 1, 2020

MEMO ENDORSED:

The Government's motion for a stay is denied. The Government's deadline to produce the Vaughn index is extended to July 1, 2020. The Clerk of Court is directed to terminate Dkt. Nos. 19, 20.

SO ORDERED.

*[signature: Paul S. Gardephe]*

Dated: May 6, 2020

**BY ECF**
The Honorable Paul G. Gardephe
United States District Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re:  *Radar Online, LLC v. FBI,* 17 Civ. 3956 (PGG)

Dear Judge Gardephe:

I write on behalf of the defendant the Federal Bureau of Investigation ("FBI") in this action brought Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, relating to a request Plaintiff Robertson made for all documents relating to the FBI's investigation and prosecution of Jeffrey Edward Epstein ("Epstein Request").  The FBI respectfully requests an indefinite stay of this matter due to issues arising from the COVID-19 pandemic, as detailed below and in the attached declaration.  *See* Exhibit A (Declaration of David M. Hardy, dated April 24, 2020).  The FBI proposes that on May 29, 2020, it submit a status update to the Court that will advise the Court of the status of its operations.  For the same reason, the FBI requests that the Court deny Plaintiff's letter motion to compel production of a draft *Vaughn* index by June 1, 2020 [ECF No. 19].

In accordance with the deadlines set forth in the stipulation and order dated October 5, 2017 (ECF No. 17), the FBI completed processing of responsive records and produced any records, or portions thereof, that were not subject to an exemption.  The FBI's deadline for production of a draft *Vaughn* index is May 1, 2020.

The FBI was unable to commence  work on the draft *Vaughn* index, however, because the Record/Information Dissemination Section ("RIDS") of the FBI, which performs FOIA-related functions, has been closed due to the COVID-19 pandemic since March 17, 2020.  As of April 29, 2020, it has re-opened at a greatly reduced capacity, leaving uncertainty as to the pace it will be able to produce a draft *Vaughn* index.  Because of the need for social distancing, no more than 1/3 of the RIDS workforce will be permitted to work on any particular day.  Exhibit A at ¶ 18.  Moreover, a significant percentage of RIDS staff are unable to return to work at the present time because, *inter alia*, they are in higher risk categories or have child care responsibilities.  *Id.* at ¶ 19.

The Court should therefore deny Plaintiff's request to compel production of a draft *Vaughn* index by June 1, 2020, as it may adversely impact the health and safety of RIDS employees.

Plaintiff's counsel incorrectly states that the Government has had since October 4, 2017, to prepare a draft *Vaughn* index. During this time, however, the Government was processing and producing non-exempt records to Plaintiff, on a monthly basis, which is a necessary precurser to the production of a *Vaughn* index. It was only when those productions were complete and final determinations had been made with respect to withholdings, that the FBI was in a position to complete a *Vaughn* index. This is precisely why the agreed-upon schedule originally provided the FBI with 60 days after the production of documents was complete to prepare its index.

Further, as explained in the declaration, RIDS employees are not telework capable and the FBI does not have the technology resources necessary to continue preparation of a *Vaughn* index on a remote basis. *See* Exhibit A at ¶¶ 14-16.

Finally, while Plaintiff seeks to compel production of the *Vaughn* index by a date certain because the RIDS has now reopened, it will be operating for the foreseeable future in an extremely limited capacity as outlined above and in the Hardy Declaration. *Id.* at ¶¶ 17-21. The pace at which it will be able to continue working on the *Vaughn* index in this case is uncertain, as the FBI personnel assigned to this matter will be working reduced hours for the foreseeable future.

Accordingly, we respectfully request a stay of this matter, and propose that the Government file a status report on May 29, 2020, that updates the Court on the status of RIDS operations and the earliest date by which the FBI anticipates that it can, consistent with the health and safety concerns outlined in the Hardy Declaration, complete its preparation of the draft *Vaughn* index.

We thank the Court for consideration of this matter.

