UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF YORK

----------------------------------------------------------------- X

RADAR ONLINE LLC and JAMES
ROBERSON,

                           Plaintiffs,

                -v-

FEDERAL BUREAU OF INVESTIGATIONS,

                          Defendant.

           17 Civ. 3956 (PGG)

----------------------------------------------------------------- X

## MEMORANDUM OF LAW IN SUPPORT OF THE FEDERAL BUREAU OF INVESTIGATION'S MOTION FOR SUMMARY JUDGMENT

AUDREY STRAUSS
United States Attorney
Southern District of New York
86 Chambers Street, Third Floor
New York, New York 10007
Telephone: (212) 637-2751

KIRTI VAIDYA REDDY
Assistant United States Attorney
    – Of Counsel –

TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................................1

BACKGROUND ...........................................................................................................................2

I.     Criminal Proceedings Against Jeffrey Epstein ...................................................... 2

II.    Radar Online's FOIA Request and This Action ....................................................3

ARGUMENT ...............................................................................................................................4

III.    Standard of Review.........................................................................................................4

IV.    The FBI Conducted an Adequate Search for Responsive Records ......................................4

V.    FBI Properly Withheld Responsive Records and Information Pursuant to FOIA Exemption 7(A) ......................................................................................................................... 6

       A.    The Records Were Compiled for Law Enforcement Purposes ............................... 8

       B.    Disclosure of the Records Would Interfere with Pending Criminal Proceedings ..... 8

       C.    The FBI's Assertion of Exemption 7(A) Was Timely ........................................... 10

VI.    The FBI Properly Withheld Responsive Records and Information Under Additional Exemptions ................................................................................................................ 12

       A.    The FBI Properly Withheld Information Pursuant to FOIA Exemption 3 ...........12

       B.    FBI Properly Withheld Information Pursuant to FOIA Exemption 5 ..................15

       C.    FBI Properly Withheld Information Pursuant to FOIA Exemptions 6 and 7(C)........................................................................................ 17

       D.    FBI Properly Withheld Records and Information Pursuant to FOIA Exemption 7(D).........................................................................................................20

       E.    The FBI Properly Withheld Records and Information Pursuant to FOIA Exemption 7(E) ........................................................................................... 22

VII.    FBI Has Satisfied Its Duty to Segregate and Release Any Non-ExemptInformation........24

CONCLUSION ..........................................................................................................................25

TABLE OF AUTORITIES

page(s)

Cases

*Abdelfattah v. ICE,*
  851 F. Supp. 2d 141 ........................................................................................................ 25

*ACLU v. U.S. Dep't of,*
  *Def.,* 628 F.3d 612 (D.C. Cir. 2011) ................................................................................ 4

*Adamowicz v. I.R.S.,*
  552 F. Supp. 2d 355 (S.D.N.Y. 2008) ........................................................................ 5, 12

*Adamowicz v. IRS,*
  402 Fed. App'x 648 (2d Cir. 2010) ............................................................................... 21

*Allard K. Lowenstein Int'l Human Rights Project v. Dep't of Homeland Sec.,*
  626 F.3d 678 (2d Cir. 2010) .......................................................................................... 23

*Am. Civil Liberties Union v. United States Dep't of,*
  *Def.,* 901 F.3d 125 (2d Cir. 2018) ................................................................................. 4

*Amnesty Int'l USA v. CIA,*
  728 F. Supp. 2d 479 (S.D.N.Y. 2010) ........................................................................... 7

*Animal Welfare Inst. v. Nat'l Oceanic & Atmospheric Admin.,*
  370 F. Supp. 3d 116 (D. D.C. 2019) ........................................................................ 16, 17

*Ass'n of Retired R.R. Workers v. U.S. R.R. Retirement Bd.,*
  830 F.2d 331 (D.C. Cir. 1987) ...................................................................................... 14

*Associated Press v. U.S. Dep't of Defense,*
  554 F.3d 274 (2d Cir. 2009) ...................................................................................... 18, 20

*Barney v. I.R.S.,*
  618 F.2d 1268 (8th Cir.1980) ......................................................................................... 8

*Bibles v. Or. Natural Desert Assoc.,*
  519 U.S. 355 (1997) ....................................................................................................... 20

*Blackwell v. FBI,*
  646 F.3d 37 (D.C. Cir. 2011) ............................................................................. 23, 25, 26

*Brennan Ctr. v. Dep't of Homeland Sec.,*
  331 F. Supp. 3d ............................................................................................................. 22

*Brunetti v. FBI,*
  357 F. Supp. 2d 97 (D.D.C. 2004) *aff'd,* 124 F.3d 1309 (D.D.C. 1997) .................... 6

*Carney v. DOJ*,
   19 F.3d 807 (2d Cir. 1994) .................................................................................... 4

*CIA v. Sims*,
   471 U.S. 159 (1985) ..................................................................................... 4, 13

*Conti v. U.S. Dep't of Homeland Sec.*,
   No. 12 Civ. 5827 (AT), 2014 WL 1274517 (S.D.N.Y. Mar. 24, 2014) .................................. 26

*Crooker v. Bureau of Alcohol, Tobacco, and Firearms*,
   789 F.2d 64 (D.C. Cir. 1986) ................................................................................ 7

*Curcio v. FBI*,
   No. 89-0941, 1990 WL 179605 (D.D.C. Nov. 2, 1990) ................................................. 11

*Dep't of Interior v. Klamath Water Users Protective Ass'n v.*,
   532 U.S. 1 (2001) .......................................................................................... 16

*Dep't of Justice*,
   296 F. Supp. 3d 109 (D.D.C. 2017) ...................................................................... 12

*Diamond v. FBI*,
   707 F.2d 75 (2d Cir. 1983) ................................................................................ 21

*DOD v. FLRA*,
   510 U.S. 487 (1994) ....................................................................................... 18

*Doherty v. U.S. Dep't of Justice*,
   775 F.2d 49 (2d Cir. 1985) ................................................................................ 23

*Equal Emp't Opportunity Comm'n v. Lutheran Soc. Servs.*,
   186 F.3d 959 (D.C. Cir. 1999) ............................................................................ 16

*Exch. Comm'n v. Dresser Indus.*,
   628 F.2d 1368 (D.C. Cir. 1980) ........................................................................... 14

*Federal Labor Relations Auth. v. U.S. Dep't of Veterans Affairs*,
   958 F.2d 503 (2d Cir. 1992) ............................................................................... 18

*Ferguson v. FBI*,
   957 F.2d 1059 (2d Cir. 1992) ........................................................................... 8, 21

*Ferguson v. FBI*,
   No. 89 Civ. 5071 (RPP), 1995 WL 329307, at *2 (S.D.N.Y. June 1, 1995),
   *aff'd*, 83 F.3d 41 (2d Cir. 1996). ........................................................................ 5

*Ford v. DOJ*,
   208 F. Supp. 3d 237 (D.D.C. 2016) ...................................................................... 25

*Garcia v. U.S. Dep't of Justice*,
   181 F. Supp. 2d 356 (S.D.N.Y. 2002)...................................................... 5, 20

*Gonzalez v. USCIS*,
   475 F. Supp. 3d 334 (S.D.N.Y. 2020)...................................................... 25

*Grand Cent. Partnership, Inc. v. Cuomo*,
   166 F.3d 473 (2d Cir. 1999)...................................................................... 16

*Halpern v. FBI*,
   181 F.3d 279 (2d Cir. 1999)........................................................... 8, 19, 20

*Heffernan v. Azar*,
   317 F. Supp. 3d 94 (D.D.C. 2018) ........................................................... 12

*In re Grand Jury Proceedings*,
   851 F.2d 860 (6th Cir. 1988)..................................................................... 15

