UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF YORK
────────────────────────────────x

RADAR ONLINE LLC and JAMES
ROBERSON,

                              Plaintiffs,

       -v-                                                  17 Civ. 3956 (PGG)

FEDERAL BUREAU OF INVESTIGATION,

                              Defendant.
────────────────────────────────x

## DECLARATION OF MAURENE COMEY

    I, Maurene Comey, hereby declare as follows:

    1.    I am an Assistant United States Attorney in the United States Attorney's Office for the Southern District of New York ("USAO-SDNY") and currently serve as Co-Chief of the Violent and Organized Crime Unit. I have served in this capacity since May 2021. Prior to my current role, I served as Deputy Chief of the Violent and Organized Crime Unit of the USAO-SDNY from February 2021 through May 2021, an Assistant United States Attorney in the Public Corruption Unit of the USAO-SDNY from September 2019 through February 2021, an Assistant United States Attorney in the Violent and Organized Crime Unit of the USAO-SDNY from July 2017 through September 2019, an Assistant United States Attorney in the White Plains Division of the USAO-SDNY from January 2016 through July 2017, and an Assistant United States Attorney in the General Crimes Unit of the USAO-SDNY from November 2015 through January 2016. I have been an Assistant United States Attorney in the Southern District of New York since

1

November 2015.  Currently, I am one of the Assistant United States Attorneys handling the prosecution of Ghislaine Maxwell, an individual who associated with Jeffrey Epstein.  Prior to his death, I was also one of the Assistant United States Attorneys in charge of the prosecution of Jeffrey Epstein.

2.  I am familiar with the Freedom of Information Act request filed by Radar Online LLC (the "FOIA Request") that is the subject of this case, which seeks records relating to the "FBI's investigation and the prosecution of Jeffrey Epstein, who plead guilty to one count of felony solicitation of prosecution in August 2006."  By either reviewing certain records in preparation for the prosecution or review of samples of all of the categories of documents, I am familiar with the responsive records that the Federal Bureau of Investigation ("FBI") has withheld pursuant to Exemptions 3, 5, 6, 7(A), 7(C), 7(D), and 7(E) of FOIA, 5 U.S.C. § 552(b)(5)-(7).  In addition, I am familiar with the proceedings in *United States v. Maxwell*, 20-cr-330 (AJN) (S.D.N.Y.), and *United States v. Epstein*, No. 19-cr-490 (RMB) (S.D.N.Y.).  The statements contained in this declaration are based on my personal knowledge, documents maintained in the files of the USAO-SDNY, documents maintained in the files of the FBI, conversations with the members of the *Maxwell* and *Epstein* prosecution teams at the USAO-SDNY, conversations with FBI employees, public court filings, and conclusions made in accordance therewith.

3.  I submit this declaration in support of the FBI's motion for summary judgment in this case.

### The Prosecution of Jeffrey Epstein

4.  On July 2, 2019, Jeffrey Epstein was indicted by a federal grand jury in the United States District Court for the Southern District of New York on one count of

conspiracy to commit sex trafficking, in violation of 18 U.S.C. § 371, and one count of sex trafficking, in violation of 18 U.S.C. §§ 1591(a), (b)(2). *United States v. Epstein*, No. 19 Cr. 490 (RMB) (S.D.N.Y.), Dkt. No. 2.  Epstein passed away on August 10, 2019. *Id.*, Dkt. No. 44.

5.      On August 29, 2019, following a public hearing on August 27, 2019, Judge Berman entered an order of *nolle prosequi* dismissing the charges against Epstein. *See id.*, Nolle Prosequi, Dkt. No. 52.

### The Prosecution of Ghislaine Maxwell

6.      On June 29, 2020, Ghislaine Maxwell was indicted by a grand jury in the Southern District of New York with one count of conspiracy to entice minors to travel to engage in illegal sex acts, in violation of 18 U.S.C. § 371, one count of enticement of a minor to travel to engage in illegal sex acts, in violation of 18 U.S.C. §§ 2422 and 2, one count of conspiracy to transport minors with intent to engage in criminal sexual activity, in violation of 18 U.S.C. § 371, one count of transportation of a minor with intent to engage in criminal sexual activity, in violation of 18 U.S.C. §§ 2423(a) and 2, and two counts of perjury, in violation 18 U.S.C. 1623. *See United States v. Maxwell*, No. 20 Cr. 330 (AJN) (S.D.N.Y.), Dkt. No. 1.

7.      On March 29, 2021, a grand jury in the Southern District of New York returned a superseding indictment charging Ghislaine Maxwell with one count of conspiracy to entice minors to travel to engage in illegal sex acts, in violation of 18 U.S.C. § 371, one count of enticement of a minor to travel to engage in illegal sex acts, in violation of 18 U.S.C. §§ 2422 and 2, one count of conspiracy to transport minors with intent to engage in criminal sexual activity, in violation of 18 U.S.C. § 371, one count of

transportation of a minor with intent to engage in criminal sexual activity, in violation of 18 U.S.C. §§ 2423(a) and 2, one count of sex trafficking conspiracy, in violation of 18 U.S.C. § 371, one count of sex trafficking of a minor, in violation of 18 U.S.C. §§ 1591 and 2, and two counts of perjury, in violation 18 U.S.C. 1623. *See id.*, Dkt. No. 187.

