UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RADAR ONLINE LLC and JAMES
ROBERSON,

                Plaintiffs,

    v.

FEDERAL BUREAU OF INVESTIGATION,

                Defendant.

17 Civ. 3956 (PGG)


**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
THE FEDERAL BUREAU OF INVESTIGATION'S MOTION FOR SUMMARY
JUDGMENT AND IN OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR
SUMMARY JUDGMENT**

AUDREY STRAUSS
United States Attorney for the
Southern District of New York
Attorney for Defendant
86 Chambers Street, 3rd floor
New York, New York 10007
Tel: (212) 637-2691
Fax: (212) 637-2750
Email: allison.rovner@usdoj.gov


ALLISON M. ROVNER
Assistant United States Attorney

    – Of Counsel –

# Table of Contents

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT .........................................................................................................................1

I.    The FBI Properly Withheld Records and Information Under FOIA Exemption 7(A) ........1

    A.  The FBI's Assertion of Exemption 7(A) Was Timely .................................................1

    B.  Disclosure of the Records Would Interfere with Pending Criminal Proceedings ........4

    C.  The FBI Satisfied Its Duty to Segregate and Release Any Non-Exempt Information .8

II.   The FBI Properly Withheld Records and Information Under Other FOIA Exemptions .....9

    A.  The FBI Properly Withheld Information Under Exemptions 6 and 7(C) ...................9

    B.  The FBI Properly Withheld Information Under Exemption 3 .................................12

    C.  The FBI Properly Withheld Information Under Exemption 5 .................................13

    D.  The FBI Properly Withheld Records and Information Under Exemptions 7(D) and 7(E) .................................................................................................................14

CONCLUSION ....................................................................................................................15

**Table of Authorities**

*Cases:*

*ACLU v. NSA*,
  925 F.3d 576 (2d Cir. 2019) ............................................................................ 3, 4
*ACLU v. U.S. Dep't of Def.*,
  628 F.3d 612 (D.C. Cir. 2011) ............................................................................ 5
*ACLU v. U.S. Dep't of Def.*,
  901 F.3d 125 (2d Cir. 2018) ............................................................................... 5
*Adamowicz v. IRS*,
  552 F. Supp. 2d 355 (S.D.N.Y. Mar. 31, 2008) .............................................. 2
*Ass'n of Retired R.R. Workers v. U.S. R.R. Retirement Bd.*,
  830 F.2d 331 (D.C. Cir. 1987) ........................................................................... 12
*Associated Press v. U.S. Dep't of Defense*,
  554 F.3d 274 (2d Cir. 2009) ............................................................................... 10
*Barney v. I.R.S.*,
  618 F.2d 1268 (8th Cir.1980) ............................................................................. 6
*Bast v. U.S Dep't of Justice*,
  665 F.2d 1252 (D.C. Cir. 1981) ......................................................................... 11
*Bishop v. U.S. Dep't of Homeland Sec.*,
  45 F. Supp. 3d 380 (S.D.N.Y. 2014) ................................................................ 8
*Blackwell v. FBI*,
  646 F.3d 37 (D.C. Cir. 2011) ............................................................................. 15
*Boyd v. EOUSA*,
  87 F. Supp. 3d 58 (D.D.C. 2015) ...................................................................... 4
*Brennan Ctr. v. Dep't of Homeland Sec.*,
  331 F. Supp. 3d 74 (S.D.N.Y. 2018) ................................................................ 14
*CIA v. Sims*,
  471 U.S. 159 (1985) ............................................................................................ 12
*Conti v. U.S. Dep't of Homeland Sec.*,
  No. 12 Civ. 5827 (AT), 2014 WL 1274517 (S.D.N.Y. Mar. 24, 2014) ........ 8
*Crooker v. Bureau of Alcohol, Tobacco, and Firearms*,
  789 F.2d 64 (D.C. Cir. 1986) ............................................................................. 5
*Davis v. United States Postal Inspection Serv.*,
  75 F. Supp. 3d 425 (D.D.C. 2014) .................................................................... 11
*Dep't of Interior v. Klamath Water Users Protective Ass'n*,
  532 U.S. 1 (2001) ................................................................................................ 14
*EPIC v. Dep't of Justice*,
  296 F. Supp. 3d 109 (D.D.C. 2017) .................................................................. 2

*DOD v. FLRA*,
510 U.S. 487 (1994) ................................................................................................ 10

*DOJ v. Reporters Comm. for Freedom of the Press*,
489 U.S. 749 (1989) ................................................................................................ 11

*Elec. Privacy Info. Ctr. v. DHS*,
384 F. Supp. 2d 100 (D.D.C. 2005) ........................................................................ 11

*Grand Cent. Partnership, Inc. v. Cuomo*,
166 F.3d 473 (2d Cir. 1999) .................................................................................... 13

*Harrison v. Fed. Bureau of Prisons*,
611 F. Supp. 2d 54 (D.D.C. 2009) .......................................................................... 11

*Heffernan v. Azar*,
317 F. Supp. 3d 94 (D.D.C. 2018) ............................................................................ 1

