**UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------------X

**RADAR ONLINE LLC and JAMES ROBERTSON**,  :          No. 17 Civ. 3956 (PGG)

Plaintiff,                                                                :

                                  - against -                          :

**FEDERAL BUREAU OF INVESTIGATION**,            :

Defendant.                                                         :

-------------------------------------------------------------------------X

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
IN SUPPORT OF PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT**

DANIEL R. NOVACK

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ……………………………………………………………1

BACKGROUND ……………………………………………………………………...2

I.     Investigation of Jeffrey Epstein……………………………………………………3

II.    Plaintiffs' FOIA Request……………………………………………………………3

III.   FBI Production and Shifting Withholding Rationales…………………………………….3

IV.   FBI's Current Claimed Exemptions…………………………………………………4

ARGUMENT ……………………..……………………………………………………4

I.     The FBI Cannot Rely on Exemption 7(A) Because There Was No Law Enforcement Proceeding at The Time of Plaintiffs' Request ……………………………………5

II.    Even if Exemption 7(A) Were Available, the FBI Has Not Met Its Burden………………8

III.   The FBI Must Identify, Segregate, And Release Non-Exempt Records…………………11

IV.   The FBI Failed to Appropriately Weigh the Public Interest in its Application of Exemptions 6 and 7(C)……………………………………………………………………...12

