UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RADAR ONLINE LLC and JAMES
ROBERSON,

                Plaintiffs,

    v.

FEDERAL BUREAU OF INVESTIGATION,

                Defendant.

**17 Civ. 3956 (PGG)**

**SUPPLEMENTAL MEMORANDUM OF LAW IN FURTHER SUPPORT OF
THE FEDERAL BUREAU OF INVESTIGATION'S MOTION FOR SUMMARY
JUDGMENT AND IN OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR
SUMMARY JUDGMENT**

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
Attorney for Defendant
86 Chambers Street, 3rd floor
New York, New York 10007
Tel: (212) 637-2691
Fax: (212) 637-2750
Email:  allison.rovner@usdoj.gov

ALLISON M. ROVNER
Assistant United States Attorney

    – Of Counsel –

## PRELIMINARY STATEMENT

The Federal Bureau of Investigation ("FBI") respectfully submits this supplemental memorandum of law in support of its motion for summary judgment and in opposition to Plaintiffs' cross-motion for summary judgment, pursuant to the Court's June 30, 2023 order.  *See* Dkt. No. 45.  For the reasons explained below and in the supplemental declaration submitted with this brief, the FBI continues to properly withhold the records Plaintiffs seek pursuant to FOIA Exemption 7(A) on the basis that release of the records could reasonably be expected to interfere with the criminal prosecution of Jeffrey Epstein associate Ghislaine Maxwell, whose case is still pending on appeal.  Should the Court deem it necessary to reach the issue of the applicability of other exemptions, the FBI's explanations for reliance on other exemptions—including Exemptions 3, 5, 6, 7(C), 7(D), and (7E)—remain logical and plausible and are not dependent on there being a pending or prospective law enforcement proceeding.

For all these reasons, as wells the ones stated in the FBI's prior briefs, the Court should grant the FBI's motion for summary judgment and deny Plaintiffs' cross-motion.

## ARGUMENT

I.   **The FBI Continues to Properly Withhold Records and Information Under FOIA Exemption 7(A)**

As explained in the FBI's prior briefs, Exemption 7(A) exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552 (b)(7)(A); Dkt. No. 38, Def.'s Br. 6.  "To fit within Exemption 7(A), the government must show that (1) a law enforcement proceeding is pending or prospective and (2) release of the information could reasonably be expected to cause some articulable  harm." *Amnesty Int'l USA v. CIA*, 728 F. Supp. 2d 479, 525 (S.D.N.Y. 2010)

(internal quotation marks omitted).  The government's burden under the second prong is not high; the government need only show that "disclosure of particular kinds of investigatory records . . . would generally interfere with enforcement proceedings." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 236 (1978) (quotation marks omitted); *Radcliffe v. IRS*, 536 F. Supp. 2d 423, 437 (S.D.N.Y. 2008).   In doing so, the government must demonstrate a "rational link" between the requested public disclosure and interference with the government's ongoing or prospective investigations or proceedings, and it need only make this showing on a categorical basis.  *See Crooker v. Bureau of Alcohol, Tobacco, and Firearms*, 789 F.2d 64, 67 (D.C. Cir. 1986); *New York Times Co. v. Dep't of Justice*, No. 14 Civ. 03776 (AT) (SN), 2016 WL 5946711, at *7 (S.D.N.Y. Aug. 18, 2016); *Robbins Tire*, 437 U.S. at 236; Def.'s Br. 7.

The FBI continues to properly withhold pursuant to Exemption 7(A) the records Plaintiffs seek relating to the investigation and prosecution of Epstein because disclosure of those records would interfere with the pending criminal proceeding against Maxwell.  For the reasons explained below, the fact that Maxwell's criminal case is still pending on appeal and the relief she seeks is a new trial warrants continued protection of the FBI's investigatory file pursuant to Exemption 7(A).

As background, since the parties completed the anticipated briefing in his matter on October 29, 2021, *see* Dkt. Nos. 37-44, the criminal case against Maxwell proceeded to a multi-week trial.  *See* Supplemental Declaration of AUSA Maurene Comey ("Comey Supp. Decl.") ¶ 6. On December 29, 2021, a jury convicted Maxwell of multiple counts relating to sex trafficking of minors following a multi-week trial, and on June 29, 2021, Judge Nathan entered judgment sentencing Maxwell to a total of 20 years' imprisonment.  *Id.*; *See U.S. v. Maxwell*, No. 20 Cr. 330 (AJN) (S.D.N.Y.), Dkt. No. 696.  On July 7, 2022, Maxwell appealed the criminal judgment to the United States Court of Appeals for the Second Circuit.  Comey Supp. Decl. ¶ 7; 20 Cr. 330, Dkt.