    Respectfully submitted,

    GEFFREY S. BERMAN
    United States Attorney for the
    Southern District of New York
    Attorney for Defendant

By:    /s/Kirti Reddy
    KIRTI VAIDYA REDDY
    Assistant United States Attorney
    86 Chambers Street, Third Floor
    New York, New York 10007
    Telephone: (212) 637-2751
    Fax: (212) 637-2786
    Kirti.reddy@usdoj.gov

## DECLARATION OF DAVID M. HARDY

I, David M. Hardy, declare as follows:

(1)     I am the Section Chief of the Record/Information Dissemination Section ("RIDS"), Information Management Division ("IMD"), in Winchester, Virginia. I have held this position since August 1, 2002. Prior to my joining the Federal Bureau of Investigation ("FBI"), from May 1, 2001 to July 31, 2002, I was the Assistant Judge Advocate General of the Navy for Civil Law. In that capacity, I had direct oversight of Freedom of Information Act ("FOIA") policy, procedures, appeals, and litigation for the Navy. From October 1, 1980 to April 30, 2001, I served as a Navy Judge Advocate at various commands and routinely worked with FOIA matters. I am also an attorney who has been licensed to practice law in the State of Texas since 1980.

(2)     In my official capacity as the Section Chief of RIDS, I supervise approximately 239 FBI employees, supported by approximately 72 contractors, who staff a total of twelve (12) FBI Headquarters (FBIHQ) units and two (2) field operational service center units whose collective mission is to effectively plan, develop, direct, and manage responses to requests for access to FBI records and information pursuant to the FOIA as amended by the OPEN Government Act of 2007, the OPEN FOIA Act of 2009, and the FOIA Improvement Act of 2016; the Privacy Act of 1974; Executive Order 13,526; Presidential, Attorney General, and FBI policies and procedures; judicial decisions; and Presidential and Congressional directives. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

(3) Due to the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information from its files pursuant to the provisions of the FOIA, 5 U.S.C. § 552 and the Privacy Act, 5 U.S.C. § 552a. The declaration provides an update on the status of the FBI's FOIA program, and supplements the prior Michael G. Seidel's declarations of March 19, March 27, and April 9, 2020, regarding RIDS's status during the on-going COVID-19 crisis.

(4) The COVID-19 pandemic has no recent analogue. As of April 21, 2020, there were more than 802,000 confirmed cases of the virus in the United States and over 44,000 deaths; worldwide, there were over 2.6 million confirmed cases and more than 185,000 deaths.[1]

(5) The Secretary of Health and Human Services declared COVID-19 as a public health emergency effective January 27, 2020.[2] The World Health Organization publicly characterized it as a pandemic on March 11, 2020,[3] and thereafter, on March 13, 2020, the President declared a National Emergency in an effort to address the spread of COVID-19.[4]

(6) These declarations were followed by series of guidance and guidelines to slow the spread of the virus by the President and the Centers for Disease Control (CDC) for the general public; by the Office of Management and Budget (OMB) and the Office of Personnel Management (OPM) with respect to Federal agencies and the Federal workforce; and state and local governments for their communities.

---

[1] *See* https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html, last accessed Apr. 23, 2020; https://www.covidtracker.com/, Johns Hopkins University Center for Systems Science and Engineering, last accessed Apr. 23, 2020.
[2] *See* https://www.hhs.gov/about/news/2020/01/31/secretary-azar-declares-public-health-emergency-us-2019-novel-coronavirus.html, last accessed Apr. 23, 2020.
[3] Centers for Disease Control and Prevention. "Coronavirus Disease 2019 (COVID-19): Situation Summary." www.cdc.gov, accessed March 13, 2019.
[4] *See* https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/ (last accessed Mar. 17, 2020).

2

(7)     The CDC recommends that people engage in social distancing by keeping at least six feet from other people; not gathering in groups; and staying away from crowded places or mass gatherings.[5] The CDC has also recommended that cloth face coverings be worn in public settings where social distancing measures are difficult to maintain (*e.g.*, grocery stores and pharmacies).[6]

(8)     By late March/early April, many states, including those where RIDS employees reside, have issued Stay at Home orders directing their residents to self-isolate except to, *inter alia*, engage in essential work/perform essential government functions.[7] Schools were closed in these jurisdictions.