*Jett v. FBI*,
   139 F. Supp. 3d 352 (D.D.C. 2015) .......................................................... 25

*John Doe Agency v. John Doe Corp.*,
   493 U.S. 146 (1989) ........................................................................ 4, 8, 22

*Journalism Ctr. v. Office of Indep. Counsel*,
   926 F. Supp. 189 (D.D.C. 1996) .............................................................. 10

*Judicial Watch, Inc. v. U.S. Dep't of Commerce*,
   337 F. Supp. 2d 146 (D.D.C. 2004) .......................................................... 23

*Kansi v. U.S. Dep't of Justice*,
   11 F. Supp. 2d 42 (D.D.C. 1998) ............................................................... 6

*Kay v. F.C.C.*,
   976 F. Supp. 23 (D.D.C. 1997) ................................................................... 7

*Kidder v. FBI*,
   517 F. Supp. 2d 17 (D.D.C. 2007) .............................................................. 6

*Lasko v. DOJ*,
   684 F. Supp. 2d 120 (D.D.C. 2010) .......................................................... 20

*Levinthal v. Fed. Election Comm'n*,
   219 F. Supp. 3d 1 (D.D.C. 2016) .............................................................. 25

*Light v. DOJ*,
   968 F. Supp. 2d 11 (D.D.C. 2013) ............................................................ 25

*Local 32B–32J, Serv. Emps. Int'l Union, AFL–CIO v. GSA*,

1998 WL 726000 (S.D.N.Y. October 15, 1998) ........................................................ 14

*Lopez v. Dep't of Justice*,
    393 F.3d 1345 (D.C. Cir. 2005) .......................................................... 15

*Marshall v. FBI*,
    802 F. Supp. 2d 125 (D.D.C. 2011) ...................................................... 5

*Maydak v. U.S. Dept. of Justice*,
    218 F.3d 760 (D.C. Cir. 2000) ........................................................... 9

*Mayer Brown LLP v. IRS*,
    562 F.3d 1190 (D.C. Cir. 2009) ......................................................... 23

*Maynard v. C.I.A.*,
    986 F.2d 547 (1st Cir. 1993) ............................................................. 5

*McCoy v. Moschella*,
    1991 WL 212208 (D.D.C. Sept. 30, 1991) .............................................. 26

*McGehee v. U.S. Dep't of Justice*,
    800 F. Supp. 2d 220 (D.D.C. 2011) ...................................................... 5

*Murphy v. Exec. Office for U.S. Attorneys*,
    789 F.3d 204 (D.C. Cir. 2015) ........................................................... 14

*N.Y. Times v. Dep't of Justice*,
    872 F. Supp. 2d 309 (S.D.N.Y. 2012) .................................................... 5

*N.Y. Times v. USDOJ*,
    235 F. Supp. 2d 522 (S.D.N.Y. 2017) .................................................... 14

*Nation Magazine v. U.S. Customs Serv.*,
    71 F.3d 885 (D.C. Cir. 1995) ........................................................... 19

*Nat'l Assoc. of Homebuilders v. Norton*,
    309 F.3d 26 (D.C. Cir. 2002) ........................................................... 17

*New York Times Co. v. Dep't of Justice*,
    No. 14 Civ. 03776 (AT) (SN), 2016 WL 5946711 (S.D.N.Y. Aug. 18, 2016) ........ 7

*New York Times v. United States Dep't of Justice*,
    390 F. Supp. 3d 499 (S.D.N.Y. 2019) .................................................... 26

*NLRB v. Robbins Tire & Rubber Co.*,
    437 U.S. 214 (1978) ............................................................. 6, 7, 10

*Oglesby v. U.S. Army*,
    920 F.2d 57 (D.C. Cir. 1990) ............................................................ 5

*Peltier v. FBI,*
    218 Fed. App'x 30 (2d Cir. 2007) ................................................................ 15

*Perlman v. United States Dep't of Justice,*
    312 F.3d 100 (2d Cir. 2002) ...................................................................... 19

*Radcliffe v. IRS,*
    536 F. Supp. 2d 423 (S.D.N.Y. 2008) ........................................................ 7

*Richardson v. DOJ,*
    730 F. Supp. 2d 225 (D.D.C. 2010) .......................................................... 20

*Robbins, Geller, Rudman & Dowd, LLP v. United States Sec. & Exch. Comm'n,*
    No. 3:14-CV-2197, 2016 WL 950995 (M.D. Tenn. Mar. 12, 2016) ....................... 26

*Rodriguez v. U.S. Dep't of Army,*
    31 F. Supp. 3d 218 (D.D.C. 2014) ........................................................... 14

*Roth v. United States Dep't of Justice,*
    642 F. 3d 1161 (D.C. Cir. 2011) ............................................................. 19

*SafeCard Servs., Inc. v. S.E.C.,*
    926 F.2d 1197 (D.C. Cir. 1991) ............................................................... 5

*Senate of the Com. of Puerto Rico v. U.S. Dep't of Justice,*
    823 F.2d 574 (D.C. Cir. 1987) ............................................................... 12

*Thompson v. DOJ,*
    851 F. Supp. 2d 89 (D.D.C. 2012) ........................................................... 20

*U.S. Dep't of Justice v. Landano,*
    508 U.S. 165 (1993) ........................................................................... 21

*U.S. Dep't of State v. Washington Post Co.,*
    456 U.S. 595 (1982) ........................................................................... 17

*United States v. Deloitte,*
    610 F.3d 129 (D. D.C. 2010) ................................................................. 17

*United States v. Eastern Air Lines, Inc.,*
    923 F.2d 241 (2d Cir. 1991) .................................................................. 14

*United States v. Nobles,*
    422 U.S. 225 (1975) ........................................................................... 16

*Wilner v. NSA,*
    592 F.3d 60 (2d Cir. 2009) ..................................................................... 4

*Wood v. FBI*,
 432 F. 3d 78 (2d Cir. 2005) ........................................................................ 20

Statutes

5 U.S.C. § 522 ........................................................................................... 22

5 U.S.C. § 522 (b)(7)(E) ............................................................................ 22

5 U.S.C. § 552(a) ......................................................................................... 4

5 U.S.C. § 552(b) ...................................................................................... 26

5 U.S.C. § 552(b)(3) ............................................................................. 1, 13

5 U.S.C. § 552(b)(5) ................................................................................. 15

5 U.S.C. § 552(b)(6) ............................................................................. 1, 17

5 U.S.C. § 552(b)(7) ................................................................................... 8

5 U.S.C. § 552(b)(7)(A) .............................................................................. 1

5 U.S.C. § 552(b)(7)(C) ............................................................................ 18

5 U.S.C. § 552(b)(7)(D) ........................................................................ 1, 21

5 U.S.C. § 552(b)(7)(E) .............................................................................. 1

5 U.S.C. § 552(b)(7)(F) .............................................................................. 1

18 U.S.C. § 3509 ...................................................................................... 14

18 U.S.C. § 3509(d)(1)(A)(i) ................................................................... 14

18 U.S.C. § 5038 ...................................................................................... 15

Rules

Federal Rule of Criminal Procedure 6(e) ............................................. 1, 14

## PRELIMINARY STATEMENT

Radar Online LLC and James Robertson, a senior editor for Radar Online (collectively "Radar Online"), seek records at the core of the criminal prosecution of Ghislaine Maxwell. Congress did not intend the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, to interfere with pending criminal prosecutions. To make sure this would not happen, Congress expressly exempted records that could reasonably be expected to interfere with pending law enforcement proceedings from public disclosure under FOIA. *See* 5 U.S.C. § 552(b)(7)(A). The withheld records sought by Radar Online fall at the heart of this exemption.