8. The *Maxwell* case is pending before the Honorable Alison J. Nathan. Trial has been scheduled to start on November 29, 2021. *See id.*, Dkt. No. 277.

**Records Withheld from Disclosure Pursuant to FOIA 7(A) on Account of Likely Interference with the Prosecution of Maxwell**

9. 5 U.S.C. § 522 (b)(7)(A) ("Exemption 7(A)") exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to interfere with enforcement proceedings . . . ."

10. I and the prosecutors responsible for the *Maxwell* prosecution are familiar with the records responsive to the FOIA requests withheld in full or in part under Exemption 7(A), including those reflected on the index prepared by the FBI and the declaration of Michael G. Seidel (the "FBI index"). All of these records fall within the scope of Exemption 7(A).

11. Public disclosure of the records withheld in full or in part under Exemption 7(A) could reasonably be expected to interfere with the pending prosecution of Maxwell. The records include:

> (i) Interview Forms, Reports, and Notes: These documents consist of the FBI's personnel's handwritten interview notes and forms containing notes of interviews of individuals, including victims, as well as reports of interviews of individuals, including victims;

4

(ii) Federal Grand Jury Subpoenas and Subpoenaed Information: These documents consist of federal grand jury subpoenas and documents collected as a result of those subpoenas.

(iii) Other Investigative and Enforcement Documents: These documents include various types of documents provided by state and local law enforcement agencies, including evidence vouchers and background information for witnesses, including victim-witnesses, and subjects of the investigation; communications between the FBI and other government agencies regarding the investigation; communications within the FBI regarding the investigation; organizational documents such as envelopes used to organize and store documents and other evidentiary documents, bulky exhibit cover sheets, transmittal forms, and letter routing slips, some of which contain the names of witnesses, including victim-witnesses, and subjects of the investigation; background and contact information regarding witnesses, including victim-witnesses, and subjects of the investigation; and internet printouts, including of material relating to victim-witnesses. These records document information and evidence gathered during an FBI investigation, the sources from and techniques through which such information and evidence was gathered, methods used to obtain the information and evidence, the manner in which information is organized, the methods used to analyze the information and evidence, witnesses, including victim-witnesses and subjects of the investigation, and the focus of the investigation.

12. Providing more detailed public descriptions of the withheld documents and how their release would interfere with the *Maxwell* prosecution would itself risk interfering with the *Maxwell* prosecution. For example, public disclosure of more detailed descriptions of the documents anticipated to be proffered as exhibits at trial, or that bear on other trial exhibits, would disclose elements of the Government's trial strategy in *Maxwell*, including its selection of trial exhibits and the anticipated content of witness testimony. More detailed public descriptions could also prematurely disclose how the prosecution team expects the trial to proceed, and may impact the weight jurors give certain evidence, in relation to other evidence that will not be used at trial but would be described or disclosed through this FOIA action.

13. <u>Greater Access:</u>  Pursuant to its obligations under Federal Rule of Criminal Procedure 16, as well as *Brady v. Maryland*, 373 U.S. 83 (1963), and directives from the District Court, the Government has provided Maxwell's counsel with discoverable and potentially exculpatory materials from these records.  These productions include, among other things, documents that the Government may seek to introduce as exhibits at trial, as well as statements and background information regarding witnesses the Government does not intend to call to testify at trial but whom the defense may wish to call as witnesses.  These productions have all been subject to a Protective Order, entered by Judge Nathan, which prohibits the defense from disseminating Government productions to the public or the press. *See Maxwell*, No. 20 Cr. 330, Dkt. No. 36.  Additionally, the Court has ordered the Government to disclose to the defense all testifying witness statements, material subject to disclosure pursuant to *Giglio v. United States*, 405 U.S. 150 (1972), and a list of proposed trial exhibits by October 11, 2021.  *See id.*, Dkt. No. 297.  Those

productions will similarly be made pursuant to the Protective Order governing disclosures in the *Maxwell* case. Release of the entirety of the records at issue in this litigation will allow Maxwell earlier or greater access to agency investigatory files than she otherwise would have through the criminal discovery process.

       14.      <u>Influence by Media upon Witnesses and Jury:</u>  The risks of interference with the *Maxwell* proceedings are heightened by the media coverage of the prosecution of Maxwell and her association with Epstein. The parties in the Maxwell matter are aware that media coverage may impact potential witnesses and jurors, and as such, the parties have entered into the above-referenced Protective Order to allow the Government to produce discovery material, including witness lists and exhibits prior to trial, without disclosure of that information to the public. Thus, to allow disclosure of records withheld in full or in part by the FBI under Exemption 7(A) would be in contravention of the efforts made by the parties and the Court to provide an impartial trial. Further, premature release of the withheld records, particularly if the records are released in part or without full context, may influence the perception of jurors who have been exposed to media coverage containing speculation and theories relating to Maxwell.