*Hopkins v. HUD*,
929 F.2d 81 (2d Cir. 1991) ...................................................................................... 10

*Iraqi Refugee Assistance Project v. U.S. D.H.S.*,
No. 12 Civ. 3461 (PKC), 2017 WL 1155898 (S.D.N.Y. Mar. 27, 2017) ................ 15

*John Doe Agency v. John Doe Corp.*,
493 U.S. 146 (1989) ................................................................................................ 14

*Journalism Ctr. v. Office of Indep. Counsel*,
926 F. Supp. 189 (D.D.C. 1996) ............................................................................... 7

*Judicial Watch v. U.S. Dep't of State*,
875 F. Supp. 2d 37 (D.D.C. 2012) .......................................................................... 11

*Kimberlin v. DOJ*,
139 F.3d 944 (D.C. Cir. 1998) ................................................................................ 10

*Levy v. U.S. Postal Serv.*,
567 F. Supp. 2d 162 (D.D.C. 2008) ........................................................................ 11

*Lopez v. DOJ*,
393 F.3d 1345 (D.C. Cir. 2005) .............................................................................. 13

*Allard K. Lowenstein Int'l Human Rights Project v. DHS*,
626 F.3d 678 (2d Cir. 2010) .................................................................................... 15

*Mead Data Cent., Inc. v. U.S. Dep't of Air Force*,
566 F.2d 242 (D.C. Cir. 1977) .................................................................................. 8

*Mermerlstein v. DOJ*,
No. 19 Civ. 00312, 2021 WL 3455314 (E.D.N.Y. Aug. 4, 2021) .......................... 13

*Nation Magazine v. U.S. Customs Serv.*,
71 F.3d 885 (D.C. Cir. 1995) .................................................................................. 10

*Nat'l Assoc. of Homebuilders v. Norton*,
309 F.3d 26 (D.C. Cir. 2002) .................................................................................... 9

*Nat'l Whistleblower Ctr. v. Dep't of Health & Hum. Servs.*,
849 F. Supp. 2d 13 (D.D.C. 2012) .......................................................................... 11

*New York Times Co. v. Dep't of Justice*,
    No. 14 Civ. 03776 (AT) (SN), 2016 WL 5946711 (S.D.N.Y. Aug. 18, 2016)...................... 5, 7

*New York Times v. United States Dep't of Justice*,
    390 F. Supp. 3d 499 (S.D.N.Y. 2019) ................................................................. 8

*NLRB v. Robbins Tire & Rubber Co.*,
    437 U.S. 214 (1978) ........................................................................................ 5, 6

*Peltier v. FBI*,
    218 Fed. App'x 30 (2d Cir. 2007) ..................................................................... 13

*Perlman v. United States Dep't of Justice*,
    312 F.3d 100 (2d Cir. 2002) .............................................................................. 10

*Radcliffe v. IRS*,
    536 F. Supp. 2d 423 (S.D.N.Y. 2008) ............................................................... 5, 6

*Robbins, Geller, Rudman & Dowd, LLP v. United States Sec. & Exch. Comm'n*,
    No. 14 Civ. 2197, 2016 WL 950995 (M.D. Tenn. Mar. 12, 2016) ....................... 8

*Rodriguez v. U.S. Dep't of Army*,
    31 F. Supp. 3d 218 (D.D.C. 2014) .................................................................... 12

*Roman v. CIA*,
    No. 11 Civ. 2390 (JFB) (WDW), 2012 WL 6138487 (E.D.N.Y. Dec. 11, 2012)...................... 8

*Roth v. DOJ*,
    642 F.3d 1161 (D.C. Cir. 2011) ..................................................................... 4, 10

*Senate of the Com. of Puerto Rico v. U.S. Dep't of Justice*,
    823 F.2d 574 (D.C. Cir. 1987) ......................................................................... 2, 3

*Shapiro v. DOJ*,
    177 F. Supp. 3d 467 (D.D.C. 2016) ..................................................................... 3

*Summers v. DOJ*,
    No. 98 Civ. 1837 (RWR), 2004 WL 7333532 (D.D.C. Apr. 14, 2004) .................. 11

*Sussman v. U.S. Marshals Serv.*,
    494 F.3d 1106 (D.C. Cir. 2007) .......................................................................... 8

*Thompson v. DOJ*,
    851 F. Supp. 2d 89 (D.D.C. 2012) ..................................................................... 10

*U.S. Dep't of Justice v. Landano*,
    508 U.S. 165 (1993) ......................................................................................... 14

*United States v. Eastern Air Lines, Inc.*,
    923 F.2d 241 (2d Cir. 1991) .............................................................................. 13

*Statutes:*

5 U.S.C. § 522(b)(6) & 7(C) ................................................................................. 9

5 U.S.C. § 552(b) ................................................................................................ 8

5 U.S.C. § 552(b)(3) ........................................................................................... 12

5 U.S.C. § 552(b)(7)(A) ........................................................................................ 4

18 U.S.C. § 3509 .................................................................................................. 12

18 U.S.C. § 3509(d) .......................................................................................... 12

18 U.S.C. § 5038 ......................................................................................... 12, 13

*Rules:*

Federal Rule of Criminal Procedure 6(e) ................................................................. 12