V.    The FBI's Invocation of Exemptions 3 Lacks Sufficient Context………………………17

VI.   The FBI Fails to Substantiate an Interest Harmed Under Exemption 5…………………18

VII.  The FBI's Invocations of Exemptions 7(D) and 7(E) Lack Sufficient Context………….20

CONCLUSION ……………..……………………………………………...………………21

# TABLE OF AUTHORITIES

**CASES**                                                                                                    **PAGE**

*ACLU v. NSA,*

    925 F.3d. 576, 602 (2d. Cir. 2019)……………………………………………………5

*Amnesty International USA v. CIA,*

    728 F. Supp. 2d 479 (S.D.N.Y. 2010) ......................................................................... 8

*Associated Press v. DOD,*

    554 F.3d 274, 284 (2d Cir. 2009)…………………………………..………..…..13

*August v. FBI,*

    328 F.3d 697 (D.C. Cir. 2003) ………………………………………………..……...6

*Barnard v. Dept. of Homeland Sec.,*

    531 F. Supp. 2d 131, 140 (D.D.C. 2008) ................................................................11

*Bast v. DOJ,*

    665 F.2d 1251, 1255 (D.C. Cir. 1981)………………………………………....…..13

*Billington v. DOJ,*

    233 F.3d 581, 584 (D.C. Cir. 2000)…………………………………………….20

*Campbell v. HHS,*

    682 F.2d 256, 259 (D.C.Cir.1982) ……………………………………..…….... 9

*Carney v. DOJ,*

    19 F.3d 550 (D.C. Cir. 1999) ………………………………..…………………..…..4

*Citizens for Responsibility & Ethics in Wash. v. DOJ,*

    746 F.3d 1082, 1094 (D.C. Cir. 2014)…………………………………..…14, 20

*Citizens for Responsibility & Ethics in Wash. v. DOJ,*

    854 F.3d 675, 683 (D.C. Cir. 2017)…………………………………………14

*Crooker v. Bureau of Alcohol, Tobacco & Firearms,*

    789 F.2d 64, 67 (D.C. Cir. 1986)……………………………………………....9

*DOD v. FLRA,*

    510 U.S. 487, 495 (1994)……………………………………………………..13

**CASES (ctd)**                                                                                           **PAGE**


*DOJ v. Reporters Comm. for Freedom of Press,*

      489 U.S. 749, 766 n.18 (1989)……………………………………………....13

*Grand Cent. Partnership, Inc. v. Cuomo,*

      166 F.3d 473 (2d Cir. 1999)………………………………………………18

*Judicial Watch, Inc. v. Dept. of Commerce*,

      375 F. Supp. 3d 93, 100 (D.D.C. 2019)…………………………………..…19

*Judicial Watch, Inc. v. DOD,*

      847 F.3d 735, 739, (D.C. Cir. 2017)………………………………………18

*Judicial Watch, Inc. v. DOJ,*

      2020 U.S. Dist. LEXIS 178773 at *3 (D.D.C. Sept. 29, 2020)………………………...19

*Kimberlin v. DOJ,*

      139 F.3d 944, 949 (D.C. Cir.1998)………………………………………….15

*Lion Raisins v. USDA,*

      *354 F.3d 1072, 1085 (9th Cir. 2004)* …………………………….……...…..9

*Long v. DOJ,*

      450 F.2d 42, 73 (D.D.C. 2006) ……………………………………….…… 12

*Lopez v. DOJ*,

      393 F.3d 1345, 1350 (D.C. Cir. 2005)……………………...……………………17

*Maydak v. DOJ,*

      218 F.3d 760 (D.C. Cir. 2000) ……………………………….………...…..6

*Mead Data Cent. Inc. v.  Air Force,*

      566 F.2d 242, 261 (D.C.Cir.1977) ………………………………………11

*Military Audit Project v. Casey,*

      656 F.2d 724 (D.C.Cir.1981) ………………………………………………..8

*Nation Magazine v. Customs Service,*

      71 F.3d 896 (D.C. Cir. 1995)…………………………………………..14, 15

**CASES (ctd)**                                                    **PAGE**


*Nat'l Assoc. of Homebuilders v. Norton*,

    309 F.3d 26, 35 (D.C. Cir. 2002)……………………………………………....13

*Nat'l Day Laborer Org. Network v. ICE*,

    2020 U.S. Dist. LEXIS 167637, at *33 (S.D.N.Y. Sept. 14, 2020)…………………19

*Neb. Press Ass'n v. Stuart*,

    427 U.S. 539, 565 (1976)……………………………………………………………10

*New York Times Co. v. DOD*,

    499 F. Supp. 2d 501, 514 (S.D.N.Y. 2007)…………………………………………18

*New York Times Co. v. DOJ*,

    756 F.3d. 100 (2d. Cir. 2014)…………………………………………………....5

*New York Times Co. v. HHS*,

    2021 U.S. Dist. LEXIS 6267, at *30 (S.D.N.Y. Jan. 13, 2021)……………………..19

*NLRB v. Robbins Tire & Rubber Co.*,

    437 U.S. 214 (1978) …………………………………………………………… 8

*Roth v. DOJ*,

    642 F.3d 1161, 1184 (D.C. Cir. 2011)………………………..…………………..20

*Shapiro v. DOJ*,

    177 F. Supp. 3d 467 (D.D.C. 2016) …………………………………………….7

*Scheer v. DOJ*,

    35 F. Supp. 2d 9, 14 (D.D.C. 1999) …………………………………………..9

*Senate of the Com. of Puerto Rico v. DOJ*,

    823 F.2d 574 (D.C. Cir. 1987)…………………………………..…6, 7

*Showing Animals Respect and Kindness v. Dept. of Interior*,

    730 F. Supp.2d 180, 191 (D.C. 2010)…………………………………………..8

*U.S. v. Martoma*,

    2013 U.S. Dist. LEXIS 182959, at *22 (S.D.N.Y. Dec. 8, 2013)…………………..10

**<u>CASES (ctd)</u>**                                                                                                      **<u>PAGE</u>**

*Wilner v. NSA,*

    592 F.3d 60, 69, 73 (2d Cir. 2009) ……………………………………………………………5

*Wood v. FBI,*

    432 F.3d 78, 85 (2d Cir. 2005)…………………………………………………….…..5

*Wright v. OSHA,*

    822 F.2d 642, 646 (7th Cir. 1987) ……………………………………………….…….9


**<u>STATUTES</u>**                                                                                                         **<u>PAGE</u>**

5 U.S. Code § 552 ………………………………………………………………………..*passim*

The Child Victims' and Child Witnesses' Rights Act 18 USC. § 3509 ………..…………….17

Juvenile Justice and Delinquency Act, 18 U.S.C. § 5038…………………..…………..….17


**RULES**

Federal Rule of Criminal Procedure 6(e)……………………………………..…………..….17


**DOCKETS**

*U.S. v. Ghislaine Maxwell,*

    1:20-cr-330-AJN, Letter to Judge Nathan, Jan. 14, 2021, Docket No. 116………..…10

*Podhurst Orseck, P.A. v. Epstein,*

    1:10-cv-21586-ASG (SD Florida 2010), Docket No. 1, Exhibit 3……………..………15

Plaintiffs respectfully submit this Memorandum of Law in opposition to Defendant's Motion for Summary Judgment and in support of Plaintiffs' Cross-Motion for Summary Judgment.

## PRELIMINARY STATEMENT

In April 2017, Plaintiffs made a Freedom of Information Act ("FOIA") request for records related to the FBI's 2006 investigation of disgraced financier and child sex-trafficker Jeffrey Epstein. Remarkably, the FBI claimed in response that Epstein's personal privacy trumped the public's right to know the details of the FBI's investigation.

Once a public campaign – in which Plaintiffs played a prominent role – inspired the government to re-arrest Epstein in July 2019, the FBI pivoted to a new rationale to withhold records: Exemption 7(A), which guards against interference with a law enforcement proceeding. Though Epstein died a month later, the FBI continued to apply 7(A). It now justifies withholding more than ten thousand pages of material principally on the basis that release of the records would interfere with the prosecution of Epstein's alleged co-conspirator Ghislaine Maxwell, while also asserting a smattering of additional unsubstantiated exemptions.

The Court should reject the FBI's asserted exemptions, deny its motion for summary judgment, and grant Plaintiff's cross-motion for summary judgment.

First, the FBI cannot avail itself of Exemption 7(A). The FBI has no right under FOIA to retroactively claim an Exemption that did not exist at the time of the request. FOIA is not a shell game. When a FOIA requestor challenges the justification of the government's withholdings, the only relevant facts are the ones extant at the time of the request. And, here, there were no pending investigations that would justify the FBI's invocation of Exemption 7(A) from 2017 through 2019.

Second, even if it were proper to apply exemptions retroactively, as the FBI argues, the FBI fails to satisfy its burden of proof for this exemption, particularly because Maxwell has already received a huge volume of the materials at issue in her criminal proceeding.

Third, the FBI was required, and failed, to undertake a segregability analysis to produce the portions of records that were not implicated by the law enforcement exemptions. Instead, it has withheld materials wholesale based on conclusory declarations.

Finally, the additional exemptions asserted by the FBI - 3, 5, 6, 7(C), 7(D), and 7(E) - fail because the documents and justifications for nondisclosure lack reasonably specific detail and there is no evidence of an attempt to segregate non-exempt material.

## BACKGROUND

### I. Investigation of Jeffrey Epstein

Despite FBI investigators identifying at least thirty-six girls who he sexually abused and trafficked, Jeffrey Epstein plead guilty in Florida state court to a single count, each, of procuring a child for prostitution and of soliciting a prostitute. Some were as young as fourteen. Brown, Julie K., "How a future Trump Cabinet member gave a serial sex abuser the deal of a lifetime," *Miami Herald*, November 28, 2018.