No. 697.  In her appeal, Maxwell is seeking, among other things, a new trial based on alleged juror misconduct and alleged evidentiary issues.  Comey Supp. Decl. ¶ 7; *see United States v. Maxwell*, 22-1426 (2d Cir.), Dkt. No. 59 at 2, 63-81, 86-87.  The appeal remains pending.  Comey Supp. Decl. ¶ 7.

As an initial matter, although Exemption 7(A), unlike other FOIA exemptions, "is temporal in nature," meaning that "[t]he proceeding must remain pending at the time of [the Court's] decision, not only at the time of the initial FOIA request," *Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Just.*, 746 F.3d 1082, 1097 (D.C. Cir. 2014),[1] the fact that a conviction has been obtained does not end Exemption 7(A)'s applicability to a criminal case.  The law is clear that Exemption 7(A) protects records that, if released, could interfere with a proceeding in which there has been a criminal conviction that is on appeal.  *See, e.g.*, *Kidder v. FBI*, 517 F. Supp. 2d 17, 27-28 (D.D.C. 2007) ("A pending appeal of a criminal conviction qualifies as a pending or prospective law enforcement proceeding for purposes of Exemption 7(A).") (citing *Kansi v. DOJ*, 11 F. Supp. 2d 42, 44 (D.D.C. 1998)); *Kansi*, 11 F. Supp. 2d at 44 (concluding that exemption 7(A) applied where relevant case was "on appeal," because the "potential for interference with witnesses and highly sensitive evidence that drives the 7(A) exemption . . . exists at least until [the criminal defendant's] conviction is final"); *James v. U.S. Secret Serv.*, 811 F. Supp. 2d 351, 353 (D.D.C. 2011) (similar), *aff'd by* 2012 WL 1935828 (D.C. Cir. May 11, 2012); *DeMartino v. F.B.I.*, 577 F. Supp. 2d 178, 181-82 (D.D.C. 2008) (Exemption 7(A) applicable where "the law

---

[1] *But see Local 32B-32J, Serv. Employees Int'l Union, AFL-CIO v. Gen. Servs. Admin.*, No. 97-CV-08509 (LMM), 1998 WL 726000, at *8 (S.D.N.Y. Oct. 15, 1998) ("[J]udicial review of a government agency's decision to withhold documents under Exemption 7(A) must be made in light of the status of enforcement proceedings at the time the agency responded to the FOIA request.") (citing *Bonner v. U.S. Dep't of State*, 928 F.2d 1148, 1152 (D.C. Cir. 1991)).

enforcement proceeding has not concluded in part because [the] criminal conviction is not final"
since case was on appeal).

Here, given that the *Maxwell* criminal prosecution is still pending on appeal—and if the
Second Circuit grants Maxwell the relief she seeks, there could be a new trial—public disclosure
of the FBI's records relating to the investigation and prosecution of Epstein would still reasonably
be expected to interfere with the prosecution of Maxwell.  Comey Supp. Decl. ¶ 8.  As outlined in
the detailed supplemental declaration of one of the AUSAs for the SDNY prosecuting the criminal
action against Maxwell, many of the concerns with disclosure of the records that existed at the
time of Maxwell's prior trial still exist given Maxwell's appeal in which she seeks a new trial.  *See*
Comey Supp. Decl. ¶¶ 8-13.[2]

First, as explained in the Comey Supplemental Declaration, releasing the entirety of the
FBI's records relating to its investigation of Epstein in this FOIA litigation would interfere with
any new trial of Maxwell because it would allow Maxwell to have earlier and greater access to the
investigatory files than she would otherwise have through the criminal discovery process, given
that she does not have access to all of the FBI's files relating to the investigation and prosecution
of Epstein, and in the event of a new trial, the Court would presumably set a deadline for release
of any additional records.  *Id.* ¶ 9.  Exemption 7(A) was enacted precisely to prevent such an end
run around the rules governing criminal discovery. *Robbins Tire*, 437 U.S. at 224.

Further, if the Second Circuit granted Maxwell's requested relief of a new trial, there would
likely be significant coverage by the media of the new trial and Maxwell's association with

---

[2] As noted in the Comey Supplemental Declaration, the Government is willing to release
to Plaintiffs the publicly-filed trial exhibits from the *Maxwell* trial, some of which are from the
FBI's investigation of Epstein, to the extent Plaintiffs do not already have them. *Id.* ¶ 8.  These
publicly-filed exhibits have been released to members of the media upon request. *Id.*

Epstein.  Comey Supp. Decl. ¶ 10.  Given that media coverage of a new trial could impact potential witnesses and jurors, the parties in the *Maxwell* matter remain subject to a protective order prohibiting the defense from disseminating Government productions to the public or the press.  *Id.*; *see Maxwell*, No. 20 Cr. 330, Dkt. No. 36.  To allow disclosure of records withheld in full or in part by the FBI under Exemption 7(A) would be in contravention of the efforts made by the parties and the Court to provide an impartial trial.  Comey Supp. Decl. ¶ 10.