(9)     Guidance has also been issued to protect the Federal workforce, and by extension, the American people. Following the CDC's guidance, OPM has recommended social distancing and both OPM and OMB have issued guidance for agencies to implement maximum telework flexibilities consistent with operational needs of the departments and agencies.[8]

---

[5] *See, e.g.*, Centers for Disease Control "Interim Guidance for Businesses and Employers" https://www.cdc.gov/coronavirus/2019-ncov/community/guidance-business-response.html (last accessed Mar. 17, 2020).

*See also* Centers for Disease Control "Social Distancing, Quarantine, and Isolation," https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/social-distancing.html, last accessed Apr. 23, 2020.

[6] *See* Centers for Disease Control "Use of Cloth Face Coverings to Help Slow the Spread of COVID-19," https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/diy-cloth-face-coverings.html, last accessed Apr. 23, 2020.

[7] Stay at Home orders from for Maryland, Virginia, Washington D.C., West Virginia, Montana, Idaho, and Georgia. *See* https://governor.maryland.gov/2020/03/30/as-covid-19-crisis-escalates-in-capital-region-governor-hogan-issues-stay-at-home-order-effective-tonight/; https://www.governor.virginia.gov/newsroom/all-releases/2020/march/headline-855702- en.html; https://coronavirus.dc.gov/stayhome; https://dhhr.wv.gov/COVID-19/Pages/Governor-Issues-Stay-at-Home-Order.aspx; https://dphhs.mt.gov/aboutus/news/2020/stayathomedirective; https://www.usnews.com/news/best-states/georgia/articles/2020-04-02/georgia-infections-at-5-300-as-kemp-readies-stay-home-order; and https://coronavirus.idaho.gov/statewide-stay-home-order/, last accessed Apr. 23, 2020.

[8] OPM Memorandum "Coronavirus Disease 2019 (COVID-19); Additional Guidance" (March 7, 2020), https://www.chcoc.gov/content/coronavirus-disease-2019-covid-19-additional-guidance (last accessed Mar. 17, 2020). *See also* OPM Memorandum "Updated Guidance on Telework Flexibilities in Response to Coronavirus" (March 12, 2020), https://www.chcoc.gov/sites/default/files/M-20-13.pdf, last accessed Mar. 17, 2020.

3

(10) The FBI continues to implement these guidelines to protect its employees as well as their families and communities, and to ensure that it can continue to protect the American people during this national emergency.

(11) RIDS has never before dealt with a crisis of this magnitude that has posed similar widespread and immediate risks to the health and safety of every one of its employees, as well as their families and communities, and indeed the populace of the United States and the world.

(12) The FBI supports the public's right to request and obtain agency records. But in the midst of a deadly pandemic, the health and safety of FBI employees, their families, and their communities is a paramount concern of agency decision makers who must make difficult decisions about what agency functions are critical to the continuation of the FBI's mission of ensuring the safety of the American people, investigating and interdicting criminal activities, and protecting the national security.

(13) On March 17, 2020, RIDS temporarily halted its FOIA program in response to the COVID-19 pandemic.[9] This decision was not made lightly. However, it was necessary and

---

OMB Memorandum "Updated Guidance for National Capital Region on Telework Flexibilities in Response to Coronavirus" (March 15, 2020), https://www.whitehouse.gov/wp-content/uploads/2020/03/M20-15-Telework-Guidance-OMB.pdf, last accessed Mar. 17, 2020.

White House and CDC Guidelines on "Opening America Up Again," https://www.whitehouse.gov/openingamerica/#criteria, last accessed Apr. 23, 2020.

OMB Memorandum "Aligning Federal Agency Operations with the National Guidelines for *Opening Up America Again*," https://www.whitehouse.gov/wp-content/uploads/2020/04/M-20-23.pdf, last accessed Apr. 23, 2020.

OPM Frequently Asked Questions Regarding the Resumption of Normal Workforce Operations, https://www.opm.gov/policy-data-oversight/covid-19/, last accessed Apr. 23, 2020.

[9] A limited number of employees have been permitted to rotate into the office during the temporary suspension of FOIA operations to handle any emergencies or critical issues arising during the period, to operate the eFOIA portal, and to receive and route as appropriate mail and submissions to the eFOIA portal.

4

proper because RIDS's Government Information Specialist (GIS) positions were rightly designated as not mission-critical[10] and because they are not telework-capable positions.