The FBI's detailed declaration establishes that certain of the information withheld also falls within other FOIA exemptions. For example, the FBI withheld information specifically exempted from disclosure by the Child Victims' and Child Witnesses' Rights Act, the Juvenile Justice and Delinquency Act, and Federal Rule of Criminal Procedure 6(e) under Exemption 3. *See* 5 U.S.C. § 552(b)(3). The FBI withheld information subject to the attorney work product doctrine under Exemption 5. *Id.* § 552(b)(5). The FBI withheld the names and other personal information of individuals who were of investigative interest to the FBI, victims, government employees, and third parties under FOIA Exemptions 6 and 7(c) because disclosure clearly would, and/or could reasonably be expected to, result in an unwarranted invasion of privacy of third parties. *See id.* § 552(b)(6), (7)(C). Personal information of government employees and third parties was also withheld because its disclosure could place those individuals at risk of harm. *See id.* § 552(b)(7)(F). Records that would disclose the identity or information provided by a confidential source were withheld by the FBI under Exemption 7(D). *See id.* § 552(b)(7)(D). Finally, some of the withheld records were withheld under Exemption 7(E) because their disclosure would reveal law enforcement techniques or procedures. *See id.* § 552(b)(7)(E).

The FBI has established that its search was adequate and its withholdings under each of

these FOIA exemptions were proper. Accordingly, the Court should grant the FBI's motion for summary judgment.

## BACKGROUND

### I.    Criminal Proceedings Against Jeffrey Epstein

In 2005, the Palm Beach, Florida, Police Department began investigating Jeffrey Epstein; a Palm Beach County grand jury indicted Epstein on July 19, 2006, for felony solicitation of prostitution. *United States v. Maxwell*, No. 20-cr-330, ECF No. 142, Ex. A, B (RMB) (S.D.N.Y.). Separately, the United States Attorney's Office for the Southern District of Florida and the Federal Bureau of Investigation conducted an investigation of Epstein, and in 2007, a federal grand jury indicted Epstein with solicitation of prostitution. *Id.* In September 2007, the United States Attorney's Office for the Southern District of Florida and Epstein entered into a non-prosecution agreement. *Id.*

On July 2, 2019, Jeffrey Epstein was indicted on one count of conspiracy to commit sex trafficking and one count of sex trafficking by a federal grand jury sitting in the Southern District of New York. *See* Indictment, Dkt. No. 2, *United States v. Epstein*, No. 19-cr-490 (RMB) (S.D.N.Y.). Epstein was arrested on July 6, 2019, and thereafter incarcerated at the Metropolitan Correctional Center ("MCC") until his death. *see* Docket Entry Nos. 5, 32 and 44, *United States v. Epstein*, No. 19-cr-490 (RMB) (S.D.N.Y.).

On March 29, 2021, Ghislaine Maxwell was indicted for assisting, facilitating, and contributing to Epstein's abuse of minor girls, by and among other things, helping Epstein to recruit, groom, and ultimately abuse victims known to Maxwell and Epstein to be under the age of 18. *United States v. Maxwell*, No. 20-cr-330, ECF No. 1 (S.D.N.Y.). Maxwell's trial is scheduled to start on November 29, 2021. *Id.* at ECF No. 277.

## II.        Radar Online's FOIA Request and This Action

On April 20, 2017, Radar Online submitted a FOIA requests to the FBI collectively seeking "all documents relating to the FBI's investigation and prosecution of financier Jeffrey Epstein" Dkt. No. 12-2, Ex. B; *see* Declaration of Michael G. Seidel, dated June 28, 2021 ("Seidel Decl.") ¶ 6, Ex. A. On May 25, 2017, Plaintiff Radar Online initiated this action, and on August 28, 2017, Plaintiffs filed an amended complaint. ECF Nos. 1, 12. On October 5, 2017, the parties stipulated that the FBI's search obligations would be limited to records in the certain files maintained by the FBI. ECF No. 17.

From October 2017 through June 2019, the FBI processed 11,525 pages of responsive documents. Seidel Decl. ¶¶ 9-29. It produced 181 pages in full and 1,051 pages in part. Seidel Decl. Ex. EE at 160. The FBI withheld 10,107 pages in full based on FOIA Exemptions 3, 5, 6, 7(A), 7(C), 7(D), 7(E). Seidel Decl. ¶¶ 9-29. During this time, it did not assert Exemption 7(A) over all withheld material.

After Epstein's arrest, the FBI determined that the additional release of responsive material could negatively impact the pending prosecution of Jeffrey Epstein and any related investigations. Seidel Decl. ¶ 30 fn. 4. The FBI asserted Exemption 7(A) categorically over all the remaining responsive documents, except for 46 pages which were released in full. Seidel Decl. ¶¶ 30-31, 57-68. The FBI also asserted Exemption 7(A) with respect to all information withheld pursuant to other exemptions prior to July 2019. Seidel Decl. ¶ 30, Ex. EE.

The FBI has created a *Vaughn* index describing the documents that were processed prior to Epstein's arrest, as well as those records that were released in part after his arrest. Seidel Decl. Ex. EE. The documents that the FBI processed and categorically withheld after Epstein's arrest are not identified by Bates numbers and are not included in the *Vaughn* index, as that would reveal the

number of pages and descriptions of documents being withheld categorically, thereby causing the

harms protected by Exemption 7(A).  Seidel Decl. fn. 11.

## ARGUMENT

### III.    Standard of Review

FOIA generally requires federal agencies to make documents and other material

"available to the public," *see* 5 U.S.C. § 552(a), but specifically exempts nine categories of

information from that requirement, *see id.* § 552(b). The nine  FOIA exemptions reflect Congress's

determination that "public disclosure  is not always in the public  interest." *CIA v. Sims*, 471 U.S.

159, 166–67 (1985).

Summary judgment  is warranted in a FOIA case if the agency submits  declarations that

(1) supply "facts indicating that the agency has conducted a thorough search" and (2) give

"reasonably detailed  explanations  why any withheld  documents  fall within  an exemption."

*Carney v. DOJ*, 19 F.3d 807, 812 (2d Cir. 1994). The agency's declarations are "accorded a

presumption of good faith," and discovery is "unnecessary if the agency's submissions are

adequate on their face." *Id.* (internal quotation marks omitted); *accord Wilner v. NSA*, 592 F.3d

60, 69 (2d Cir. 2009). An agency's justification for asserting an exemption "is sufficient if it

appears logical and plausible."  *Am. Civil Liberties Union v. United States Dep't of Def.*, 901 F.3d

125, 133 (2d Cir. 2018), *as amended* (Aug. 22, 2018).  Accordingly, "the government's burden

is a light one." *ACLU v. U.S. Dep't of Def.*, 628 F.3d 612, 624 (D.C. Cir. 2011).[1]

### IV.    The FBI Conducted an Adequate Search for Responsive Records

"If an agency demonstrates that it has conducted a reasonable search for relevant

---

[1] Because an agency declaration can satisfy the government's burden on a motion for summary
judgment, "Local Civil Rule 56.1 statements are not required." *N.Y. Times v. Dep't of Justice*,
872 F. Supp. 2d 309, 314 (S.D.N.Y. 2012); *Ferguson v. FBI*, No. 89 Civ. 5071 (RPP), 1995 WL
329307, at *2 (S.D.N.Y. June 1, 1995), *aff'd*, 83 F.3d 41 (2d Cir. 1996).

documents, it has fulfilled its obligations under FOIA and is entitled to summary judgment on this issue." *Garcia v. U.S. Dep't of Justice*, 181 F. Supp. 2d 356, 366 (S.D.N.Y. 2002). The agency must demonstrate that its search was "reasonably calculated to discover the requested documents." *SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 328 (D.C. Cir. 1991). An agency's search may be reasonable even if it does not return every responsive document. *See Adamowicz v. I.R.S.*, 552 F. Supp. 2d 355, 361 (S.D.N.Y. 2008). An agency must only search those "files likely to contain responsive materials (if such records exist)." *Oglesby v. U.S. Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). Where an agency's declaration demonstrates that it has conducted a reasonable search, "the FOIA requester can rebut the agency's affidavit only by showing that the agency's search was not made in good faith." *Maynard v. C.I.A.*, 986 F.2d 547, 560 (1st Cir. 1993).