       15.      <u>Impact on Potential Witnesses:</u>  Premature disclosure of the records and/or the information contained therein could reasonably be expected to influence witnesses' potential testimony at trial. These records include information about which witnesses may be expected to testify at trial, include details that are not publicly known or known to other witnesses, and include information and documents authored by potential trial witnesses. These records also include potential trial exhibits that the Government anticipates will be entered into evidence, many of which the potential trial witnesses have

not seen. The premature release of these materials could influence the testimony of witnesses by providing the opportunity for witnesses to shape their testimony to conform with other evidence gathered during the investigation. In order to preserve the independent integrity of its witnesses' testimony, the Government has worked to ensure that its witnesses are not exposed to other parts of its investigative file, the accounts of other witnesses, or the full scope of exhibits it intends to offer at trial. The release of these materials would undermine the Government's efforts to present witness testimony that is uninfluenced by exposure to other evidence in the case and can therefore be independently corroborated by other witness accounts and exhibits at trial.

16.     The FBI's interview notes and forms contain statements made by potential witnesses and individuals that may influence a witness to conform his or her testimony to other evidence or witness statements. Additionally, premature release of the FBI's interview notes and forms could prevent counsel in *Maxwell* from effectively questioning witnesses in a manner that would allow jurors to assess their credibility because the witnesses may have already viewed records that counsel may use for impeachment purposes. Similarly, release of records pertaining to grand jury subpoenas and information received from grand jury subpoenas will allow potential witnesses to consider specific evidence and the volume of evidence prior to trial, which may influence their testimony. Especially because the *Maxwell* prosecution has received significant media attention, it is highly likely that the media will convey any released records relating to potential witnesses in a manner that will attract attention, which will also potentially influence witnesses. Further, release of the records relating to potential witnesses may

permit members of the media and the public to question witnesses about certain records or information, or possibly subject witnesses to harassment or intimidation.

17. <u>Impact on Jury:</u>  Premature public disclosure of the records withheld under Exemption 7(A), including those which the Government anticipates will be entered into evidence at trial could reasonably be expected to impair the Government's (and the defendant's) ability to seat a fair and impartial jury in *Maxwell*.  These records include possible trial exhibits, specific information about witnesses who are expected to testify at trial, as well as information and documents authored by potential trial witnesses, such that premature public disclosure could reasonably be expected to influence potential jurors' perceptions of the witnesses and the evidence to be presented at trial.

18. Conversely, potential jurors' consideration of the records that are being withheld under Exemption 7(A) but will not be presented at trial may impact the consideration jurors give to the actual evidence.  If some or all of this evidence is excluded at trial, pre-trial publication of these materials would risk exposing potential jurors to material they would otherwise not be shown during trial, which risks unduly influencing jurors' views of the case and would impair the Government's (and the defendant's) ability to seat a fair and impartial jury.

19. For example, should potential jurors be able to view the FBI's interview notes and forms and grand jury subpoenas, they will know who the FBI contacted during its investigation, information that was disclosed by witnesses, including witnesses who will not testify at trial, and the evidence that was gathered by the FBI.  Having viewed that evidence, jurors may improperly consider this information in conjunction with the actual evidence that is presented at trial.

20. Similarly, records that may not be trial exhibits but bear on the contents of potential trial exhibits could improperly influence potential jurors' understanding of the evidence at trial and the case overall.

21. For example, records used to identify or catalog evidence would reveal to potential jurors the evidence in the Government's possession and potentially the date such evidence was obtained. Similarly, transmittal forms or routing slips may contain the names of witnesses or timeframe during which the FBI was in focused on a specific individual. Records containing communications with other government agencies may reveal the sources of information and may cause jurors to give more or less weight to certain evidence. In addition, release of these records may cause jurors to speculate about the evidence that will be used at trial and cause them to alter their views of the evidence presented at trial.

22. <u>Impact on Investigations:</u>  Furthermore, release of this information would identify the FBI's investigative interest in particular individuals; identify and tip off individuals who are of interest to law enforcement; and provide subjects or targets the opportunity to destroy evidence and/or alter their behavior to avoid detection. Thus, release of this information may interfere with any potential future prosecutions.

## Segregability

23. The records withheld in full under Exemption 7(A) are exempt from disclosure in their entirety under Exemption 7(A). To the extent the records contain any non-exempt information, such information is inextricably intertwined with information that could reasonably be expected to interfere with the *Maxwell* prosecution for the reasons discussed above. The media coverage of speculation and theories about Maxwell's

association with Epstein makes the segregation of any possibly non-exempt information particularly difficult because providing information pertaining to Epstein without complete context can reasonably be expected to contribute to the dissemination of speculation and theories about the *Maxwell* case. This, in turn, could reasonably be expected to interfere with the District Court's ability to seat a fair and impartial jury in proceedings against Maxwell, for the reasons discussed above.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 27th day of June 2021.

_____
MAURENE COMEY
Assistant United States Attorney
United States Attorney's Office for the
Southern District of New York