## PRELIMINARY STATEMENT

The Federal Bureau of Investigation ("FBI") properly withheld the records Plaintiffs seek pursuant to FOIA Exemption 7(A) on the basis that release of the records could reasonably be expected to interfere with the criminal prosecution of Jeffrey Epstein associate Ghislaine Maxwell. Contrary to Plaintiffs' contentions, the FBI did not waive assertion of this exemption. Rather, the FBI promptly asserted Exemption 7(A) after Epstein's arrest in July 2019—well before the parties had even filed summary judgment motions. Further, the FBI has more than met its burden to articulate a rational link between public disclosure of the records and the anticipated interference with the pending criminal prosecution of Maxwell, through, among other things, the declaration of one of the AUSAs handling the Maxwell prosecution. Therefore, all of the information at issue was properly withheld under Exemption 7(A). Should the Court deem it necessary to reach the issue of the applicability of other exemptions, the FBI's explanations for reliance on other exemptions—including Exemptions 6 & 7(C), 3, 5, and 7(D) & (E)—were also logical and plausible.

For all these reasons, the Court should grant the FBI's motion for summary judgment and deny Plaintiffs' cross-motion.

## ARGUMENT

### I. The FBI Properly Withheld Records and Information Under FOIA Exemption 7(A)

#### A. The FBI's Assertion of Exemption 7(A) Was Timely

Contrary to Plaintiffs' contentions (Pls.' Br. 5-8), the FBI timely asserted Exemption 7(A) following Epstein's arrest over records that were processed prior to Epstein's arrest and withheld under other FOIA exemptions and subsequently-processed records. As the FBI explained in its initial brief, ample cases hold that so long as the FBI asserts all exemptions during the district court proceedings, it has not waived the exemption. Def.'s Br. 10-12; *see, e.g.*, *Heffernan v. Azar*, 317

F. Supp. 3d 94, 119 n.14 (D.D.C. 2018) (holding that the agency did not waive exemptions asserted for the first time in the government's reply submission, as it was asserted before summary judgment was complete and before appellate review); *EPIC v. Dep't of Justice*, 296 F. Supp. 3d 109, 122 (D.D.C. 2017) ("[T]he document production process is a fluid one at the district court level, and it often includes contemporaneous review and continuous production determinations by agency-defendants. Thus . . . the government is entitled to articulate fully all of the justifications for withholdings that it makes prior to the Court's ruling on summary judgment . . . ."); *Adamowicz v. IRS*, 552 F. Supp. 2d 355, 361 n.2 (S.D.N.Y. Mar. 31, 2008) ("[W]hile 'an agency may waive the right to raise certain exemptions if it fails to raise them prior to the district court ruling in favor of the other party' . . . the failure to raise an exemption prior to an adverse determination does not give rise to waiver." (citation omitted)). Indeed, a "substantial change in the factual context of the case" can be a permissible basis to assert a FOIA exemption for the first time even when district court proceedings have concluded and the case is on appeal, which is the time when the assertion of new exemptions is generally prohibited. *See, e.g.*, *Senate of the Com. of Puerto Rico v. U.S. Dep't of Justice*, 823 F.2d 574, 581 (D.C. Cir. 1987). Here, the FBI timely asserted FOIA Exemption 7(A) in July 2019—well before summary judgment briefing had occurred—due to the changed factual circumstances of Epstein's anticipated criminal trial and any related criminal investigations.

Plaintiffs' arguments to the contrary are unavailing. Plaintiffs attempt to distinguish this precedent on the grounds that, in those cases, the later-claimed exemptions were not based upon changed factual circumstances, but instead could have been asserted at the time the agency initially processed the records. Pls.' Br. 6-7. The argument that a shorter deadline for the assertion of FOIA exemptions applies in situations involving changed factual circumstances than in cases where there has been no intervening change to justify the assertion of a new exemption is both

illogical and contradicts basic tenets of waiver doctrine. Under plaintiffs' reading of the caselaw, the FBI ordinarily would be allowed to assert new FOIA exemptions at any point before the district court enters judgment, with no justification needed for its change in position, except where there was a change in the underlying factual circumstances that would support the assertion of additional exemptions the time for the FBI to assert such new exemptions would be arbitrarily and abruptly cut off. Unsurprisingly, this incoherent argument finds no support in the cases themselves. Rather, as explained in the Government's opening brief, the caselaw makes clear that changed factual circumstances serve as a basis to extend the time to assert new exemptions. *See, e.g.*, *Senate of the Com. of Puerto Rico*, 823 F.2d at 581. In any event, the FBI did not need to rely on changed factual circumstances, as it timely asserted Exemption 7(A) relatively early in the district court proceedings.