In return, Epstein and his co-conspirators were granted total immunity by then-U.S. Attorney for the Southern District of Florida, Alexander Acosta. Epstein did a short stint in a private wing of the county lockup, where he was allowed to come and go as he pleased. Then he went right back to his career in finance and re-established himself as a global philanthropist. *Id.*

According to one report, Acosta was told that Epstein "belonged to intelligence" and to "leave it alone." Ward, Vicky, "Jeffrey Epstein's Sick Story Played Out for Years in Plain Sight,"

*The Daily Beast,* July 9 2019, available at: https://www.thedailybeast.com/jeffrey-epsteins-sick-story-played-out-for-years-in-plain-sight. Others have speculated that Epstein's close ties to numerous prominent political figures might have helped him receive preferential treatment from authorities. *See* Goodnough, Abby, "Questions of Preferential Treatment Are Raised in Florida Sex Case," *The New York Times*, Sep. 3, 2006.

## II.    Plaintiffs' FOIA Request

In April 2017, Plaintiffs submitted a FOIA request to the FBI seeking to determine why Epstein received such extraordinarily lenient treatment. After the FBI failed to provide documents within the statutory deadline, Plaintiffs filed the present action in May 2017. In October 2017, the Court ordered the FBI to produce 500 pages of documents per month (over Plaintiffs' objection that the FBI should be required to produce 1000 pages of documents per month) and the parties agreed to a Stipulation under which the scope of the request was narrowed to the FBI's main investigative file and additional sub-files. [Docket Nos. 16, 17].

## III.    FBI Production and Shifting Withholding Rationales

At the time of Plaintiffs' FOIA request, and for the first twenty-one monthly productions, there were no active "enforcement proceedings" related to the records sought by Plaintiff. The FBI premised virtually all of its expansive withholdings on Exemptions 6 and 7(C), both of which are predicated on protection of personal privacy, based on the privacy interests of Epstein – a notorious convicted sex offender.

In July 2019, the Southern District US Attorney's Office unsealed a new indictment of Epstein. In August 2019, in the twenty-second monthly production to Plaintiffs (out of twenty-eight total), the FBI for the first time invoked the law enforcement exemption, Exemption 7(A),

categorically over all the remaining responsive documents, except for 46 pages that were already publicly available. Seidel Decl. ¶¶ 30-31, 57-68. Additionally, the FBI claimed that the records previously withheld for privacy reasons would continue to be withheld under 7(A). Seidel Decl. ¶ 30, Ex. EE.

Although Epstein died in August 2019, the FBI continued to withhold all remaining documents under 7(A). Maxwell was arrested nearly a year later, on July 2, 2020[1].

## IV.    FBI's Current Claimed Exemptions

In addition to citing Exemption 7(A) on a categorical basis, the FBI also cites the following bases for withholding:

(1)    Exemptions 6 and 7(C) – Third-Party Privacy for Witnesses and Suspected Co-Conspirators.

(2)    Exemption 3 – the Child Victims' and Child Witnesses' Rights Act, Federal Rule of Criminal Procedure 6(e), and the Juvenile Justice and Delinquency Act.

(3)    Exemption 5 – Deliberative Process Privilege.

(4)    Exemption 7(D) - Confidential Source Protection.

(5)    Exemption 7(E) – Law Enforcement Techniques and Procedures.

## **ARGUMENT**

In a FOIA lawsuit, the defending agency has the burden of showing that its search was adequate and that any withheld documents fall within an exemption to the FOIA." *Carney v. DOJ*, 19 F.3d 807, 812 (2d Cir.1994). A court reviews de novo an agency's decision to withhold information from the public. 5 U.S.C. § 552(a)(4)(B). Although courts review

---

[1]    Though the FBI continued to apply 7(A) between August 2019 and the final production in January 2020, it is unclear whether there was a pending enforcement of Maxwell at the time of Epstein's death that would have justified continued withholding.

reasonably detailed agency affidavits with a presumption of good faith, this primarily is for determining the need for further fact-finding. *See, e.g., Wood v. FBI*, 432 F.3d 78, 85 (2d Cir. 2005); see also *Wilner v. NSA*, 592 F.3d 60, 69, 73 (2d Cir. 2009) (presumption does not replace de novo review by courts).

Plaintiffs' motion for summary judgment should be granted and Defendant's denied because:

(1)     FOIA does not allow agencies to retroactively redact material based on developments that post-dated their decision to withhold.

(2)     The FBI's declarations fail to explain how release of the records would interfere with Maxwell's prosecution, particularly because she has already received many of the records.

(3)     The FBI failed to undertake the required segregability analysis.

(4)     The FBI's rationales for additional exemptions lack any specific application to the records at issue.

## I.     The FBI Cannot Rely on Exemption 7(A) Because There Was No Law Enforcement Proceeding at The Time of Plaintiffs' Request.

In the Second Circuit, it is the "general rule [that] a FOIA decision is evaluated as of the time it was made and not at the time of a court's review." *ACLU v. NSA*, 925 F.3d 576, 602 (2d. Cir. 2019) (quoting *New York Times Co. v. DOJ*, 756 F.3d 100 (2d. Cir. 2014)).

Here, the FBI relies on Exemption 7(A) of the Freedom of Information Act, which authorizes the withholding of "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to interfere with enforcement proceedings." 5 U.S. Code § 552(b)(7)(A).