At any new trial, premature disclosure of records and/or information therein could still reasonably be expected to influence witnesses' potential trial testimony.  *Id.* ¶ 11.  These records include information about which witnesses may be expected to testify at a new trial, include details that are not publicly known or known to other witnesses, and include information and documents authored by potential trial witnesses.  *Id.*  These records also include information that may or may not be entered into evidence at a new trial, which could influence the testimony of witnesses by providing the opportunity for witnesses to shape their testimony to conform with other evidence gathered during the investigation that has not yet been made public.  *Id.*

Although witnesses have already testified at one trial and may have been exposed to some media attention about the publicly-filed exhibits at trial (which, as noted *supra* n.2, the Government has no objection to providing to Plaintiffs at this time), witnesses have not had access to the entire FBI file regarding Epstein, and the Government may elect to introduce additional exhibits and call additional witnesses, none of which have been publicly reported, should this case be retried.  *Id.*  The release of the full investigative file would undermine the Government's efforts to present witness testimony that is uninfluenced by the parts of the investigative file to which they were not already exposed through the first trial.  *Id.*  This type of harm is a cognizable basis to withhold records under Exemption 7(A). *Journalism Ctr. v. Office of Indep. Counsel*, 926 F. Supp. 189, 192 (D.D.C.1996) (Exemption 7(A) applies where "[w]itnesses with access to such

information could easily alter, conform or construct their testimony depending upon the information disclosed").

Similarly, premature disclosure of the records withheld under 7(A) could reasonably be expected to impair the Government's (and the defendant's) ability to seat a fair and impartial jury in any new trial in *Maxwell*.  Comey Supp. Decl. ¶ 12.  Although, as noted *supra* at n.2, the Government has no objection to providing Plaintiffs with the publicly-filed exhibits from the first trial, if the *Maxwell* case were to be retried, the Government may elect to present additional exhibits and/or call previously uncalled witnesses at a second trial.  *Id.*  The withheld records include possible exhibits at a new trial that were not publicly filed at the first trial, specific information about witnesses who are expected to testify at a new trial, as well as information and documents authored by potential trial witnesses (to the extent not already publicly disclosed during the first trial), such that premature public disclosure could reasonably be expected to influence potential jurors' perceptions of the witnesses and the evidence to be presented at trial.  *Id.*

Additionally, the withheld records include a variety of topics and witness statements that go far beyond the issues covered during the first trial.  *Id.*  The first trial focused primarily on the abuse of six victims, and many exhibits were received under seal to protect the privacy of those victims and other third parties.  *Id.*  The withheld records include statements from and evidence regarding many more victims of Epstein and numerous witnesses who were not called or referenced during the first trial, including some who the Government may elect to call and/or reference if this case were to be retried.  *Id.*  Accordingly, premature release of the records would risk unduly influencing potential jurors for a retrial.  *Id.*

Moreover, potential jurors' consideration of the records that are being withheld under Exemption 7(A) but were not presented at the first trial and may not be presented at any new trial may impact the consideration jurors give to the actual evidence at any trial. *Id.* ¶ 13. If some or all of this evidence is excluded at any new trial, pre-trial publication of these materials would risk exposing potential jurors to material they would otherwise not be shown during trial, which risks unduly influencing jurors' views of the case and would impair the Government's (and the defendant's) ability to seat a fair and impartial jury. *Id.* For example, should potential jurors be able to view the FBI's interview notes and forms and grand jury subpoenas, they will know who the FBI contacted during its investigation, information that was disclosed by witnesses, including witnesses who will not testify at any new trial, and the evidence that was gathered by the FBI. *Id.* Having viewed that evidence, jurors may improperly consider this information in conjunction with the actual evidence that is presented at trial. *Id.* Similarly, records that may not be trial exhibits but bear on the contents of potential trial exhibits could improperly influence potential jurors' understanding of the evidence at trial and the case overall. *Id.* Such potential harms are more than sufficient "to trace a rational link between the nature of the document and the alleged likely interference" with the pending criminal trial. *New York Times Co. v. Dep't of Justice*, No. 14 Civ. 03776 (AT) (SN), 2016 WL 5946711, at *7 (S.D.N.Y. Aug. 18, 2016).

Finally, to the extent there is non-exempt information contained in the records withheld under Exemption 7(A), that information is intertwined with exempt information and cannot reasonably be segregated without risking interference with the Maxwell prosecution. Comey Supp. Decl. ¶ 14; *see* Def.'s Br. 24-25; *Conti v. U.S. Dep't of Homeland Sec.*, No. 12 Civ. 5827(AT), 2014 WL 1274517, at *25 (S.D.N.Y. Mar. 24, 2014) (nonexempt portions of documents may "be withheld if they are inextricably intertwined with the exempt portions," and "[t]he agency is entitled to a presumption that it complied with its obligation to disclose reasonably segregable material").