(14) Like other intelligence/national security agencies, the vast majority of FBI work is performed on classified systems. Significantly, the record system that the FBI primarily relies upon for conducting FOIA searches – the Central Records System, which is accessed by the FBI's SENTINEL case management system – is located on the FBI's SECRET-level classified enclave, as is the FBI's FOIA Document Processing System (FDPS). Given the volume of classified information that the FBI handles and maintains, operating in a classified enclave is both necessary and efficient; classified systems can handle both classified and unclassified materials whereas unclassified systems can only handle unclassified materials.

(15) Moreover, putting aside a host of logistical and procedural challenges to moving unclassified records from the classified system for FOIA processing, the FBI does not currently have the technology resources necessary to process unclassified records remotely, which at a minimum would require the acquisition and configuration of laptops and remote connection technology compatible with FBI Information Technology security requirements for hundreds of employees.[11]

---

[10] A mission-critical position is one that's functions absolutely cannot be put on hold. RIDS management concluded that the functions of a GIS position could temporarily be put on hold without risking the FBI being unable to fulfill its primary mission as a law enforcement and national security agency.

[11] Challenges include the identification of records potentially suitable for reviewing on unclassified systems, location of those records in FDPS, review of the records to ensure that they do not include classified or sensitive information that cannot be placed on an unclassified system, extraction of the records, and transfer of those records to an unclassified system, all of which would require employees to spend substantial hours in the office. Moreover, once processed, the records would have to be moved back to the classified enclave to run required security scans on them before they could be produced to a requester.

5

(16)     These are just some of the reasons why RIDS employees are not telework capable and could not process FOIA requests remotely. Accordingly, upon designating GIS positions as not mission-critical, RIDS had to temporarily halt FOIA processing.

(17)     Since March 17, 2020, RIDS management has continually monitored the situation. Based on its continued assessment and evolving circumstances, RIDS believes it can safely resume FOIA operations in a limited fashion and will do so as of April 29, 2020.

(18)     To maximize social distancing, no more than 1/3 of RIDS employees will be permitted to work on any given day.[12] Accordingly, each unit will be split into three teams – Team A, Team B, and Team C – to include supervisory GISs and unit chiefs. Team A will return to work on April 29; Team B on April 30; and Team C on April 31. The rotation will continue thereafter.

(19)     Not all of RIDS's workforce is available to return to work starting on April 29. Specifically, approximately 15% of the workforce has self-identified as being higher risk for severe illness – *e.g.*, older adults or people with underlying medical conditions that increase their risk.[13] These employees will remain on administrative leave at this time. Furthermore, any employee who is ill must be fever and cough free for at least 24 hours before returning to work. Finally, other employees may be unable to report to work because schools and day care facilities are closed. RIDS is implementing available scheduling flexibilities to accommodate childcare situations, in an effort to alleviate this burden to the extent possible.

---

[12] For perspective, RIDS's workspace is a converted big box store warehouse. It is an open floor plan with modular workstations arranged in rows, where the dividers between the workstations in each row are roughly chest high. Within a row, neighboring workstations are less than 6 apart. The social distancing plans being implemented will be complemented by guidance about wearing face coverings, not utilizing/accessing other employee's workstations, and cleaning workstations at the beginning and end of a workday.

[13] The 15% is not equally spread across the workforce, and RIDS anticipates that certain units/functions will be more adversely impacted.

6

(20) The FBI's ability to resume FOIA operations is also expected to be impacted based on the availability of other agency employees to assist in conducting searches and agency subject matter experts to review records.

(21) In sum, while RIDS will be resuming FOIA operations on April 29, it will be in a limited fashion given the limitations necessitated by social distancing and other health and safety measures. RIDS management continues to monitor the situation with the goal of progressing toward a full resumption of FOIA operations as quickly as possible while ensuring the health and safety of RIDS employees, their families, and their communities.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 24th day of April, 2020.

David M. Hardy
Section Chief
Record/Information Dissemination Section
Information Management Division
Federal Bureau of Investigation
Winchester, Virginia

Case 1:17-cv-03956-PGG Document 201 Filed 05/06/20 Page 9 of 9