The FBI undertook thorough and complete searches for documents responsive to the Radar Online's requests. The FBI's declaration detailing the manner in which it indexes its files and searches its general case management system demonstrates the reasonableness of this search. Seidel Decl. ¶¶ 32-42. First, the FBI searched both its FOIA Document Processing System ("FDPS") and its Central Records System ("CRS") in response to Radar Online's request. Seidel Decl. ¶ 42. The search of FDPS yielded responsive records from a previous index search of the CRS (which had been done in response to a prior first-party FOIA request made by Epstein on his own behalf). Seidel Decl. ¶ 42. To ensure that there were no additional records responsive to Radar Online's request outside of the FDPS results, the FBI conducted a supplemental electronic search of the CRS using the search term "Jeffrey Epstein," which yielded no additional responsive records. *Id.* Courts have routinely found that electronic searches of the CRS fully meet the standards of adequacy and reasonableness established under the FOIA. *See, e.g.*, *Marshall v. FBI*, 802 F. Supp. 2d 125, 132-33 (D.D.C. 2011); *McGehee v. U.S. Dep't of Justice*, 800 F. Supp.

2d 220, 229-30 (D.D.C. 2011). Thus, the FBI's search for responsive records was reasonable.

## V. The FBI Properly Withheld Responsive Records and Information Pursuant to FOIA Exemption 7(A)

As indicated in the *Vaughn* index submitted by the FBI, *see* Seidel Decl. Ex. EE, all of the records that were withheld by the FBI in full or in part that fall within the scope of FOIA Exemption 7(A).[2]  Exemption 7(A) exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552 (b)(7)(A). In enacting Exemption 7(A), "Congress recognized that law enforcement agencies had legitimate needs to keep certain records confidential, lest the agencies be hindered in their investigations." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 224 (1978). Most importantly, Congress sought "to prevent harm to the Government's case in court" by preventing litigants from obtaining "earlier or greater access to agency investigatory files than they would otherwise have." *Id.* (internal quotation omitted).[3]

"To fit within Exemption 7(A), the government must show that (1) a law enforcement proceeding is pending or prospective and (2) release of the information could reasonably be expected to cause some articulable harm." *Amnesty Int'l USA v. CIA*, 728 F. Supp. 2d 479, 525 (S.D.N.Y. 2010) (internal quotation marks omitted). The government's burden under the second prong is not high; the government need only show that "disclosure of particular kinds of investigatory records . . . would generally interfere with enforcement proceedings." *Robbins*

---

[2] For those records or parts of records withheld in full pursuant to Exemption 7(A), the Court need not reach the applicability of other exemptions if it concludes that FBI's withholdings under Exemption 7(A) were proper.

[3] Exemption 7(A) also protects records that, if released, could interfere with post-trial criminal proceedings, such as an appeal. *See, e.g., Kidder v. FBI*, 517 F. Supp. 2d 17, 27-28 (D.D.C. 2007); *Kansi v. U.S. Dep't of Justice*, 11 F. Supp. 2d 42, 44 (D.D.C. 1998).

*Tire*, 437 U.S. at 236 (quotation marks omitted); *Radcliffe v. IRS*, 536 F. Supp. 2d 423, 437 (S.D.N.Y. 2008). In doing so, the government must demonstrate a "rational link" between the requested public disclosure and interference with the government's ongoing or prospective investigations or proceedings. *See Crooker v. Bureau of Alcohol, Tobacco, and Firearms*, 789 F.2d 64, 67 (D.C. Cir. 1986); *New York Times Co. v. Dep't of Justice*, No. 14 Civ. 03776 (AT) (SN), 2016 WL 5946711, at *7 (S.D.N.Y. Aug. 18, 2016).

The government is not required to make a specific factual showing with respect to each withheld document that disclosure would actually interfere with a particular enforcement proceeding. *See Robbins Tire*, 437 U.S. at 236. Rather, the showing of harm under Exemption 7(A) may be made on a categorical basis. *Id.* That is, federal courts may make generic determinations that disclosure of particular types of records could reasonably be expected to interfere with the type of enforcement proceeding at issue. *Radcliffe*, 536 F. Supp. 2d at 437 (quoting *Barney v. I.R.S.*, 618 F.2d 1268, 1273 (8th Cir.1980)).

## A.      The Withheld Records Were Compiled for Law Enforcement Purposes

As a threshold matter, all of the records withheld by FBI pursuant to Exemption 7(A) were "compiled for law enforcement purposes," and thus satisfy the threshold requirement of Exemption 7. 5 U.S.C. § 552(b)(7). The government has the burden of proving that records were compiled for law enforcement purposes. *Ferguson v. FBI*, 957 F.2d 1059, 1070 (2d Cir. 1992). Documents are compiled for law enforcement purposes within the meaning of the statute both where the documents, when originally created, were generated for a law enforcement purpose, and where the documents, although originally created for a non-law enforcement purposes, are later assembled as part of a law enforcement investigation. *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 154-55 (1989).

The withheld records were either generated or compiled in furtherance of the FBI's

investigation of criminal child prostitution involving Epstein.  Seidel Decl. ¶ 55.  In this Circuit, all

records compiled in the course of an investigation by the FBI are deemed to be for law

enforcement purposes. *Halpern v. FBI*, 181 F.3d 279, 296 (2d Cir. 1999) ("all records of

investigations compiled by the FBI are for law enforcement purposes"); *see also* Seidel Decl.

¶ 55(describing authority conferred upon the FBI to investigate violations of federal law). The

withheld records thus were compiled for a law enforcement purpose within the meaning of

Exemption 7(A).

### B.    Disclosure of the Records Would Interfere with Pending Criminal Proceedings

"The principal purpose of Exemption 7(A) is to prevent disclosures which might

prematurely reveal the government's cases in court, its evidence and strategies, or the nature,

scope, direction, and focus of its investigations, and thereby enable suspects to establish defenses

or fraudulent alibis or to destroy or alter evidence." *Maydak v. U.S. Dept. of Justice*, 218 F.3d

760, 762 (D.C. Cir. 2000). Here, as logically and plausibly explained in the Declaration of

Maurene Comey, the Assistant United States Attorney for the Southern District of New York

prosecuting the criminal action against Ghislaine Maxwell, release of the records would interfere

with the pending criminal case by revealing the FBI's investigative interests, the scope and focus

of the FBI's investigation into Epstein and his associates, including Maxwell, the physical or

documentary evidence gathered by the FBI, and witness and source statements and

administrative materials,.  Comey Decl. ¶¶ 1, 9-10, 12-21.  The withheld  records include interview

reports and notes; federal grand jury subpoenas and the records received in response to such

subpoenas; documents provided by state and local law enforcement agencies; communications

between the FBI and other government agencies regarding the criminal investigation;

communications within the FBI regarding the criminal investigation; envelopes used to organize

and store documents and other evidentiary documents; bulky exhibit cover sheets, transmittal forms, letters routing slips, some of which contain the names of witnesses, including victim-witnesses and subjects of the investigation; background and contact information regarding witnesses, including victim-witnesses, and subjects of the investigation; and internet printouts, including of material relating to victim-witnesses. Comey Decl. ¶ 11.