The cases Plaintiffs cite are not to the contrary. Pls.' Br. 5, 7. In *Shapiro v. DOJ*, 177 F. Supp. 3d 467, 469-71 (D.D.C. 2016), consistent with the caselaw relied upon by the Government, the court held that the agency could not change the exemptions it asserted based on a new FOIA processing policy *after* the court had issued its decision in the matter, when the new FOIA processing policy had existed eight months *before* the Court's decision. The court nonetheless allowed the agency to submit briefing on whether the records should be withheld under another exemption relating to national security or the disclosure of sensitive, personal, or private information. *See id.* at 471.

Further, the case Plaintiffs cite for the proposition that the "general rule [is that] a FOIA decision is evaluated as of the time it was made and not at the time of a court's review," *ACLU v. NSA*, 925 F.3d 576, 601-03 (2d Cir. 2019), did not involve consideration of whether an agency was too late in asserting an exemption. Instead, *ACLU* involved a plaintiff's request to "order the re-processing" of contested documents; in rejecting the request, the court reaffirmed the general

rule that an agency should not be ordered to modify its FOIA response based on post-response occurrences. *Id.* This case involved circumstances far removed from those that exist here.

Nor does the FBI's assertion of Exemption 7(A) in July 2019 affect "interests of judicial finality and economy" or "fairness to parties seeking disclosure," as Plaintiffs claim. Pls.' Br. 7. Interests of judicial finality are not implicated, as the FBI asserted the exemption before summary judgment briefing commenced. Indeed, the only prejudice Plaintiffs assert is a hypothetical one based on circumstances that never existed—*i.e.*, Plaintiffs argue that if the Court had ordered the FBI to produce 1,000 pages per month, rather than process 500 pages ordered by the Court, the productions would have been completed before Epstein was prosecuted. Pls.' Br. 7; ECF No. 16.

Finally, Plaintiffs' argument that permitting the FBI to apply Exemption 7(A) in July 2019 would somehow "reward" the FBI for initially withholding unspecified material based on Epstein's personal privacy is both unsupported and farfetched. *Cf. Roth v. DOJ*, 642 F.3d 1161, 1174 (D.C. Cir. 2011) (even convicted criminals who were the subject of plaintiff's FOIA requests have a privacy interest in law enforcement information related to them); *Boyd v. EOUSA*, 87 F. Supp. 3d 58, 79 (D.D.C. 2015) (similar). The FBI has engaged in no gamesmanship here—it promptly asserted Exemption 7(A) over two years ago after Epstein's arrest in a good-faith attempt to prevent the release of information from interfering with Epstein's or any related criminal prosecutions.

Accordingly, the FBI's assertion of Exemption 7(A) was timely.

### B. Disclosure of the Records Would Interfere with Pending Criminal Proceedings

As explained in the FBI's initial brief, all of the records withheld by the FBI pursuant to Exemption 7(A) were "compiled for law enforcement purposes," and their release "could reasonably be expected to interfere with enforcement proceedings." *See* 5 U.S.C. § 552(b)(7)(A); Def.'s Br. 6-10. Plaintiffs do not dispute that the records were compiled for law enforcement

purposes, but instead incorrectly claim that the FBI's declarations are not sufficiently detailed in explaining how release of the records could harm the Maxwell prosecution. Pls.' Br. 9-10. Plaintiffs also make unsupported and speculative assertions that release of the records would not interfere with the prosecution of Maxwell on the basis that prosecutors have already disclosed some records to her, and potential witnesses and jurors likely already know some information about Epstein and Maxwell due to media coverage. Pls.' Br. 10-11. Plaintiffs' arguments are meritless.

As an initial matter, the detailed declaration provided by Maurene Comey, the AUSA for the SDNY prosecuting the criminal action against Maxwell, more than satisfies the FBI's "light" burden of asserting a "logical and plausible" basis for an exemption. *See* Def.'s Br. 4; *ACLU v. U.S. Dep't of Def.*, 901 F.3d 125, 133 (2d Cir. 2018), *as amended* (Aug. 22, 2018); *ACLU v. U.S. Dep't of Def.*, 628 F.3d 612, 624 (D.C. Cir. 2011). Indeed, with respect to showing interference with a criminal proceeding pursuant to Exemption 7(A), the government need only show that "disclosure of particular kinds of investigatory records . . . would generally interfere with enforcement proceedings." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 236 (1978) (quotation marks omitted); *Radcliffe v. IRS*, 536 F. Supp. 2d 423, 437 (S.D.N.Y. 2008). In doing so, the government must only demonstrate a "rational link" between the requested public disclosure and interference with the government's ongoing or prospective investigations or proceedings. *See* Defs.' Br. 6-7; *Crooker v. Bureau of Alcohol, Tobacco, and Firearms*, 789 F.2d 64, 67 (D.C. Cir. 1986); *New York Times Co. v. Dep't of Justice*, No. 14 Civ. 03776 (AT) (SN), 2016 WL 5946711, at *7 (S.D.N.Y. Aug. 18, 2016). Further, the showing of harm under Exemption 7(A) need only be made on a categorical basis. *Robbins Tire*, 437 U.S. at 236. That is, federal courts may make generic determinations that disclosure of particular types of records

could reasonably be expected to interfere with the type of enforcement proceeding at issue. *Radcliffe*, 536 F. Supp. 2d at 437 (quoting *Barney v. I.R.S.*, 618 F.2d 1268, 1273 (8th Cir.1980)).