While acknowledging the general principle that a FOIA decision is evaluated at the original time it was made, and that it would ordinarily not be entitled to rely on Exemption 7(A) because

there were no active "enforcement proceedings" at the time of Plaintiffs' requests, the FBI argues it is entitled in this case to rely on the exemption due to a change in circumstances: the subsequent prosecution of Maxwell. It is not for several reasons.

First, this Court should not permit the assertion of retroactive exemptions. Retroactive exemptions produce an unfair process for requestors, a lack of finality for courts, and encourage agencies to utilize placeholder exemptions to delay disclosure. That is well-illustrated here where the FBI has repeatedly moved the goalposts with shifting exemption claims.

Second, to the extent the Court chooses to rely on the Government's cases in this area (and strong interests in finality and fairness militate against it), there is good reason to limit the changed circumstances exception to the facts of these cases. In each case cited by the FBI, the exemptions were all based on facts in existence at the time of the request and that could have asserted **at the time of the request**. For example, in *Senate of the Com. of Puerto Rico v. DOJ*, 823 F.2d 574 (D.C. Cir. 1987), the DOJ was permitted to pivot to narrower exemptions after the basis for its broad assertion of 7(A) collapsed during the pendency of an appeal. Those exemptions had been available to the agency at the time of the request but were simply not utilized. In other words, the invocation was justifiable, if belated.

The remaining cases cited by the Government follow the same script. *See Maydak v. DOJ*, 218 F.3d 760 (D.C. Cir. 2000) (following collapse of 7(A) due to changed circumstances, the government asserted late exemptions on appeal, all of which it could have asserted at the time of the original request); *August v. FBI*, 328 F.3d 697 (D.C. Cir. 2003) (same). Here, in contrast, the FBI seeks to retroactively apply an exemption based on facts that did not exist at the time of the request and did not develop until over two years after the request was made.

6

There is good reason to limit the changed circumstances exception to the facts of these cases. In *Puerto Rico*, the D.C. Circuit was concerned that mulligans like these go against the "interests of judicial finality and economy" as well as "fairness to parties seeking disclosure" but found comfort in the fact that the plaintiff was no worse off than they would have been if the agency had used all exemptions available to it at the time of the request. *Puerto Rico*, 823 F.2d at 580. Here, however, in addition to the promotion of judicial finality and economy and basic fairness, Plaintiffs are in a worse position than if the FBI had timely responded to the initial request as is its obligation under statute. Indeed, if the Court had ordered the FBI to produce 1,000 pages of documents per month, as Plaintiffs requested, the productions would likely have been completed before Epstein was even re-prosecuted.

Third, the need to limit the changed circumstances doctrine is particularly striking here because the changed circumstance is entirely of the Government's own making. The FBI's claimed ability to benefit from its own conduct here is analogous to *Shapiro v. DOJ*, 177 F. Supp. 3d 467 (D.D.C. 2016). There, the DOJ adopted a new policy regarding its disclosure of "search slips and processing notes" during the district court proceedings, and it attempted to use this policy to justify withholding of certain records sought by the plaintiff. The court rejected this effort to claim that an "interim development" driven by the government's own actions should be permitted to serve as the basis for withholdings. *Id.* at 470 ("The FBI does not point to any 'interim development,' at least not to one outside its control.").

Finally, permitting the Government to apply exemptions retroactively would reward the Government's wrongful withholding of the material in the first place based on Epstein's personal privacy. That withholding was wrongful given the exceptional public interest in the government's

handling of the Epstein case and the diminished privacy afforded individuals like Epstein who have plead guilty and been convicted. *See, e.g.*, *Showing Animals Respect and Kindness v. Dept. of Interior*, 730 F. Supp.2d 180, 191 (D.C. 2010) (video of criminal defendant convicted of killing tame bear in violation of Lacey Act not exempt from disclosure). The lack of a legitimate basis for this exemption is illustrated by the fact that the FBI does not now assert a privacy exemption based on the privacy of his alleged co-conspirator Maxwell, even though – unlike Epstein - she has not been convicted of any crime. Nonetheless, for two years following Plaintiffs' suit, the FBI redacted on a near-categorical basis based on Epstein's privacy.

## II.     Even if Exemption 7(A) Were Available, the FBI Has Not Met Its Burden

To justify the application of Exemption 7(A), an agency must satisfy two criteria: (1) a law enforcement proceeding is pending or prospective, and (2) release of the information sought could reasonably be expected to cause some articulable harm. *See NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 224 (1978) (holding that government must show how records "would interfere with a pending enforcement proceeding"). To grant summary judgment to an agency based on affidavits, a court must find that the affidavits:

(1)     Describe the documents and the justifications for nondisclosure with reasonably specific detail;

(2)     Demonstrate that the information withheld logically falls within the claimed exemption; and

(3)     Are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.

*Amnesty Intl. USA v. CIA*, 728 F. Supp. 2d 479, 496 (S.D.N.Y. 2010) (citing *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir.1981)).

Exemption 7(A) requires "more than conclusory statement[s]" about how the records at issue would interfere with a pending enforcement proceeding." *Campbell v. HHS*, 682 F.2d 256, 259 (D.C.Cir.1982). While the government does not need to make a document-by-document showing to justify exemption 7(A), it must articulate "functional" categories of documents that allow the court to trace a rational link between the nature of the document and the alleged likely interreference. *See Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 789 F.2d 64, 67 (D.C. Cir. 1986).