Given the above concerns with releasing the FBI's files relating to the investigation and prosecution of Epstein, it is unsurprising that just last year a district court addressing a FOIA request to release a set of records similar to those at issue here upheld the FBI's withholding of the records under Exemption 7(A). In *Clemente v. FBI*, 20 Civ. 1527 (TNM), 2022 WL 17092585 (D.D.C. Nov. 21, 2022), the plaintiff "submitted a FOIA request to the FBI essentially seeking all records it had about Jeffrey Epstein and his alleged criminal activities." *Id.* at *1. In affirming the FBI's withholding of records because "release of the records would harm at least one active investigation and any prospective prosecutions of Epstein's potential co-conspirators," the district court concluded that "[t]he FBI properly asserts Exemption 7(A) because it identifies the pertinent investigations and explains how release of the withheld information could imperil them." *Clemente*, 2022 WL 17092585, at *8. As in *Clemente*, the FBI here has more than satisfied its "light" burden of asserting a "logical and plausible" basis for an exemption. *See ACLU v. U.S. Dep't of Def.*, 901 F.3d 125, 133 (2d Cir. 2018), *as amended* (Aug. 22, 2018); *ACLU v. U.S. Dep't of Def.*, 628 F.3d 612, 624 (D.C. Cir. 2011).

Accordingly, the FBI properly withheld records and information pursuant to Exemption 7(A).

## II. The FBI Continues to Properly Withhold Records and Information Under the Other FOIA Exemptions

Because the FBI properly withheld all of the information under Exemption 7(A), the Court need not reach the applicability of the other exemptions. However, should the Court deem it necessary to consider other exemptions, the FBI continues to properly withhold information under Exemptions 3, 5, 6, 7(C), 7(D), and (7E) as well.

The FBI's withholding of records under these other FOIA exemptions, which are generally evaluated at the time the agency made the decision rather than as of the time of the

Court's review, continues to be proper regardless of the status of the *Maxwell* criminal case because these other exemptions do not require that there be a pending or prospective law enforcement proceeding; nor did the FBI rely on the existence of a pending or prospective proceeding against Maxwell in asserting these exemptions.  *See, e.g.*, *ACLU v. NSA*, 925 F.3d 576, 603 (2d Cir. 2019) (reaffirming "general rule" that "a FOIA decision is evaluated as of the time it was made and not at the time of a court's review"); 5 U.S.C. § 552(b)(3), (b)(5), (b)(6), (b)(7)(C)-(E); *UtahAmerican Energy, Inc. v. Dep't of Lab.*, 685 F.3d 1118, 1122 n.4 (D.C. Cir. 2012) ("Unlike 7(A), Exemption 7(C) does not require a showing that production of the law enforcement records could reasonably be expected to interfere with enforcement proceedings. Instead, Exemption 7(C) protects against production that 'could reasonably be expected to constitute an unwarranted invasion of personal privacy.'"); *Aug. v. Fed. Bureau of Investigation*, 328 F.3d 697, 701 (D.C. Cir. 2003) (recognizing that unlike Exemption 7(A), the FBI could assert Exemptions 7(C), 7(D), and 7(F) if law enforcement proceedings had ended); Def.'s Br. 12-24; Dkt. No. 41, Def.'s Reply Br. 9-15; Seidel Decl. ¶¶ 49-51, 53-54, 73-83, 87-91, 98-112, Ex. EE.

Accordingly, for the reasons already explained in the detailed FBI declaration, Dkt. No. 40, and the FBI's prior briefs in this matter—and as recently found by another district court that addressed the FBI's processing of similar records—the FBI's withholding of records under the other exemptions also remains sound.  *See Clemente*, 2022 WL 17092585, at *3-9 (concluding that the FBI properly withheld records relating to its investigation of Epstein pursuant to Exemptions 3, 5, 6, 7(C), 7(D), and 7(E), in addition to 7(A), based on similar reasons the FBI has provided here).

**CONCLUSION**

For the foregoing reasons, the Court should grant the Government's motion for summary

judgment and deny Plaintiffs' cross-motion for summary judgment.

Dated:  New York, New York
        July 11, 2023

                             Respectfully submitted,

                             DAMIAN WILLIAMS
                             United States Attorney for the
                             Southern District of New York
                             Counsel for Defendant

                        By:    /s/ Allison M. Rovner
                             _____
                             ALLISON M. ROVNER
                             Assistant United States Attorney
                             86 Chambers Street, 3rd floor
                             New York, New York 10007
                             Telephone: (212) 637-2691
                             Fax: (212) 637-2750
                             Email:  allison.rovner@usdoj.gov