The Comey Declaration explains that the withheld records "document information and evidence gathered during an FBI investigation, the sources from and techniques through which such information and evidence was gathered, methods used to obtain the information and evidence, the manner in which information is organized, the methods used to analyze the information and evidence, witnesses, including victim-witnesses and subjects of the investigation, and the focus of an investigation." *Id.* "Release of the entirety of the records at issue in this litigation [would] allow Maxwell earlier or greater access to agency investigatory files than she otherwise would have through the criminal discovery process." *Id.* ¶ 13. Exemption 7(A) was enacted precisely to prevent such an end run around the rules governing criminal discovery. *Robbins Tire*, 437 U.S. at 224.

Additionally, the Comey Declaration details how the release of the withheld information could impede the upcoming criminal trial by influencing witness testimony. The records "include information about which witnesses may be expected to testify at trial, include details that are not publicly known or known to other witnesses, and include information and documents authored by potential trial witnesses." Comey Decl. ¶ 15. These records also include "potential trial exhibits that the government anticipates will be entered into evidence, many of which the potential trial witnesses have not seen." *Id.* The records also include information prosecutors obtained pursuant to grand jury subpoenas. *Id.* ¶ 19. The premature release of these materials

could allow "witnesses to shape their testimony to conform with other evidence gathered during

the investigation." *Id.* ¶ 13. It would allow witnesses to "consider specific evidence and the

volume of evidence prior to trial, which [also] may influence their testimony." *Id.* ¶ 14. This type

of harm is a cognizable basis to withhold records under Exemption 7(A). *Journalism Ctr. v. Office*

*of Indep. Counsel*, 926 F. Supp. 189, 192 (D.D.C.1996) (Exemption 7(A) applies where

"[w]itnesses with access to such information could easily alter, conform or construct their

testimony depending upon the information disclosed").

Finally, the release of these categories of records could reasonably be expected to impair

the ability to seat a fair and impartial jury in the *Maxwell* trial. Comey Decl. ¶¶ 17-18. Premature

public disclosure of potential trial exhibits and witness statements "could reasonably be expected

to influence potential juror's perception of the witnesses and the evidence to be presented at

trial." *Id.* ¶ 17. And potential jurors' consideration of records that will not be presented at trial

"may impact the consideration jurors give to the actual evidence." Such potential harms are more

than sufficient "to trace a rational link between the nature of the document and the alleged likely

interference" with the pending criminal trial. *NY Times*, 2016 WL 5946711, at *7.

As the Comey Declaration logically and plausibly articulates the manner in which release

of the withheld information could reasonably be expected to impede a pending criminal trial, the

FBI has met its burden of establishing the applicability of Exemption 7(A).

## C.     The FBI's Assertion of Exemption 7(A) Was Timely

Plaintiffs have suggested that the FBI did not timely assert Exemption 7(A) over records

that were processed prior to Epstein's arrest and withheld under other FOIA exemptions, because

the FBI did not identify Exemption 7(A) as a basis for withholding at the time those records were

processed. But FOIA exemptions are not waived simply because they were not identified in initial

rounds of processing. An agency is only required to identify all exemptions at issue prior to the

conclusion of the district court proceedings. *Curcio v. FBI*, No. 89-0941, 1990 WL 179605, *3

(D.D.C. Nov. 2, 1990). Following Epstein's arrest, while it was still in the midst of processing

responsive records, the FBI determined that the previously-withheld information was also exempt

under Exemption 7(A), and promptly notified the plaintiffs of its assertion of the additional

exemption. And the FBI asserted Exemption 7(A) over all such information in this summary

judgment motion and in its *Vaughn* index.  Seidel Decl., Ex. EE.

So long as the FBI asserts all exemptions during the course of the district court proceedings,

as it did here, it has not waived the exemption. *See, e.g.*, *Heffernan v. Azar*, 317 F. Supp. 3d 94,

119 n.14 (D.D.C. 2018) (holding that the agency did not waive exemptions asserted for the first

time in the government's reply submission, as it was asserted before summary judgment was

complete and before appellate review); *EPIC v. Dep't of Justice*, 296 F. Supp. 3d 109, 122 (D.D.C.

2017) ("[T]he document production process is a fluid one at the district court level, and it often

includes contemporaneous review and continuous production determinations by agency-

defendants. Thus . . . the government is entitled to articulate fully all of the justifications for

withholdings that it makes prior to the Court's ruling on summary judgment . . . ."); *Adamowicz v.*

*IRS*, 552 F. Supp. 2d 355, 361 n.2 (S.D.N.Y. Mar. 31, 2008) ("[W]hile 'an agency may waive the

right to raise certain exemptions if it fails to raise them prior to the district court ruling in favor of

the other party' . . . . the failure to raise an exemption prior to an adverse determination does not

give rise to waiver." (citation omitted)).

The assertion of Exemption 7(A) over the previously-processed records following Epstein's

arrest is also timely because of changed factual circumstances, specifically Epstein's indictment

and his anticipated criminal trial. A "substantial change in the factual context of the case" can be a

permissible basis for an agency to assert a FOIA exemption for the first time even when district court proceedings are concluded and a case is on appeal, which is the time when the assertion of new exemptions is generally prohibited. *See Senate of the Com. of Puerto Rico v. U.S. Dep't of Justice*, 823 F.2d 574, 581 (D.C. Cir. 1987). That the FBI determined that Exemption 7(A) was applicable after the commencement of a new criminal case against Epstein does not demonstrate bad faith or gamesmanship by the government, but was due instead to a significant change in circumstances. The FBI therefore properly asserted Exemption 7(A) with respect to all withheld materials, including those that were processed prior to Epstein's arrest.

## VI.    The FBI Properly Withheld Responsive Records and Information Under Additional Exemptions

As all of the information at issue was properly withheld under Exemption 7(A), the Court need not reach the applicability of other exemptions. Yet to the extent the Court deems it necessary to reach this issue, as detailed in the Seidel Declaration and the accompanying *Vaughn* index, much of the withheld information is also properly withheld under FOIA Exemptions 3, 5, 6, 7(C), 7(D), and 7(E).[4]

## A.    The FBI Properly Withheld Information Pursuant to FOIA Exemption 3

FOIA Exemption 3 applies to records "specifically exempted from disclosure by statute,"

---

[4] Unlike the documents processed prior to Epstein's arrest, which are described in the FBI's *Vaughn* index, the documents processed after Epstein's arrest were categorically withheld under Exemption 7(A). As noted above, no *Vaughn* index is required for records withheld categorically under Exemption 7(A). Moreover, the FBI cannot reveal the volume and precise nature of such documents without thereby revealing information protected by Exemption 7(A). However, the FBI has reviewed the records categorically withheld and determined that they also contain information protected from disclosure under FOIA Exemptions 3, 5, 6, 7(C), 7(D), and 7(E). The FBI is therefore asserting those exemptions to protect information in the categorically-withheld documents, as well as in the documents described on the *Vaughn* index. Should the Court find that Exemption 7(A) does not apply to the categorically-withheld records and that further information is necessary to adjudicate the FBI's assertion of additional exemptions with respect to these records, the FBI can provide such further detail.

provided that the statute "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue." 5 U.S.C. § 552(b)(3). In evaluating an agency's invocation of FOIA Exemption 3, courts must consider whether the statute identified by the agency is a statute of exemption as contemplated by Exemption 3, and second, whether the withheld material satisfies the criteria of the exemption statute. *CIA v. Sims*, 471 U.S. 159, 167 (1985). Exemption 3 differs from other FOIA exemptions in that its applicability depends less on the detailed factual contents of specific documents; the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage. *Ass'n of Retired R.R. Workers v. U.S. R.R. Retirement Bd.*, 830 F.2d 331, 336 (D.C. Cir. 1987).