The FBI has made a sufficient showing here. As explained more fully in the FBI's initial brief, the Comey Declaration delineates the various categories of withheld records and explains how release of those categories of records would interfere with the pending criminal case against Maxwell by revealing the FBI's investigative interests, the scope and focus of the FBI's investigation into Epstein and his associates, including Maxwell, the physical and documentary evidence gathered by the FBI, and the witness and source statements and administrative material. Defs.' Br. 8-10; Comey Decl. ¶¶ 1, 9-21. Exemption 7(A) was enacted precisely to prevent such an end run around the rules governing criminal discovery. *Robbins Tire*, 437 U.S. at 224-25.

Although Maxwell has had access to some records as part of the criminal prosecution, this is immaterial. *See* Pls.' Br. 10; Comey Decl. ¶ 13. Indeed, the fact that some of the materials at issue have been disclosed to Maxwell as part of discovery in a criminal proceeding underscores that such materials are indeed potentially relevant to the prosecution and their premature disclosure would interfere with ongoing criminal prosecution. Release of the entirety of the records at issue in this litigation would allow Maxwell earlier or greater access to the FBI's investigatory files than she would otherwise have through the criminal discovery process. Comey Decl. ¶ 13; *see, e.g.*, *Robbins Tire*, 437 U.S. at 224-25 (legislative history of Exemption 7(A) reflects that "[f]oremost among the purposes of this Exemption was to prevent harm [to] the Government's case in court by not allowing litigants earlier or greater access to agency investigatory files than they would otherwise have") (citations and internal quotation marks omitted). Further, the records and information produced to Maxwell are subject to a Protective Order issued in the criminal prosecution that prevents the dissemination of the productions to the public or press. Comey Decl. ¶ 13; *Maxwell*, No. 20 Cr. 330, ECF No. 36.

Finally, the Court should reject Plaintiffs' speculative assertion (Pls.' Br. 10-11) that because potential witnesses and jurors have heard some information about Epstein and Maxwell from media coverage, release of records and information from the FBI's investigation would not interfere with the Maxwell prosecution. As logically and plausibly explained in the Comey Declaration, the records "include information about which witnesses may be expected to testify at trial, include details that are not publicly known or known to other witnesses, and include information and documents authored by potential trial witnesses," as well as "potential trial exhibits that the government anticipates will be entered into evidence, many of which the potential trial witnesses have not seen." Comey Decl. ¶ 15. Premature release of the records could influence witness testimony by allowing "witnesses to shape their testimony to conform with other evidence gathered during the investigation" and to "consider specific evidence and volume of evidence prior to trial." Comey Decl. ¶¶ 15-16; *see, e.g.*, *Journalism Ctr. v. Office of Indep. Counsel*, 926 F. Supp. 189, 192 (D.D.C. 1996) (Exemption 7(A) applies where "[w]itnesses with access to such information could easily alter, conform or construct their testimony depending upon the information disclosed"). Similarly, premature public disclosure of potential trial exhibits and witness statements "could reasonably be expected to influence potential jurors' perceptions of the witnesses and the evidence to be presented at trial." *Id.* ¶ 17. And potential jurors' consideration of records that will not be presented at trial "may impact the consideration jurors give to the actual evidence." *Id.* ¶ 18. In sum, the Comey Declaration more than meets the FBI's burden "to trace a rational link between the nature of the document and the alleged likely interference" with the pending criminal trial. *NY Times*, 2016 WL 5946711, at *7.

Accordingly, the FBI properly withheld records and information pursuant to Exemption 7(A).

### C. The FBI Satisfied Its Duty to Segregate and Release Any Non-Exempt Information

Contrary to Plaintiffs' contentions (Pls.' Br 11-12), the FBI satisfied its duty to segregate and release any non-exempt information with respect to Exemption 7(A), as well as with respect to other exemptions. *See* Def.'s Br. 24-25; 5 U.S.C. § 552(b). "The agency is entitled to a presumption that it complied with its obligation to disclose reasonably segregable material." *Conti v. U.S. Dep't of Homeland Sec.*, No. 12 Civ. 5827 (AT), 2014 WL 1274517, at *25 (S.D.N.Y. Mar. 24, 2014) (citing *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007)); *see also Bishop v. U.S. Dep't of Homeland Sec.*, 45 F. Supp. 3d 380, 393-94 (S.D.N.Y. 2014) (same). Moreover, in justifying its segregability analysis, an agency "should not be forced to provide such a detailed justification that would itself compromise the secret nature of potentially exempt information." *Roman v. CIA*, No. 11 Civ. 2390 (JFB) (WDW), 2012 WL 6138487, at *7 (E.D.N.Y. Dec. 11, 2012) (quoting *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977)).