Courts also recognize that disclosure cannot pose a threat to an existing proceeding when the subject of the proceeding already has copies of the records at issue. *See, e.g., Lion Raisins v. USDA*, 354 F.3d 1072, 1085 (9th Cir. 2004) ("Because Lion already has copies . . . USDA cannot argue that revealing the information would allow Lion premature access to the evidence upon which it intends to rely at trial"); *Wright v. OSHA*, 822 F.2d 642, 646 (7th Cir. 1987) (finding Exemption 7(A) inapplicable when disclosure would not provide plaintiff "with any information that it does not already have"); *Scheer v. DOJ*, 35 F. Supp. 2d 9, 14 (D.D.C. 1999) (declaring that agency assertions of harm and "concern proffered . . . cannot stand" when agency itself disclosed information to target).

Here, the Government has failed to carry its burden to demonstrate the applicability of Exemption 7(A). Instead, it offers conclusory statements and fails to rebut contrary evidence.

First, the FBI's supporting declarations do not offer sufficient detail. They merely summarize what types of documents exist within Epstein's FBI file without specifically demonstrating how they could harm the specific law enforcement case at issue. The FBI essentially acknowledges the meagerness of its showing arguing that even minimal specificity –

or justification - cannot be offered because "[p]roviding more detailed public descriptions of the withheld documents and how their release would interfere with the Maxwell prosecution would itself risk interfering with the Maxwell prosecution." Comey Decl. ¶ 12.

Second, the FBI's conclusory justifications of harm – based on disclosure of the material to Maxwell, taint to the jury pool, and impact on witnesses – do not withstand scrutiny.

With respect to Maxwell:

- The FBI admits sending Maxwell "discoverable and potentially exculpatory materials **from these record**s" which "include, among other things, documents that the Government may seek to introduce as exhibits at trial, as well as statements and background information regarding witnesses the Government does not intend to call to testify at trial but whom the defense may wish to call as witnesses." (Emphasis added). Comey Decl. ¶ 13.[2]

- The government concedes it is in the process of disclosing to Maxwell "all testifying witness statements, material subject to disclosure pursuant to *Giglio v. United States*, 405 U.S. 150 (1972), and a list of proposed trial exhibits." Comey Decl. ¶ 13.

- According to Maxwell's defense attorney, the Government has already produced "millions of documents" to the defense as of January 2021. *U.S. v. Ghislaine Maxwell*, 1:20-cr-330-AJN, Letter to Judge Nathan, Jan. 14, 2021, Docket No. 116.

With respect to the jury pool, "pretrial publicity, even if pervasive and concentrated, cannot be regarded as leading automatically and in every kind of criminal case to an unfair trial." *U.S. v. Martoma*, 2013 U.S. Dist. LEXIS 182959, at *22 (S.D.N.Y. Dec. 8, 2013) (citing *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 565 (1976)). Besides, release of the records could hardly further color a jury any more than the ubiquitous press reports, social media chatter, television programs, and books devoted to the subject. Below are some of the highlights:

---

2      In the very same paragraph admitting that material "from these records" was shared with Maxwell, the Comey Declaration insists that "[r]elease of the entirety of the records at issue in this litigation will allow Maxwell earlier or greater access to agency investigatory files than she otherwise would have through the criminal discovery process." Comey Decl. ¶ 13. How?

- Documentaries: "Jeffrey Epstein: Filthy Rich" (Netflix 2020) and "Surviving Jeffrey Epstein," (Lifetime 2020);

- Television news specials: "Epstein's Shadow: Ghislaine Maxwell" (Peacock 2021); "Jeffrey Epstein: The Reckoning" (Dateline NBC 2019); "Truth & Lies: Jeffrey Epstein" and "Notorious: Ghislaine Maxwell" (ABC News); "The Twisted World of Jeffrey Epstein" (Fox News 2020);

- Books: "Perversion of Justice: The Jeffrey Epstein Story" by Julie K. Brown; "Filthy Rich: The Jeffrey Epstein Story" by James Patterson, John Connolly, and Tim Malloy; "Relentless Pursuit: My Fight for the Victims of Jeffrey Epstein" by Bradley J. Edwards, "The Spider: Inside the Criminal Web of Jeffrey Epstein and Ghislaine Maxwell" by Barry Levine; or "Epstein: Dead Men Tell No Tales" by Dylan Howard (with Melissa Cronin and co-plaintiff James Robertson).

- Podcasts: "Hunting Ghislaine Maxwell" (LBC); "Chasing Ghislaine" (Audible); "Power: The Maxwells" and "Broken: Seeking Justice" (Sony); "Truth and Lies" (ABC).

Finally, the FBI's claim that release of the records could impact potential witnesses is similarly unpersuasive. Beyond the omnipresent media coverage described above, many of these witnesses have themselves appeared in the above-referenced programs, filed lawsuits against Epstein or Maxwell, and given on-the-record statements to the news media.

The FBI's application of Exemption 7(A) should therefore be rejected.

## III. The FBI Must Identify, Segregate, And Release Non-Exempt Records.

The question of segregability is "subjective based on the nature of the document in question, and an agency must provide a reasonably detailed justification rather than conclusory statements to support its claim that the non-exempt material in a document is not reasonably segregable." *Mead Data Cent. Inc. v. Air Force*, 566 F.2d 242, 261 (D.C.Cir.1977). Moreover, its explanation "should at least detail what proportion of the information in a document is non-exempt and how that material is dispersed throughout the document." *Barnard v. Dept. of Homeland Sec.*, 531 F. Supp. 2d 131, 140 (D.D.C. 2008) (*Citing Mead Data*, 566 F.2d at 261).