In invoking Exemption 3, the FBI relies on three statutes that preclude disclosure of the documents sought by Radar Online. First, the Child Victims' and Child Witnesses' Rights Act, 18 U.S.C. § 3509, "qualifies as an Exemption 3 withholding statute," *Rodriguez v. U.S. Dep't of Army*, 31 F. Supp. 3d 218, 237 (D.D.C. 2014), and prohibits disclosure of "the name or any other information concerning a child" victim of crime, 18 U.S.C. § 3509(d)(1)(A)(i). This statute justifies the FBI's withholding of information relating to minor children victims and witnesses as part of the child prostitution investigation of Epstein. Seidel Decl. ¶ 49.

Second, the FBI's withholding of the grand jury materials plainly falls under Rule 6(e)'s shield of "matters occurring before the grand jury." Fed. R. Crim. P. 6(e). Rule 6(e) is treated as a statute for purposes of Exemption 3 "because the Congress has enacted it into positive law." *Murphy v. Exec. Office for U.S. Attorneys*, 789 F.3d 204, 206 (D.C. Cir. 2015); *see Local 32B–32J, Serv. Emps. Int'l Union, AFL–CIO v. GSA*, 1998 WL 726000, at *6 (S.D.N.Y. October 15, 1998) ("It is well established that [Fed. R. Crim. P. 6(e)], which imposes a general requirement of secrecy for information relating to the grand jury process, qualifies as an Exemption 3

13

withholding statute."). "The purpose of grand jury secrecy, as enshrined in Rule 6(e), is to ensure the proper functioning of the grand jury system." *N.Y. Times v. USDOJ*, 235 F. Supp. 2d 522, 530 (S.D.N.Y. 2017).  In the Second Circuit, the relevant inquiry is whether the information at issue "may tend to reveal what transpired before" the grand jury. *United States v. Eastern Air Lines, Inc.*, 923 F.2d 241, 244 (2d Cir. 1991); *see also Lopez v. Dep't of Justice*, 393 F.3d 1345, 1349 (D.C. Cir. 2005).

Here, the FBI properly withheld grand jury subpoenas under Exemption 3. *Lopez*, 393 F.3d at 1350 ("All grand jury subpoenas . . . fall within FOIA's third exemption."). Records revealing the names of recipients of federal grand jury subpoenas and the specific records subpoenaed by a federal grand jury, as well as copies of specific records provided pursuant to federal grand jury subpoenas, also tend to reveal the scope of the grand jury's investigation, and therefore fall within the ambit of Rule 6(e). Seidel Decl. ¶ 50; *see Peltier v. FBI*, 218 Fed. App'x 30, 32 (2d Cir. 2007) (affirming withholding of grand jury subpoenas, materials and information, and dates of grand jury testimony under Rule 6(e)); *In re Grand Jury Proceedings*, 851 F.2d 860, 866 (6th Cir. 1988) (holding that the "general rule" is that documents obtained by grand jury subpoena are protected under Rule 6(e).

Third, the FBI's reliance on the Juvenile Justice and Delinquency Act, 18 U.S.C. § 5038, is also appropriate under Exemption 3. The Juvenile Justice and Delinquency Act, 18 U.S.C. § 5038, protects from disclosure all information and records relating to any juvenile delinquency proceeding, unless the release is necessary to meet certain circumstances described within the statute. Here, the FBI withheld records that contain arrest information and criminal history of third party juveniles, which falls within ambit of the Juvenile Justice and Delinquency Act. Seidel Decl. ¶ 51.

**B.      FBI Properly Withheld Information Pursuant to FOIA Exemption 5**

Exemption 5 of FOIA exempts from disclosure "[a]gency documents which would not be obtainable by a private litigant in an action against the agency under normal discovery rules (e.g., attorney-client, work-product, executive privilege)." *Grand Cent. Partnership, Inc. v. Cuomo*, 166 F.3d 473 (2d Cir. 1999) (citation omitted); *see also Dep't of Interior v. Klamath Water Users Protective Ass'n v.* , 532 U.S. 1, 8 (2001). The attorney work product privilege protects documents and other memoranda prepared by an attorney in anticipation of litigation, *see Hickman v. Taylor*, 329 U.S. 495, 509-10 (1947), and is designed "to avoid chilling attorneys in developing materials to aid them in giving legal advice and in preparing a case for trial." *John Doe Corp. v. United States*, 675 F.2d 482, 492 (2d Cir. 1982). The attorney work product doctrine exempts from disclosure "mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." Fed. R. Civ. P. 26(b)(3). Without such protection, an entity would have to choose between protecting its litigation prospects by "scrimp[ing] on candor and completeness," or prejudicing its litigation prospects, by disclosing "assessment of its strengths and weakness . . . to litigation adversaries." *United States v. Adlman*, 134 F.3d 1194, 1200 (2d Cir. 1998).

The privilege sweeps very broadly. It includes within its scope "factual material, including the result of a factual investigation." *In re Grand Jury Subpoena Dated July 5, 2005*, 510 F.3d 180, 183 (2d Cir. 2007). It encompasses both civil and criminal matters. Indeed, although "the work-product doctrine most frequently is asserted as a bar to discovery in civil litigation, its role in assuring the proper functioning of the criminal justice system is even more vital. The interests of society and the accused in obtaining a fair and accurate resolution of the question of guilt or innocence demand that adequate safeguards assure the thorough preparation

and presentation of each side of the case." *United States v. Nobles*, 422 U.S. 225, (1975).  The

work product privilege applies with equal force to documents prepared by investigators acting at

the direction of attorneys.  *See Nobles*, 422 U.S. at 238-39 (holding that work product "protect[s]

material prepared by agents for the attorney as well as those prepared by the attorney himself");

*In re Grand Jury Subpoena Dated Oct. 22, 2001*, 282 F.3d 156, 161 (2d Cir. 2002) ("[T]he work

product privilege applies to preparation not only by lawyers but also [by] investigators seeking

factual information.").

The FBI has withheld five memoranda under Exemption 5.  Seidel Decl. ¶ 54. Four of the

memoranda are internal FBI documents that describe actions being taken by the FBI, at the

direction an AUSA, to gather evidence for the potential prosecution of Epstein and his associates

or in connection with potential civil forfeiture proceedings regarding Epstein's assets.  *Id.* One

memorandum is from an FBI investigator to an AUSA, relating to the value of asset owned by

Epstein, that was gathered at the AUSA's behest in connection with the potential prosecution and

forfeiture proceedings. *Id.*

Here, the Assistant United States Attorney involved in the prosecution of Epstein directed

the FBI to gather information relating to his assets, and the documents at issue were prepared while

the government was conducting an investigation that was reasonably expected to result in an

indictment and/or civil forfeiture proceedings.  *Id.*; *see Nobles*, 422 U.S. at 238 (lawyers "rel[ied]

on the assistance of investigators and other agents in the compilation of materials in preparation for

trial" so that those materials share the protections of attorney work product). The fact that Epstein

was later indicted in the Southern District of Florida demonstrates that these documents were

prepared or gathered in anticipation of litigation. Furthermore, the Seidel Declaration explains how

disclosure this information would interfere with the government attorney's ability to properly

prepare their legal strategies and gather evidence.  Seidel Decl. ¶ 54.

**C.**     **FBI Properly Withheld Information Pursuant to FOIA
Exemptions 6 and 7(C)**

Exemption 6 protects from disclosure "personnel and medical files and similar files the

disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C.

§ 552(b)(6). The statutory language concerning files "similar" to personnel or medical files

encompasses any "information which applies to a particular individual . . . sought from

government records." *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 602 (1982).

Under Exemption 6, a court considers whether the "public interest in disclosure outweighs the

individual privacy concerns." *Nat'l Assoc. of Homebuilders v. Norton*, 309 F.3d 26, 35 (D.C. Cir.