"An agency withholding documents under Exemption 7(A) does not need to justify its segregability determination document by document, as the exemption allows agencies to justify withholding based on categories of documents." *New York Times v. United States Dep't of Justice*, 390 F. Supp. 3d 499, 518-19 (S.D.N.Y. 2019). Instead, the government satisfies its obligation by explaining why the categories of records do not contain reasonably segregable non-exempt information. *Robbins, Geller, Rudman & Dowd, LLP v. United States Sec. & Exch. Comm'n*, No. 14 Civ. 2197, 2016 WL 950995, at *9 (M.D. Tenn. Mar. 12, 2016). Nonexempt portions of documents may "be withheld if they are inextricably intertwined with the exempt portions." *Conti*, 2014 WL 1274517, at *25 (quotation marks omitted).

Here, as explained in the declaration provided by the FBI's Section Chief for FOIA processing ("Seidel Declaration"), the records withheld in full by the FBI do not contain any reasonably segregable non-exempt information. Seidel Decl. ¶¶ 114-15. With respect to records withheld in full pursuant to Exemption 7(A), the Comey Declaration explains why each category of records is exempt from disclosure, and further states that, to the extent there is non-exempt information contained in the records withheld under Exemption 7(A), that information is intertwined with exempt information and cannot reasonably be segregated without risking interference with the Maxwell prosecution. Comey Decl. ¶ 23. Records also withheld under other exemptions are either privileged in their entirety or any non-exempt information is inextricably intertwined with exempt information. Seidel Decl. ¶ 44-45. Accordingly, the FBI has complied with its obligation to reasonably segregate any non-exempt portions of the records withheld in full and has sufficiently justified its withholdings.

## II. The FBI Properly Withheld Records and Information Under Other FOIA Exemptions

Because the FBI properly withheld all of the information under Exemption 7(A), the Court need not reach the applicability of the other exemptions. However, should the Court deem it necessary to consider other exemptions, the FBI properly withheld information under Exemptions 3, 5, 6, 7(C), 7(D), and (7E) as well.

### A. The FBI Properly Withheld Information Under Exemptions 6 and 7(C)

For the reasons detailed in the FBI's initial brief, it properly withheld information pursuant to Exemptions 6 and 7(C) due to the strong privacy interests in names and identifying information held by third parties who were of investigative interest to the FBI, third party victims, FBI special agents and victim specialists, and local law enforcement and government personnel. Def.'s Br. 17-20; Seidel Decl. ¶¶ 73-83 & Ex. EE; 5 U.S.C. § 522(b)(6) & 7(C); *Nat'l Assoc. of Homebuilders*

*v. Norton*, 309 F.3d 26, 35 (D.C. Cir. 2002); *DOD v. FLRA*, 510 U.S. 487, 495 (1994); *Associated Press v. U.S. Dep't of Defense*, 554 F.3d 274, 284 (2d Cir. 2009); *see also, e.g.*, *Perlman v. United States Dep't of Justice*, 312 F.3d 100, 106 (2d Cir. 2002) (privacy interest extends to third parties of investigative interest); *Roth v. United States Dep't of Justice*, 642 F. 3d 1161, 1173 (D.C. Cir. 2011) (privacy interest extends to cooperating witnesses who have been assured confidentiality); *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 894 (D.C. Cir. 1995) (privacy interest extends to witnesses and informants); *Thompson v. DOJ*, 851 F. Supp. 2d 89, 99 (D.D.C. 2012) (privacy interest extends to government law enforcement officers and other personnel). Plaintiffs have failed to explain how disclosure of names and identifying information pertaining to these individuals would shed any direct light on the Government's conduct or outweigh the privacy interest—and it would not. *See, e.g.*, *Associated Press*, 554 F.3d at 288-89, 91 ("[D]isclosure of information affecting privacy interests is permissible only if the information reveals something *directly* about the character of a government agency or official" (quoting *Hopkins v. HUD*, 929 F.2d 81, 88 (2d Cir. 1991))).

Plaintiffs' contentions (Pls.' B. 14-16) that identifying information for some individuals, including alleged co-conspirators and victims, should be disclosed to the extent they have been publicly connected to the Epstein investigation or have voluntarily identified themselves is also unavailing.[1] Plaintiffs overlook the well-established difference between media reporting and official Government confirmation of facts. Even if an individual's name has been associated with Epstein in media reports, the individual still maintains a privacy interest in the Government not confirming or further publicizing any association. *See, e.g.*, *Kimberlin v. DOJ*, 139 F.3d 944, 949

---

[1] Plaintiffs' argument appears to concede that individuals whose association with Epstein is not publicly known have a substantial privacy interest in such an association not being publicized.