Although FOIA permits agencies to craft rules exempting certain categories of records from disclosure under Exemption 7(A), instead of making a record-by-record showing, an "agency's ability to rely on categorical rules . . . has limits." *Long v. DOJ*, 450 F.2d 42, 73 (D.D.C. 2006).

The FBI has failed to appropriately segregate materials and has clearly exceeded its ability to rely on categorical rules. First, neither of the FBI's declarations offer any evidence of an attempt by the FBI to identify, segregate, and release non-exempt portions of the requested material, as required under FOIA. 5 U.S.C. § 552(b) ("Any reasonably segregable portion of a record shall be provided to any person requesting such a record after deletion of the portions which are exempt."). Second, at a minimum, the FBI can segregate the records that Maxwell already possesses. Third, even for records that are outside of her possession, the FBI refuses to explain why it cannot simply segregate material.

Instead, the FBI offers the absurd rationale that "the provision of information related to Epstein without complete context risks compounding" the public's "unfounded speculation." FBI's Memorandum of Law, Page 25. Calling to mind Colonel Jessup in "A Few Good Men," the FBI insists: "You can't handle the truth!"

## IV.    The FBI Failed to Appropriately Weigh the Public Interest in its Application of Exemptions 6 and 7(C).

Exemption 6 protects from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 7(C) exempts from disclosure records or information compiled for law enforcement purposes where its production "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

Under Exemption 6, a court considers whether the "public interest in disclosure outweighs the individual privacy concerns." *Nat'l Assoc. of Homebuilders v. Norton*, 309 F.3d 26, 35 (D.C. Cir. 2002) (internal quotation marks omitted). But the "only relevant public interest in disclosure to be weighed in this balance is the extent to which disclosure would . . . contribut[e] significantly to public understanding of the operations or activities of the government." *DOD v. FLRA*, 510 U.S. 487, 495 (1994). Similarly, a court applying Exemption 7(C) must "balance[s] the public interest in disclosure against the [privacy] interest." *Associated Press v. DOD*, 554 F.3d 274, 284 (2d Cir. 2009).

Here, according to the FBI, the information withheld under Exemptions 6 and 7(C) includes: "the names of third parties who were of investigative interest to the FBI, identifying information regarding third party victims, identifying information of third party witnesses, including confidential informants, names of FBI special agents and victim specialists, names of local law enforcement personnel, and names of local government personnel." Seidel Decl. ¶¶ 73-83. Material withheld under these exemptions includes "witness statements containing intimate details relating to third parties, phone logs, private social media information, photographs, law enforcement records, and flight logs." Seidel Decl. Ex. EE. The Court should reject the FBI's conclusory invocation of these exemptions.

First, this is a matter of substantial public interest. The Supreme Court has recognized that "matters of substantive law enforcement policy … are properly the subject of public concern." *DOJ v. Reporters Comm. for Freedom of Press,* 489 U.S. 749, 766 n.18 (1989). Given the immense amount of controversy surrounding the Epstein investigation, the public interest could not be higher. *See Bast v. DOJ*, 665 F.2d 1251, 1255 (D.C. Cir. 1981) (identifying "important

public interest" in disclosure of documents that would "determine whether the Department properly exercised its prosecutorial discretion.").

Second, the FBI offers no information whatsoever as to how individuals' privacy interests were weighed against the substantial public interest in this matter. They simply assert that any third-party is categorically protected by Exemptions 6 and 7(C). This is not sufficient. As the D.C. Circuit has recognized, even the names of individuals implicated in a highly publicized corruption investigation could not be redacted absent specific findings that a given individual's privacy interest outweighed the strong public interest in the investigation. *Citizens for Responsibility & Ethics in Wash. v. DOJ*, 854 F.3d 675, 683 (D.C. Cir. 2017)

Third, given the FBI's categorical approach to privacy and lack of any segregability analysis with respect to Exemptions 6 and 7(C), it is apparent that the FBI applied privacy far more expansively than necessary to merely protect the identities of third parties. While FOIA allows for the redaction of the names and identifying information of private citizens mentioned in law enforcement files, "it does not permit an agency 'to exempt from disclosure **all** material in an investigatory record solely on the grounds that the record includes some information which identifies a private citizen or provides that person's name and address.'" *Citizens for Responsibility & Ethics in Wash. v. DOJ*, 746 F.3d 1082, 1094 (D.C. Cir. 2014) (emphasis in original) (citing *Nation Magazine v. Customs Service*, 71 F.3d 896 (D.C. Cir. 1995)). It is entirely feasible to redact names and addresses without obscuring the substantive information these individuals provided.

Finally, certain individuals have already been publicly connected to the controversy or have voluntarily identified themselves. For instance, Epstein's alleged co-conspirators Sarah Kellen, Adriana Ross, Lesley Groff, and Nadia Marcinkova were explicitly named in his plea document

as receiving immunity. *Podhurst Orseck, P.A. v. Epstein*, 1:10-cv-21586-ASG (SD Florida 2010), Docket No. 1, Exhibit 3. The public deserves to understand their role in the criminal conspiracy and judge whether the government unjustly swept **their** conduct under the rug. Courts have consistently ruled that publicly known co-conspirators have diminished privacy interests. In *Kimberlin*, the D.C. Circuit held that prosecutor's public acknowledgement that he was subject of disciplinary proceedings "undoubtedly" diminished his interest in privacy, observing that "the public already knows who he is, what he was accused of, and that he received a relatively mild sanction." *Kimberlin v. DOJ,* 139 F.3d 944, 949 (D.C. Cir.1998). *See also Nation*, 71 F.3d at 896 (politician waived right to have his name redacted from responsive documents regarding events he publicly discussed).