2002) (internal quotation marks omitted). But the "only relevant public interest in disclosure to be

weighed in this balance is the extent to which disclosure would . . . contribut[e] significantly to

public understanding *of the operations or activities of the government*."  *DOD v. FLRA*, 510 U.S.

487, 495 (1994).

Even more protective of privacy interests, Exemption 7(C), 5 U.S.C. § 552(b)(7)(C),

exempts from disclosure records or information compiled for law enforcement purposes where

its production "could reasonably be expected to constitute an unwarranted invasion of personal

privacy." 5 U.S.C. § 552(b)(7)(C). Under Exemption 7(C), a court again "balance[s] the public

interest in disclosure against the [privacy] interest." *Associated Press v. U.S. Dep't of Defense*,

554 F.3d 274, 284 (2d Cir. 2009). In this analysis, "[t]here is only one relevant public interest,

that of opening agency action to the light of public scrutiny." *Id.* at 284 (quotation marks and brackets

omitted). "The [FOIA requester] must show that the public interest sought to be advanced is a

significant one, an interest more specific than having the information for its own sake and . . .

must also show the information is likely to advance that interest." *Id.*

The information withheld under Exemptions 6 and 7(C) directly implicates the privacy interests of third parties, including the names of third parties who were of investigative interest to the FBI, identifying information regarding third party victims, identifying information of third party witnesses, including confidential informants, names of FBI special agents and victim specialists, names of local law enforcement personnel, and names of local government personnel. Seidel Decl. ¶¶ 73-83.  As described in the *Vaughn* index, documents that fall within these exemptions include witness statements containing intimate details relating to third parties, phone logs, private social media information, photographs, law enforcement records, and flight logs. Seidel Decl. Ex. EE.

All of these individuals have strong privacy interests that are protected by FOIA exemptions. "[A]n individual has a general privacy interest in preventing dissemination of his or her name and home address*." Federal Labor Relations Auth. v. U.S. Dep't of Veterans Affairs*, 958 F.2d 503, 510 (2d Cir. 1992). "That privacy interest also extends to third parties who may be mentioned in investigatory files, as well as to witnesses and informants who provided information during the course of an investigation." *Nation Magazine v. U.S. Customs Serv*., 71 F.3d 885, 894 (D.C. Cir. 1995).

Similarly, third parties who were of investigative interest to the FBI "have a cognizable privacy interest protected by the FOIA privacy exemptions." *Perlman v. United States Dep't of Justice*, 312 F.3d 100, 106 (2d Cir. 2002) (finding that witnesses and third parties to an INS report of investigation "possess strong privacy interests, because being identified as part of a law enforcement investigation could subject them to 'embarrassment and harassment'"). In fact, the privacy interests of third parties are "perhaps even stronger" because "the material in question demonstrates or suggests that they had at one time been subject to criminal investigation." *Halpern*, 181 F.3d at 297. Disclosing personal information about these individuals could result in

18

negative professional and social repercussions, and subject them to harassment or embarrassment. Seidel Decl. ¶ 73,

It is also well-established that cooperating witnesses, some of whom provided information under an assurance of confidentiality, have a substantial interest in insuring that their relationship to an investigation remains secret. *Roth v. United States Dep't of Justice*, 642 F. 3d 1161, 1173 (D.C. Cir. 2011). Exposing the identity of these individuals would have a grave impact on FBI investigations, as the FBI has obtained information in confidence, and release of these records will prevent such cooperating individuals from honestly relating pertinent facts on an investigation. Seidel Decl.¶ 82.  Additionally, such exposure could lead to the harassment, intimidation, legal or economic detriment or harm of these individuals.  *Id.*

Further, government investigative personnel, local law enforcement and other government employees have legitimate privacy interests in the protection of their names as associated with a high-profile criminal investigation. *See, e.g.*, *Thompson v. DOJ*, 851 F. Supp. 2d 89, 99 (D.D.C. 2012) (protecting the names of and identifying information about FBI Special Agents and support personnel, third parties with investigative interest to the FBI, third parties merely mentioned in documents related to the FBI's criminal investigation of plaintiff, local law enforcement officers, and third parties interviewed by the FBI during the investigation); *Lasko v. DOJ*, 684 F. Supp. 2d 120, 133 (D.D.C. 2010) (protecting the identities of DEA Special Agents and state and local law enforcement officers), aff'd per curiam, No. 10–5068, 2010 WL 3521595, at *1 (D.C. Cir. Sept. 3, 2010); *Richardson v. DOJ*, 730 F. Supp. 2d 225, 236 (D.D.C. 2010) ("[T]he EOUSA properly [withheld] the identities of and personal information about all the third parties mentioned in the records responsive to plaintiff's FOIA request, whether or not these third parties are law enforcement officers or support personnel."). These individuals may be subject to harassment or embarrassment if their identities are disclosed," and this interest "raises a measurable privacy

19

concern that must be weighed against the public's interest in disclosure." *Wood v. FBI*, 432 F. 3d 78, 88 (2d Cir. 2005); *Halpern*, 181 F.3d at 297 (holding that FBI agents and other government employees have an interest against the disclosure of their identities to the extent that disclosure might subject them to embarrassment or harassment in their official duties or personal lives); *Garcia v. U.S. Dep't of Justice*, 181 F. Supp. 2d 356, 373-74 (S.D.N.Y. 2002) (finding identities of FBI investigators not significantly probative of agency conduct).

On the other side of the scale, "[t]he only relevant public interest in the FOIA balancing analysis is the extent to which disclosure of the information sought would shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." *Bibles v. Or. Natural Desert Assoc.*, 519 U.S. 355, 355-56 (1997) (quotation marks and citations omitted). The disclosure of the identifying information of these individuals would not shed any additional light on Government conduct, *see Associated Press*, 554 F.3d at 288-89, and thus the information was properly withheld under Exemption 6 and 7(C).

**D.      FBI Properly Withheld Records and Information
          Pursuant to FOIA Exemption 7(D)**

Exemption 7(D) exempts from disclosure agency records "compiled for law enforcement purposes . . . by criminal law enforcement authority in the course of a criminal investigation" if release of those records "could reasonably be expected to disclose" the identity of, or information provided by, a "confidential source." 5 U.S.C. § 552(b)(7)(D); *see also U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 171 (1993). "[A] source is confidential within the meaning of Exemption 7(D) if the source 'provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred.'" *Landano*, 508 U.S. at 165.  The promised confidentiality can only be waived by the source.

*Adamowicz v. IRS*, 402 Fed. App'x 648, 653 (2d Cir. 2010); *see also Ferguson v. FBI*, 957 F.2d

1059, 1068 (2d Cir. 1992) ("[W]e reject the idea that subsequent disclosures of the identity of a

confidential source . . . requires full disclosure of information provided by such a source.").

Further, the status of the investigation does not change the applicability of this exemption.

*Diamond v. FBI*, 707 F.2d 75, 76–77 (2d Cir. 1983) (documents do not lose their 7(D) exemption

due to the passage of time).

Here, the FBI withheld the names and identifying information of confidential sources,

as well as the information they provided under express or implied assurances of confidentiality.

Seidel Decl. ¶¶ 87-91. These sources are considered to be confidential because they furnish

information only with the understanding that their identities and the information they provided

will not be divulged outside the FBI. Seidel Decl. ¶¶ 87, 91. Information provided by these

sources is singular in nature, and if released, could reasonably be expected to reveal their

identities. Seidel Decl. ¶ 87. Revealing such information would dissuade individuals from

speaking freely with the FBI.  *Id.*  In addition, release of these records would have a chilling

effect on other witnesses, potentially cause the source harm or subject them to retaliation, and

hamper law enforcement efforts to detect and prevent criminal activity. Seidel Decl. ¶ 91. This is

especially so where, as here, the investigation concerns a highly publicized and powerful

individual and the intimate personal details of young or vulnerable individuals. Sources

providing information to the FBI should be secure in the knowledge that their assistance and

their identities will be held in confidence. *Id.* Accordingly, this Court should uphold the FBI's

assertion of Exemption 7(D) to protect the identities and information provided by confidential

sources.