(D.C. Cir. 1998); *Bast v. U.S Dep't of Justice*, 665 F.2d 1252, 1255 (D.C. Cir. 1981); *see also DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 771 (1989). Further, the high-profile nature of the Epstein matter furthers a third-party individual's privacy interest in avoiding public disclosure of identifying information under Exemptions 6 and 7(C). *See Summers v. DOJ*, No. 98 Civ. 1837 (RWR), 2004 WL 7333532, at *4 (D.D.C. Apr. 14, 2004). The potential intrusion on privacy interests is particularly acute in these circumstances. *See Judicial Watch v. U.S. Dep't of State*, 875 F. Supp. 2d 37, 47 (D.D.C. 2012) (finding a substantial privacy interest where there was an articulable risk of media scrutiny and harassment) (citing *Elec. Privacy Info. Ctr. v. DHS*, 384 F. Supp. 2d 100, 118 (D.D.C. 2005)).

Finally, the Court should reject Plaintiffs' blanket and unsupported assertion that the FBI applied Exemptions 6 and 7(C) too broadly, apparently by withholding more information than an individual's name and address. Pls.' Br. 14. But Exemptions 6 and 7(C) are not limited to such information; indeed, courts have approved even complete withholding of documents pursuant to Exemption 6 and 7(C). *See, e.g.*, *Davis v. United States Postal Inspection Serv.*, 75 F. Supp. 3d 425, 432-33 (D.D.C. 2014) (approving withholding in full because after redactions under 7(C), the remaining material would be meaningless); *Harrison v. Fed. Bureau of Prisons*, 611 F. Supp. 2d 54, 65 (D.D.C. 2009) (approving complete withholding of record where there was "no meaningful information that could be segregated while still protecting the privacy of third parties under exemptions (b)(6) and (b)(7)(C)"); *Levy v. U.S. Postal Serv.*, 567 F. Supp. 2d 162, 167-68 (D.D.C. 2008) (approving the withholding in full of witness statements pursuant to exemption 7(C)); *Nat'l Whistleblower Ctr. v. Dep't of Health & Hum. Servs.*, 849 F. Supp. 2d 13, 30 (D.D.C. 2012) (approving complete withholding of reports where redaction of identifying references was not sufficient to safeguard privacy).

Accordingly, the FBI properly invoked Exemptions 6 and 7(C).

**B. The FBI Properly Withheld Information Under Exemption 3**

The FBI provided a logical and plausible explanation for its assertion of Exemption 3, which applies to records "specifically exempted from disclosure by statute." 5 U.S.C. § 552(b)(3); Def.'s Br. 12-14. In evaluating an agency's invocation of Exemption 3, courts must consider whether the statute identified by the agency is a statute of exemption as contemplated by Exemption 3, and second, whether the withheld material satisfies the criteria of the exemption statute. *CIA v. Sims*, 471 U.S. 159, 167 (1985). Exemption 3 differs from other FOIA exemptions in that its applicability depends less on the detailed factual contents of specific documents; the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage. *Ass'n of Retired R.R. Workers v. U.S. R.R. Retirement Bd*., 830 F.2d 331, 336 (D.C. Cir. 1987).

Even Plaintiffs do not dispute that the three statutes identified by the FBI—the Child Victims' and Child Witnesses' Rights Act, 18 U.S.C. § 3509, the Juvenile Justice and Delinquency Act, 18 U.S.C. § 5038, and Federal Rule of Criminal Procedure 6(e) applying to matters occurring before the federal grand jury—may be applicable to the records at issue. Pls.' Br. 17. Contrary to Plaintiffs' contentions, however, Pls.' Br. 17-18, the FBI has sufficiently explained why and how these statutes apply to exempt the information from release and that it made every effort to release reasonably segregable, non-exempt information. Seidel Decl. ¶¶ 44-45, 49-51, 114-15.

As explained in the Seidel Declaration, the Child Victims' and Child Witnesses' Rights Act, which prohibits disclosing "the name or any other information concerning a child" victim of a crime, 18 U.S.C. § 3509(d), justifies the FBI's withholding of information relating to minor children victims and witnesses as part of the child prostitution investigation of Epstein, and the FBI's *Vaughn* index identifies the records for which it was asserted. Seidel Decl. ¶¶ 49 & Ex. EE; *Rodriguez v. U.S. Dep't of Army*, 31 F. Supp. 3d 218, 237 (D.D.C. 2014). Similarly, the Seidel

Declaration explains that the FBI properly withheld records containing arrest information and criminal history of third-party juveniles pursuant to the Juvenile Justice and Delinquency Act, 18 U.S.C. § 5038, and identified these records on its *Vaughn* index.  *See* Seidel Decl. ¶ 51 & Ex. EE.