Likewise, many witnesses have discussed Epstein's conduct and their participation in the FBI's investigation at length. For instance, the four-hour television miniseries "Surviving Jeffrey Epstein" features interviews from eight Epstein victims: Rachel Benavidez, Jena Lisa Jones, Kiki Doe, Courtney Wild, Chauntae Davies, Teresa Helm, Virginia Roberts Giuffre and Marijke Chartouni. *See* "Press Release: Surviving Jeffrey Epstein Brand New & Exclusive To Crime+Investigation," *My News Desk*, Aug. 10, 2020, available at:

https://www.mynewsdesk.com/nl/aenetworks/pressreleases/press-release-surviving-jeffrey-epstein-on-crime-plus-investigation-r-3025267.

Likewise, reported Epstein victim Virginia Guiffre has sued Maxwell, Epstein's former attorney Alan Dershowitz, and Prince Andrew of the Royal Family. Although her case against Maxwell was resolved via a confidential settlement, many of the records were subsequently unsealed, including: Guiffre's testimony against Maxwell, Maxwell's deposition, the draft of a

memoir Guiffre was writing about her experiences inside the sex-trafficking ring, and previously unseen emails between Maxwell and Epstein. *See* Chappell, Bill, "Judge Releases Trove of Sealed Records Related To Lawsuit Against Ghislaine Maxwell," *NPR*, July 31, 2020, available at: https://www.npr.org/2020/07/31/896627505/judge-releases-trove-of-sealed-records-related-to-case-against-ghislaine-maxwell; Pagones, Stephanie, "Ghislaine Maxwell deposition transcripts for 2016 case released," Fox News, Oct. 22, 2020, available at: https://www.foxnews.com/us/ghislaine-maxwell-deposition-transcripts-released; Bromwich, Jonah and Shanahan, Ed, "Virginia Giuffre Files Lawsuit Accusing Prince Andrew of Rape," *The New York Times*, Aug. 9, 2021, available at: https://www.nytimes.com/2021/08/09/nyregion/virginia-giuffre-prince-andrew.html.

Alan Dershowitz has proclaimed that he has "nothing to hide," and has counter-sued Guiffre, as well as Netflix, for alleging he was involved in the sex-trafficking ring. Ellefson, Lindsey, "Alan Dershowitz: 'I Have Nothing to Hide' Related to Jeffrey Epstein Accusations," *The Wrap,* Jan. 29, 2020, available at: https://www.thewrap.com/alan-dershowitz-i-have-nothing-to-hide-related-to-jeffrey-epstein-accusations; Gardner, Eriq, "Alan Dershowitz Suing Netflix Over Jeffrey Epstein Series," The Hollywood Reporter, May 26, 2021, available at: https://www.hollywoodreporter.com/tv/tv-news/alan-dershowitz-netflix-epstein-series-1234959456/

At bottom, while Plaintiffs certainly recognize the appropriateness of redacting the names of uninvolved third-parties or juvenile victims who have not come forward, the FBI's categorical approach evinces no attempt to grapple with the diminished privacy of certain individuals and the

immense public interest underlying this case. The FBI's application of Exemptions 6 and 7(C) should accordingly be rejected.

## V.    The FBI's Invocation of Exemptions 3 Lacks Sufficient Context

FOIA Exemption 3 applies to records "specifically exempted from disclosure by statute." 5 U.S.C. § 552(b)(3). The FBI relies on three statutes that preclude disclosure of the documents sought by Plaintiffs:

1) The Child Victims' and Child Witnesses' Rights Act 18 USC. § 3509;

2) Rule 6(e)'s shield of "matters occurring before the grand jury." Fed. R. Crim. P. 6(e). Rule.

3) Juvenile Justice and Delinquency Act, 18 U.S.C. § 5038.

Seidel Decl. ¶ 48-51.

While Plaintiffs do not contest the potential applicability of these laws to the records at issue, the FBI fails to identify how it employed these exemptions and to what degree. Nor do the declarations establish that the records were reviewed for segregable, non-exempt material. *See Lopez v. DOJ*, 393 F.3d 1345, 1350 (D.C. Cir. 2005) (rejecting a blanket assertion of Grand Jury secrecy under Exemption 3 on the grounds that certain information may not inherently be secret, such as "dates on which prosecutors interviewed prospective grand jury witnesses.").

In addition, with respect to the grand jury proceedings exemption, the FBI's declarations fail to show a "nexus between disclosure and revelation of a protected aspect of the grand jury's investigation." *Puerto Rico*, 823 F.2d at 584. In *Puerto Rico*, the D.C. Circuit rejected the argument that simply because material was presented to a Grand Jury that it is automatically protected:

> The mere fact that the Senate of Puerto Rico's request "included" grand jury exhibits is not dispositive of the DOJ's Rule 6(e) claim. The request -- for "all evidence" pertaining to the Cerro Maravilla affair -- was not limited to grand jury exhibits; had the DOJ released these exhibits, along with the over 1,000 pages of non-grand jury material it did release, there is

nothing in this record to suggest that the Senate, or any third party, would have been able to determine which documents had been submitted to the grand jury. Absent that identifying information, it is difficult to see how disclosure would reveal anything concerning the inner workings of the grand jury.

*Id.* at 583.