**E.      The FBI Properly Withheld  Records and Information**
**         Pursuant to FOIA Exemption  7(E)**

Exemption 7(E) exempts from disclosure law enforcement records where release "would

disclose techniques and procedures for law enforcement investigations or prosecutions, or would

disclose guidelines  for law enforcement investigations or prosecutions if such disclosure could

reasonably be expected to risk circumvention of the law."  5 U.S.C. § 522 (b)(7)(E).  In order to

invoke Exemption 7(E), the Government must make a "threshold showing 'that the materials be

records or information compiled for law enforcement purposes.'" *Brennan Ctr. v. Dep't of*

*Homeland Sec*., 331 F. Supp. 3d at 97 (quoting *John Doe Agency v. John Doe Corp.*, 493 U.S.

146, 148 (1989)).

Law enforcement "techniques and procedures" encompass "how law enforcement officials

go about investigating a crime." *Allard K. Lowenstein Int'l Human Rights Project v. Dep't of*

*Homeland Sec.*, 626 F.3d 678, 680-81 (2d Cir. 2010). The FBI is not required to show that the

disclosure of information regarding the "techniques and procedures" in question could reasonably

be expected to risk circumvention of law a result of disclosure.  *See id*. at 681. Such information is

"categorically exempt from FOIA disclosure 'without need for 'demonstration of harm.'" *Iraqui*

*Refugee Assistance Project v. U.S. D.H.S.*, 12-cv-3461 (PKC), 2017 WL 1155898, at *5 (S.D.N.Y.

Mar. 27, 2017) (quoting *Lowenstein*, 626 F.3d at 681). While Exemption 7(E) generally  covers only

"investigatory  records that disclose investigative techniques and procedures not generally known

to the public," *Doherty v. U.S. Dep't of Justice*, 775 F.2d 49, 52 n.4 (2d Cir. 1985), "even

commonly known procedures may be protected from disclosure if the disclosure could reduce or

nullify their effectiveness," *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 337 F. Supp. 2d 146,

181 (D.D.C. 2004); *see also Freedom of Press Found. V. Dep't of Justice*, 493 F. Supp. 3d 251,

271-72 (S.D.N.Y. 2020) (holding that, even if public knows of general existence of a technique

or procedure, Exemption 7(E) protects the details of how such techniques and procedures are used in particular cases).  Exemption 7(E) sets a "low bar for the agency to justify withholding," *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011).

The FBI has invoked Exemption 7(E) to withhold seven categories of information:  (1) collection and analysis of information that would reveal investigative techniques; (2) sensitive file numbers; (3) the dates and types of investigations, such as "preliminary" or "full", (4) the target, dates and scope of surveillance, (5) information located within the FBI's FD-515 forms used to report investigative accomplishments, such as an arrest; (6) database identifiers or printouts; and (7) monetary payments or funding needed for investigative purposes.  The Seidel Declaration explains how each of these categories of information pertains to "how law enforcement officials go about investigating a crime." *Lowenstein*, 626 F.3d at 682; *see* Seidel Decl. ¶¶ 98-112. Although not required to do so, the FBI has also described for each category how release of such information could reasonably be expected to create a risk of circumvention of the law.  *Id.*

Courts have been unequivocal that information from the type of databases described in the Seidel declaration fall squarely within Exemption 7(E). *See, e.g., Lowenstein*, 626 F.3d at 682 ("[F]ocusing on [particular] targets constitutes a 'technique or procedure.'"); *Gonzalez v. USCIS*, 475 F. Supp. 3d 334, 352 (S.D.N.Y. 2020) (affirming withholdings under Exemption 7(E) for identification codes, law enforcement event numbers, law enforcement case numbers and categories, FBI numbers and URLs for internal law enforcement database web addressed); *Shapiro v. DOJ*, -- F. Supp. 3d --, 2017 WL 908179, at *11 (D.D.C. Mar. 6, 2017) (holding that sensitive case file numbers are not merely administrative, but serve a law enforcement purpose and disclosure risks circumvention of law); *Ford v. DOJ*, 208 F. Supp. 3d 237, 253 (D.D.C. 2016) (information related to dates and types of FBI investigations, including whether they are

full or preliminary in nature, as well as internal email addresses and intranet information, properly exempted); *Levinthal v. Fed. Election Comm'n*, 219 F. Supp. 3d 1, 8 (D.D.C. 2016) (citing cases holding that "information connected to law enforcement databases," including metadata and codes facilitating access, navigation, and data retrieval, "qualifies for exemption under 7(E)"). Other information implicated by the Request, such as details concerning when and how the FBI utilizes surveillance tactics and devices, is also squarely protected by the exemption. *See McCoy v. Moschella*, 1991 WL 212208, at *5 (D.D.C. Sept. 30, 1991) (disclosure "would permit a sophisticated requester . . . to avoid specific identifying patterns of activity, thus making the FBI's task of identifying logical subjects more difficult"). The FBI therefore meets the "low bar" for justifying its withholdings under Exemption 7(E).  *Blackwell,* 646 F.3d at 42.

## VII.   FBI Has Satisfied Its Duty to Segregate and Release Any Non-ExemptInformation

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b). "An agency withholding documents under Exemption 7(A) does not need to justify its segregability determination document by document, as the exemption allows agencies to justify withholding based on categories of documents." *New York Times v. United States Dep't of Justice*, 390 F. Supp. 3d 499, 518-19 (S.D.N.Y. 2019). Instead, the government satisfies its obligation by explaining why the categories of records do not contain reasonably segregable non-exempt information.  *Robbins, Geller, Rudman & Dowd, LLP v. United States Sec. & Exch. Comm'n*, No. 3:14-CV-2197, 2016 WL 950995, at *9 (M.D. Tenn. Mar. 12, 2016).

Moreover, nonexempt portions of documents may "be withheld if they are inextricably intertwined with the exempt portions." *Conti v. U.S. Dep't of Homeland Sec.*, No. 12 Civ. 5827

(AT), 2014 WL 1274517, at \*25 (S.D.N.Y. Mar. 24, 2014) (quotation marks omitted). "The agency is entitled to a presumption that it complied with its obligation to disclose reasonablysegregable material." *Id*.

In the present case, FBI has already produced 1,232 pages of records, with appropriate redactions, in response to the Radar Online's FOIA requests.  Seidel Decl. ¶ 114.  The records withheld in full by FBI do not contain any reasonably segregable non-exempt information.  *Id.* With regard to the records withheld in full under Exemption 7(A), the Comey Declaration explains why each category of records is exempt from disclosure, and further states that, to the extent there is non-exempt information contained in the records withheld under Exemption 7(A), that information is intertwined with exempt information and cannot reasonably be segregated without risking interference with the Maxwell prosecution. Comey Decl. ¶ 23.  The public speculation and unfounded theories about Maxwell's involvement make segregation particularly difficult because the provision of information related to Epstein without complete context risks compounding the unfounded speculation. As to the remaining records withheld in full, either the records are privileged in their entirety or any non-exempt information in the documents is inextricably intertwined with exempt information, such that segregating any non-exempt information would be of little to no informational value. *See* Seidel Decl. ¶ 47. Accordingly, FBI has satisfied its obligation to reasonably segregate any non-exempt portions of the records withheld in full.

## CONCLUSION

For the foregoing reasons, the Court should grant the government's motion for summary judgment.

25