Finally, the FBI properly explained what information it was withholding pursuant to Rule 6(e) and that it was withholding the information because it "may tend to reveal what transpired before" the grand jury.  *See United States v. Eastern Air Lines, Inc.*, 923 F.2d 241, 244 (2d Cir. 1991); Seidel Decl. ¶ 50 & Ex. EE.  The categories of information withheld by the FBI, including files containing information about the names of recipients of federal grand jury subpoenas, information that identifies specific records subpoenaed by a federal grand jury, and copies of specific records provided pursuant to federal grand jury subpoenas, all fall within the scope of Rule 6(e).  Seidel Decl. ¶ 50; *see, e.g.*, *Lopez v. DOJ*, 393 F.3d 1345, 1350 (D.C. Cir. 2005) ("All grand jury subpoenas . . . fall within FOIA's third exemption."); *Peltier v. FBI*, 218 Fed. App'x 30, 32 (2d Cir. 2007) (affirming withholding of grand jury subpoenas, materials and information, and dates of grand jury testimony under Rule 6(e)); *Mermerlstein v. DOJ*, No. 19 Civ. 00312, 2021 WL 3455314, at *6 (E.D.N.Y. Aug. 4, 2021) (Report and Recommendation) (names of recipients of federal grand jury subpoenas, information that identifies specific records subpoenaed by federal grand jury, and copies of specific records provided to a federal grand jury in response to the subpoenas is "information [that] is exactly the type that Rule 6(e) is intended to protect and, as such, was properly excluded from disclosure under Exemption 3").

Accordingly, the FBI properly withheld information pursuant to Exemption 3.

### C.  The FBI Properly Withheld Information Under Exemption 5

For the reasons explained in the FBI's initial brief and Seidel Declaration, the FBI also properly withheld five memoranda under Exemption 5 on the basis that they were attorney work product.  Defs.' Br. 15-17; Seidel Decl. ¶¶ 53-54; *Grand Cent. Partnership, Inc. v. Cuomo*, 166

F.3d 473 (2d Cir. 1999) (citation omitted); *see also Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001).  Plaintiffs do not appear to dispute this, but instead argue that the memoranda do not fall within the deliberative process privilege, Pls.' Br. 18-19—a different privilege than the attorney work product privilege and one that the FBI has not asserted.

### D.  The FBI Properly Withheld Records and Information Under Exemptions 7(D) and 7(E)

Finally, the FBI properly withheld records and information pursuant to Exemptions 7(D) and 7(E). 5 U.S.C. § 552(b)(7)(D)-(E); Def.'s Br. 20-24.  Plaintiffs do not appear to seriously dispute this, but instead vaguely argue that the FBI's assertion of these exemptions "[l]ack [s]ufficient [c]ontext."  Pls.' Br. 20-21.  To the contrary, with respect to Exemption 7(D), the FBI logically and plausibly explained in the Seidel Declaration that it withheld the names and identifying information of confidential sources, as well as the information they provided under express or implied assurances of confidentiality, because these sources furnished the information with the understanding that their identities and the information they provided would not be divulged outside of the FBI.  Seidel Decl. ¶¶ 87-91; *U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 165 & 171 (1993); Def.'s Br. 20-21.  Release of the information could reasonably be expected to reveal the sources' identities, cause harm to the individuals, and dissuade individuals from speaking freely with the FBI.  Seidel Decl. ¶¶ 87-91.

Similarly, with respect to Exemption 7(E), the FBI logically and plausibly explained in the Seidel Declaration that it withheld records and information compiled for law enforcement purposes where release would disclose techniques and procedure.  Def.'s Br. 22-24; *Brennan Ctr. v. Dep't of Homeland Sec.*, 331 F. Supp. 3d 94, 97 (S.D.N.Y. 2018) (quoting *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 148 (1989)).  Records subject to Exemption 7(E) are "categorically exempt from FOIA disclosure 'without need for 'demonstration of harm.'"  *Iraqi Refugee Assistance*

*Project v. U.S. D.H.S.*, No. 12 Civ. 3461 (PKC), 2017 WL 1155898, at *5 (S.D.N.Y. Mar. 27, 2017) (quoting *Allard K. Lowenstein Int'l Human Rights Project v. DHS*, 626 F.3d 678, 681 (2d Cir. 2010)). Exemption 7(E) sets a "low bar for the agency to justify withholding," *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011). As explained in the Seidel Declaration and the FBI's initial brief, the FBI identified seven categories of information withheld pursuant to Exemption 7(E) and explained how each of these categories of information pertains to "how law enforcement officials go about investigating a crime." *Lowenstein*, 626 F.3d at 682; *see* Seidel Decl. ¶¶ 98-112; Def.'s Br. 23. Although not required to do so, the FBI has also described for each category how release of such information could reasonably be expected to create a risk of circumvention of the law. *Id.* Courts have repeatedly held that information from the databases described in the Seidel Declaration are properly withheld pursuant to Exemption 7(E); Def.'s Br. 23-24 (collecting cases).

Accordingly, the FBI's withholdings pursuant to Exemptions 7(D) and 7(E) were proper.

## CONCLUSION

For the foregoing reasons, the Court should grant the Government's motion for summary judgment and deny Plaintiffs' cross-motion for summary judgment.

Dated: New York, New York
       October 4, 2021

Respectfully submitted,

AUDREY STRAUSS
United States Attorney for the
Southern District of New York
Counsel for Defendant

By:    /s/ Allison M. Rovner
ALLISON M. ROVNER
Assistant United States Attorney
86 Chambers Street, 3rd floor
New York, New York 10007
Telephone: (212) 637-2691
Fax: (212) 637-2750
Email: allison.rovner@usdoj.gov