The FBI's application of Exemption 3 should accordingly be rejected.

## VI.    The FBI Fails to Substantiate an Interest Harmed Under Exemption 5

Exemption 5 of FOIA exempts from disclosure "[a]gency documents which would not be obtainable by a private litigant in an action against the agency under normal discovery rules (e.g., attorney-client, work-product, executive privilege)." *Grand Cent. Partnership, Inc. v. Cuomo*, 166 F.3d 473 (2d Cir. 1999) (citation omitted).

To fall within the privilege, a document must be pre-decisional and deliberative. "Documents are predecisional if they are generated before the adoption of an agency policy, and deliberative if they reflect the give-and-take of the consultative process." *Judicial Watch, Inc. v. DOD*, 847 F.3d 735, 739, (D.C. Cir. 2017). However, the deliberative process privilege "does not operate indiscriminately to shield all decision-making by public officials." *New York Times Co. v. DOD*, 499 F. Supp. 2d 501, 514 (S.D.N.Y. 2007).

According to the Seidel Declaration, the FBI has withheld five memoranda under Exemption 5. Seidel Decl. ¶ 54. Four of the memoranda are internal FBI documents that describe actions being taken by the FBI, at the direction an AUSA, to gather evidence for the potential prosecution of Epstein and his associates or in connection with potential civil forfeiture proceedings regarding Epstein's assets. *Id.* One memorandum is from an FBI investigator to an AUSA, relating to the value of asset owned by Epstein, that was gathered at the AUSA's behest in connection with the potential prosecution and forfeiture proceedings. *Id.*

None of these descriptions imply the existence of pre-decisional deliberations within these memoranda. The documents are described as informational in nature and therefore are not subject to a blanket withholding under Exemption 5. *See Cuomo*, 166 F.3d at 482 ("Purely factual material not reflecting the agency's deliberative

process is not protected."). Even if the records included such advice, it strains credulity to believe that a memorandum describing an **asset** of Epstein's does not contain segregable, non-exempt information.

Further, the FBI fails to indicate any "foreseeable harm" that would result from disclosure, as required by the FOIA Improvement Act of 2016. The Seidel Declaration does little beyond recite boilerplate rationales. The FBI "must explain how a particular Exemption 5 withholding would harm [its] deliberative process." *Nat'l Day Laborer Org. Network v. ICE*, 2020 U.S. Dist. LEXIS 167637, at *33 (S.D.N.Y. Sept. 14, 2020). "General explanations" that disclosure would impair or chill deliberations alone do not satisfy the foreseeable harm standard." *Judicial Watch, Inc. v. Dept. of Commerce*, 375 F. Supp. 3d 93, 100 (D.D.C. 2019). Rather, an agency "must connect the harms in a meaningful way to the information withheld, such as by providing context or insight into the specific decision-making processes or deliberations at issue, and how they in particular would be harmed by disclosure." *New York Times Co. v. HHS*, 2021 U.S. Dist. LEXIS 6267, at *30 (S.D.N.Y. Jan. 13, 2021) (citing *Judicial Watch, Inc. v. DOJ*, 2020 U.S. Dist. LEXIS 178773 at *3 (D.D.C. Sept. 29, 2020)).

Because there is no explanation why disclosure of these records would chill the FBI's decision-making process, the application of Exemption 5 should accordingly be rejected.

**VII.    The FBI's Invocations of Exemptions 7(D) and 7(E) Lack Sufficient Context.**

*Exemption 7(D)*

Exemption 7(D) exempts from disclosure agency records "compiled for law enforcement purposes . . . by criminal law enforcement authority in the course of a criminal investigation" if release of those records "could reasonably be expected to disclose" the identity of, or information provided by, a "confidential source." 5 U.S.C. § 552(b)(7)(D).

"[I]t is not enough for the agency to claim that all sources providing information in the course of a criminal investigation do so on a confidential basis." *Citizens*, 746 F.3d at 1101 (quoting *Roth v. DOJ*, 642 F.3d 1161, 1184 (D.C. Cir. 2011).); See *also Billington v. DOJ*, 233 F.3d 581, 584 (D.C. Cir. 2000) ("This bald assertion that express assurances were given amounts to little more than recitation of the statutory standard, which we have held is insufficient.").

Here, the FBI has only offered a bald claim that witnesses expected confidentiality. It has presented no "probative evidence that [its sources] did in fact receive an express grant of confidentiality" nor has it pointed to "more narrowly defined circumstances" that support the inference of confidentiality. *Citizens,* 746 F.3d. at 1001 (internal citations omitted). The FBI's invocation of exemption 7(D) is, therefore, unsupported by the record before this Court.

*Exemption 7(E)*

Exemption 7(E) exempts from disclosure law enforcement records where release "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 522 (b)(7)(E).

The FBI again offers nothing more here than a paraphrase of exemption 7(E) itself and, accordingly, has failed to meet its burden both to justify a grant of summary judgment in its favor, and to justify withholding the requested documents. Summary judgment should be denied as to this claimed exemption as well.

## <u>CONCLUSION</u>

For the reasons stated above, the Government's motion for summary judgment should be denied and the Court should grant Plaintiff's cross-motion for summary judgment.


Dated: August 12, 2021, New York, NY

By:     /s/ Daniel R.Novack
        DANIEL R. NOVACK

        Pro Bono Counsel for Radar Online and James Robertson
        1745 Broadway, NY, NY 10019
        NY BAR ID: 5010863
        Telephone: (201) 213-1425
        Email: Dan@NovackMediaLaw.com