UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RADAR ONLINE LLC and JAMES
ROBERTSON,

                    Plaintiffs,

          v.                                            17 Civ. 3956 (PGG)

FEDERAL BUREAU OF INVESTIGATION,

                    Defendant.


# MEMORANDUM OF LAW IN SUPPORT OF
# THE FEDERAL BUREAU OF INVESTIGATION'S RENEWED MOTION FOR
# SUMMARY JUDGMENT

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
Attorney for Defendant
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel: (212) 637-2691
Email:  allison.rovner@usdoj.gov


ALLISON M. ROVNER
Assistant United States Attorney
          – Of Counsel –

**Table of Contents**

PRELIMINARY STATEMENT .................................................................................................1

BACKGROUND ...................................................................................................................2

I.     Criminal Proceedings Against Jeffrey Epstein and Ghislaine Maxwell and The FBI's Processing of Records in This FOIA Litigation .................................................2

II.    The Court's September 19, 2023 Opinion & Order on the Parties' Cross-Motions for Summary Judgment....................................................................................2

ARGUMENT .......................................................................................................................4

I.     Standard of Review ............................................................................................4

II.    The FBI Properly Withheld Records Under FOIA Exemption 7(A) ...................................5

    A.  The FBI Properly Categorized Records ...........................................................6

    B.  The FBI Properly Linked the Categories of Records to Potential Harms to the *Maxwell* Prosecution ...........................................................................8

       1.  Evidentiary/Investigative Materials ...................................................8

       2.  Administrative Materials ....................................................................14

III.   Applicability of Other FOIA Exemptions to the Categorically-Withheld Records..........16

IV.   The FBI Properly Withheld Information Under Exemption 3..........................................18

V.    The FBI Properly Withheld Information Under Exemption 7(D) .....................................21

VI.   The FBI Satisfied Its Duty to Segregate and Release Any Non-Exempt Information ......24

CONCLUSION....................................................................................................................25

# Table of Authorities

*Cases:*

*Adamowicz v. IRS*,
   402 Fed. App'x 648 (2d Cir. 2010)................................................................................ 21

*Am. Civil Liberties Union v. U.S. Dep't of Def.*,
   628 F.3d 612 (D.C. Cir. 2011) ...................................................................................... 4

*Am. Civil Liberties Union v. U.S. Dep't of Def.*,
   901 F.3d 125 (2d Cir. 2018).......................................................................................... 4

*Amnesty Int'l USA v. CIA*,
   728 F. Supp. 2d 479 (S.D.N.Y. 2010)........................................................................... 5

*Bishop v. U.S. Dep't of Homeland Sec.*,
   45 F. Supp. 3d 380 (S.D.N.Y. 2014)............................................................................. 24

*Campbell v. DOJ*,
   164 F.3d 20 (D.C. Cir. 1998) ........................................................................................ 23, 24

*Carney v. Dep't of Just.*,
   19 F.3d 807 (2d Cir. 1994)............................................................................................ 4

*Chiquita Brands Int'l Inc. v. S.E.C.*,
   805 F.3d 289 (D.C. Cir. 2015) ...................................................................................... 13

*CIA v. Sims*,
   471 U.S. 159 (1985)....................................................................................................... 18

*Conti v. U.S. Dep't of Homeland Sec.*,
   No. 12 Civ. 5827 (AT), 2014 WL 1274517 (S.D.N.Y. Mar. 24, 2014)........................ 24

*Crooker v. Bureau of Alcohol, Tobacco, and Firearms*,
   789 F.2d 64 (D.C. Cir. 1986) ........................................................................................ 6

*Diamond v. FBI*,
   707 F.2d 75 (2d Cir. 1983)............................................................................................ 21, 22

*Dillon v. Dep't of Just.*,
   102 F. Supp. 3d 272 (D.D.C. 2015) .............................................................................. 8

*Dow Jones Co. v. FERC*,
   219 F.R.D. 167 (C.D. Cal. 2003) .................................................................................. 13

*Ferguson v. FBI*,
   957 F.2d 1059 (2d Cir. 1992)........................................................................................ 21

*Ferguson v. FBI*,
   No. 89 Civ. 5071 (RPP), 1995 WL 329307 (S.D.N.Y. June 1, 1995) .......................... 4

*Giglio v. United States*,
   405 U.S. 150 (1972)....................................................................................................... 13

*Grynberg v. U.S. Dep't of Just.*,
   758 F. App'x 162 (2d Cir. 2019).................................................................................... 18

ii

*Grynberg v. U.S. Dep't of Just.*,
  302 F. Supp. 3d 532 (S.D.N.Y. 2018) .................................................................... 20

*Hodge v. FBI*,
  703 F.3d 575 (D.C. Cir. 2013) ............................................................................. 18

*In re Grand Jury Investigation B-15-1*,
  No. 16-mc-4, 2016 WL 110002 (D. Conn. Jan. 8, 2016) ....................................... 21

*In re Grand Jury Proc.*,
  851 F.2d 860 (6th Cir. 1988) ................................................................................ 20

*John Doe Corp. v. John Doe Agency*,
  850 F.2d 105 (2d Cir. 1988) ................................................................................. 18

*Lopez v. Dep't of Justice*,
  393 F.3d 1345 (D.C. Cir. 2005) ............................................................................ 18

*Maydak v. U.S. Dep't of Just.*,
  218 F.3d 760 (D.C. Cir. 2000) ............................................................................... 6

*Mead Data Cent., Inc. v. U.S. Dep't of Air Force*,
  566 F.2d 242 (D.C. Cir. 1977) ............................................................................. 25

*N.Y. Times v. U.S. Dep't of Justice*,
  83 F.3d 41 (2d Cir. 1996) ...................................................................................... 4

*N.Y. Times v. U.S. Dep't of Justice*,
  872 F. Supp. 2d 309 (S.D.N.Y. 2012) ..................................................................... 4

*New York Times Co. v. U.S. Dep't of Justice*,
  No. 14 Civ. 03776 (AT) (SN), 2016 WL 5946711 (S.D.N.Y. Aug. 18, 2016) ......................... 6

*New York Times Co. v. U.S. Dep't of Just.*,
  No. 16 Civ. 6120 (RMB), 2017 WL 4712636 (S.D.N.Y. Sept. 29, 2017) .............................. 13

*NLRB v. Robbins Tire & Rubber Co.*,
  437 U.S. 214 (1978) ...................................................................................... passim

*Radcliffe v. IRS*,
  536 F. Supp. 2d 423 (S.D.N.Y. 2008) ............................................................... 6, 7, 8

*Roman v. CIA*,
  No. 11 Civ. 2390 (JFB) (WDW), 2012 WL 6138487 (E.D.N.Y. Dec. 11, 2012) .................... 25

*Senate of Puerto Rico v. U.S. Dep't of Justice*,
  823 F.2d 574 (D.C. Cir. 1987) ............................................................................. 18

*Sussman v. U.S. Marshals Serv.*,
  494 F.3d 1106 (D.C. Cir. 2007) ........................................................................... 24

*Tipograph v. Dep't of Just.*,
  83 F. Supp. 3d 234 (D.D.C. 2015) ........................................................... 11, 12, 15, 16

*U.S. Dep't of Justice v. Landano*,
  508 U.S. 165 (1993) ................................................................................... 21, 24

*U.S. v. Eastern Air Lines, Inc.*,
  923 F.2d 241 (2d Cir. 1991) ................................................................................. 18

*Washington v. U.S. Dep't of Just.*,
  746 F.3d 1082 (D.C. Cir. 2014) ............................................................................... 6
*Western Journalism Ctr. v. Office of Indep. Counsel*,
  926 F. Supp. 189 (D.D.C. 1996) ...................................................................... 10, 15
*Wilner v. NSA*,
  592 F.3d 60 (2d Cir. 2009) ....................................................................................... 4

*Statutes:*

5 U.S.C. § 552 ............................................................................................... passim
18 U.S.C. § 3509 .................................................................................................. 2, 3, 16
18 U.S.C. § 5038 ....................................................................................................... 21
Pub.L. 93–502 ............................................................................................................. 5

*Rules:*

Federal Rule of Criminal Procedure 6(e) .......................................................... 1, 3, 18
Federal Rule of Criminal Procedure 16 .................................................................... 13

## PRELIMINARY STATEMENT

Radar Online LLC and James Robertson, a senior editor for Radar Online (collectively, "Radar Online"), seek records from the Federal Bureau of Investigation's ("FBI") file relating to the investigation and prosecution of Jeffrey Epstein. These records are at the core of the pending criminal prosecution of Epstein associate Ghislaine Maxwell—a prosecution that is now on appeal to the Second Circuit following Maxwell's conviction of multiple counts relating to sex trafficking of minors. Congress did not intend the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, to interfere with pending criminal prosecutions. To safeguard against this, Congress expressly exempted records that could reasonably be expected to interfere with pending law enforcement proceedings from public disclosure under FOIA. *See* 5 U.S.C. § 552(b)(7)(A). The withheld records sought by Radar Online fall at the heart of this exemption because their premature release could reasonably be expected to harm the government's case in court with respect to a retrial of Maxwell in the event Maxwell prevails on her appeal.

Certain of the information withheld also falls within other FOIA exemptions. The Court has already granted the FBI summary judgment with respect to most of these exemptions. *See* ECF No. 51. With respect to the remaining exemptions, the FBI properly withheld information under Exemption 3 that is protected from disclosure pursuant to Federal Rule of Criminal Procedure 6(e), which protects the secrecy of the grand jury process. *See* 5 U.S.C. § 552(b)(3). The FBI also properly withheld information provided under express grants of confidentiality and under circumstances in which confidentiality can be inferred pursuant to Exemption 7(D). *See* 5 U.S.C. § 552(b)(7)(D).

Accordingly, the Court should grant the FBI's renewed motion for summary judgment.

1

## BACKGROUND

I. **Criminal Proceedings Against Jeffrey Epstein and Ghislaine Maxwell and the FBI's Processing of Records in This FOIA Litigation**

The FBI assumes the Court's familiarity with the criminal proceedings against Epstein and Maxwell, as well as the FBI's processing of records in response to Radar Online's FOIA request in this litigation, from the FBI's prior briefing and declarations in this matter and hereby incorporates those briefs and declarations by reference. *See, e.g.*, FBI Memo. of Law, ECF No. 38 at 2-4; FBI Supp. Memo. of Law, ECF No. 46 at 2-3; *see also* Third Declaration of AUSA Maurene Comey, dated December 7, 2023 ("Third Comey Decl.") ¶¶ 4-9 (summarizing history of criminal proceedings); Second Declaration of Michael G. Seidel, dated December 1, 2023 ("Second Seidel Decl.") ¶¶ 3, 7-10, 14, Ex. A (summarizing processing of records).

II. **The Court's September 19, 2023 Opinion & Order on the Parties' Cross-Motions for Summary Judgment**

On October 29, 2021, the parties completed the anticipated summary judgment briefing in this matter, *see* ECF Nos. 37-44, with supplemental briefing occurring in July 2023 at the Court's request, *see* ECF Nos. 45-48.  On September 19, 2023, the Court issued a Memorandum Opinion & Order ("Order"), granting in part and denying in part each of the parties' cross-motions for summary judgment.  *See* ECF No. 51.

In its Order, the Court granted the FBI's summary judgment motion as it pertains to records withheld under Exemption 3 pursuant to the Child Victims' and Child Witnesses' Rights Act, 18 U.S.C. § 3509 (*id.* at 26); Exemption 5 as it pertains to the attorney work-product privilege (*id.* at 31-33); Exemptions 6 and 7(C) to withhold names and other personal information of government employees and third parties that would result in an unwarranted invasion of their personal privacy (*id.* at 33-42); Exemption 7(D) to protect information confidentially provided by local law

enforcement agencies (*id.* at 47-48); and Exemption 7(E) to protect against disclosure of law enforcement techniques or procedures (*id.* at 48-50). The Court also held that the FBI's assertion of Exemption 7(A) was timely and that the FBI had met its burden of satisfying the requirements that the withheld records, compiled for a law enforcement purpose, relate to a pending law enforcement proceeding. *Id.* at 11-18.

On the other hand, the Court denied without prejudice some aspects of the FBI's summary judgment motion. First, the Court denied without prejudice the FBI's withholding of records under Exemption 7(A) because it concluded that the FBI had not met its burden with respect to another requirement of Exemption 7(A)—showing that release of the records would interfere with the law enforcement proceeding. *Id.* at 18-25. The Court noted that the categories of documents described in the First Seidel Declaration and First Comey Declaration did not match, and "[i]n any event, the FBI ha[d] not explicitly linked any of the document categories—whether in Seidel's or Comey's— to the four types of potential harm cited in the 2021 Comey declaration." *Id.*

The Court also denied without prejudice the FBI's summary judgment motion with respect to documents withheld under Exemption 3 as protected from disclosure by Federal Rule of Criminal Procedure 6(e), which protects the secrecy of grand jury proceedings. Order at 26-30. The Court explained that not all subpoenaed records provided to a grand jury are exempt from disclosure, and to be protected, disclosure of the documents would have to violate the secrecy of grand jury proceedings and possibly reveal the inner workings of a federal grand jury. *Id.* The Court concluded that "[b]ecause the FBI has not separately categorized records withheld pursuant to Rule 6(e), the Court cannot determine which categories of records, if any, are properly exempt under Exemption 3 and pursuant to Rule 6(e)." *Id.* at 30.

Finally, the Court further denied without prejudice the FBI's motion for summary

judgment with respect to documents withheld under Exemption 7(D) based on an express grant of confidentiality or where confidentiality could be interred, as well as documents provided by foreign agencies.  Order at 42-48.  With respect to an express grant of confidentiality, the Court concluded that the FBI "ha[d] not submitted any probative evidence that any source received an express grant of confidentiality."  *Id.* at 44 (citation and internal quotation marks omitted). Regarding inferred confidentiality, the Court sought additional details regarding the "narrowly defined circumstances that [] support the inference of confidentiality," including whether the sources had reason to fear retaliation. *Id.* at 45 (citation and internal quotation marks omitted).

The Court ordered the FBI to submit revised declarations to address the inadequacies the Court identified and for the parties to submit renewed summary judgment motions. *Id.* at 51-54.

## ARGUMENT

### I.    Standard of Review

In determining whether an agency has provided a "reasonably detailed explanations why any withheld documents fall within an exemption," the agency's declarations are "accorded a presumption of good faith." *Carney v. Dep't of Just.*, 19 F.3d 807, 812 (2d Cir. 1994) (internal quotation marks omitted); *accord Wilner v. NSA*, 592 F.3d 60, 69 (2d Cir. 2009).  An agency's justification for asserting an exemption "is sufficient if it appears logical and plausible." *Am. Civil Liberties Union v. U.S. Dep't of Def.*, 901 F.3d 125, 133 (2d Cir. 2018), *as amended* (Aug. 22, 2018).   Accordingly, "the government's burden is a light one." *Am. Civil Liberties Union v. U.S. Dep't of Def.*, 628 F.3d 612, 624 (D.C. Cir. 2011).[1]

---

[1] Because an agency declaration can satisfy the government's burden on a motion for summary judgment, "Local Civil Rule 56.1 statements are not required." *N.Y. Times v. U.S. Dep't of Justice*, 872 F. Supp. 2d 309, 314 (S.D.N.Y. 2012); *Ferguson v. FBI*, No. 89 Civ. 5071 (RPP), 1995 WL 329307, at *2 (S.D.N.Y. June 1, 1995), *aff'd*, 83 F.3d 41 (2d Cir. 1996); Order at 2-3 n.2.

II.     **The FBI Properly Withheld Records Under FOIA Exemption 7(A)**

All of the records that the FBI withheld fall within the scope of FOIA Exemption 7(A).

Exemption 7(A) exempts from disclosure "records or information compiled for law enforcement

purposes, but only to the extent that the production of such law enforcement records or information

. . . could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552

(b)(7)(A). In enacting Exemption 7(A), "Congress recognized that law enforcement agencies had

legitimate needs to keep certain records confidential, lest the agencies be hindered in their

investigations." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 224 (1978). Most

importantly, Congress intended that "Exemption 7(A) would apply 'whenever the Government's

case in court . . . would be harmed by the premature release of evidence or information. . . .'" *Id.*

at 232 (citing Administration of the Freedom of Information Act, H.R.Rep.No.92–1419 (1972),

reprinted in House Committee on Government Operations and Senate Committee on the Judiciary,

Freedom of Information Act and Amendments of 1974 (Pub.L. 93–502) Source Book, 94th Cong.,

1st Sess., 15 (Joint Comm. Print 1975) (hereinafter cited as 1975 Source Book) at 333, *available*

*at* https://www.justice.gov/oip/foia-legislative-materials).

"To fit within Exemption 7(A), the government must show that (1) a law enforcement

proceeding is pending or prospective and (2) release of the information could reasonably be

expected to cause some articulable harm." *Amnesty Int'l USA v. CIA*, 728 F. Supp. 2d 479, 525

(S.D.N.Y. 2010) (internal quotation marks omitted). As noted above, the Court previously

concluded that the FBI had sufficiently shown that the Maxwell prosecution, currently pending on

appeal, constitutes a pending law enforcement proceeding. Order at 17-18.

With respect to whether release of information could reasonably cause some articulable

harm, the government's burden is not high; the government need only show that "disclosure of

particular kinds of investigatory records . . . would generally interfere with enforcement proceedings." *Robbins Tire*, 437 U.S. at 236 (quotation marks omitted); *Radcliffe v. IRS*, 536 F. Supp. 2d 423, 437 (S.D.N.Y. 2008).   In doing so, the government must demonstrate a "rational link" between the requested public disclosure and interference with the government's ongoing or prospective investigations or proceedings.  *See Crooker v. Bureau of Alcohol, Tobacco, and Firearms*, 789 F.2d 64, 67 (D.C. Cir. 1986); *New York Times Co. v. Dep't of Justice*, No. 14 Civ. 03776 (AT) (SN), 2016 WL 5946711, at *7 (S.D.N.Y. Aug. 18, 2016).

The government is not required to make a specific factual showing with respect to each withheld document that disclosure would interfere with a particular enforcement proceeding.  *See Robbins Tire*, 437 U.S. at 236.  Rather, the showing of harm under Exemption 7(A) may be made on a categorical basis.  *Id.*  That is, "an agency may satisfy its burden of proof 'by grouping documents in categories and offering generic reasons for withholding the documents in each category.'"  *Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Just.*, 746 F.3d 1082, 1098 (D.C. Cir. 2014) (citing *Maydak v. U.S. Dep't of Just.*, 218 F.3d 760, 765 (D.C. Cir. 2000)).  Accordingly, federal courts may make generic determinations that disclosure of particular types of records could reasonably be expected to interfere with the type of enforcement proceeding at issue.  *Radcliffe*, 536 F. Supp. 2d at 437.

### A.  The FBI Properly Categorized Records

Here, the FBI has reviewed the documents and grouped them into the following three functional categories: (1) Evidentiary/Investigative Materials; (2) Administrative Materials; and (3) Public Source/Non-Investigative Harm Materials.  First Seidel Decl. ¶¶ 58-68; Second Seidel Decl. ¶¶ 15-16; Third Comey Decl. ¶¶ 11-13.

The first category of records—Evidentiary/Investigative Materials—includes copies of

records or evidence, analysis of that evidence, and derivative communications summarizing or otherwise referencing evidence.  Third Comey Decl. ¶ 14; First Seidel Decl. ¶¶ 61-63.  These records or evidence include: business records (for example, phone records, travel records, financial records, and shipping records) gathered during criminal investigations, including through the service of grand jury subpoenas, and analysis of those records; documents and evidence provided by witnesses to law enforcement; documents regarding witness background information (for example, criminal history records, medical records, employment records, social media records, and educational records); reports, notes, or transcripts of witness statements; and communications with and about witnesses.  *Id.*  The documents contained in this category also include confidential witness statements from dozens of witnesses, and the discussion of evidence among members of law enforcement.  *Id.*

The second category—Administrative Materials—includes internal communications among investigators within the FBI providing updates regarding the status of the investigation, including witness interviews and discussion of evidence gathered during the investigation; communications between the FBI and other government agencies regarding the investigation; grand jury subpoenas identifying the names of witnesses and documents sought during the investigation; and organizational documents such as envelopes used to organize and store documents and other evidentiary documents, bulky exhibit cover sheets, transmittal forms, and letter routing slips, some of which contain the names of witnesses, including victim-witnesses, and subjects of the investigation.  Third Comey Decl. ¶ 15; First Seidel Decl. ¶¶ 64-66.

Finally, the third category—Public Source/Non-Investigative Harm Materials—consists of publicly available news reporting and other open source materials that are already accessible online through public sources.  Third Comey Decl. ¶ 16; First Seidel Decl. ¶¶ 67-68.  Because release of

7

this category of records does not present any concerns of interference with the pending prosecution of Maxwell, the FBI has already produced these records in full to Radar Online. *Id.*

Accordingly, the FBI properly categorized the records as required by the Court's Order. *See* Order at 19-21; *see also, e.g.*, *Dillon v. Dep't of Just.*, 102 F. Supp. 3d 272, 291-92 (D.D.C. 2015) (affirming Exemption 7(A) withholdings based on similar categorization).

### B. The FBI Properly Linked the Categories of Records to Potential Harms to the *Maxwell* Prosecution

As explained in the Declaration of Maurene Comey, one of the Assistant United States Attorneys for the Southern District of New York prosecuting the criminal action against Ghislaine Maxwell, release of the FBI's records relating to the investigation and prosecution of Epstein could reasonably be expected to interfere with the pending prosecution of Maxwell that is currently on appeal. Third Comey Decl. ¶ 12; Second Seidel Decl. ¶¶ 14, 18. If the Second Circuit grants Maxwell the relief she seeks relating to her conviction, there could be a new trial, and premature release of the first two categories of records could reasonably be expected to harm the government's case in court in several ways. Third Comey Decl. ¶¶ 12-16; *Robbins Tire*, 437 U.S. at 224-25, 232 (citing 1975 Source Book).

#### 1. Evidentiary/Investigative Materials

Specifically, release of those documents categorized as Evidentiary/Investigative Materials could reasonably be expected to harm the government's case with respect a retrial of Maxwell by impacting witness testimony. Third Comey Decl. ¶ 14(a). For example, premature disclosure of business records and witness statement (including disclosure of analysis and summaries of those materials) could influence witness testimony because these records include details that are not publicly known or known to other witnesses, and include information and documents authored by and about potential witnesses. *Id.* Because the majority of the records in this category were not

8

introduced as public exhibits during Maxwell's first trial, they remain non-public, though the government may still seek to introduce them should Maxwell be granted a retrial. *Id.* The premature release of these materials could influence the testimony of witnesses by providing the opportunity for witnesses to shape their testimony to conform with other evidence gathered during the investigation, including both records and witness statements. *Id.* For example, witnesses may shade their testimony to match the descriptions of events and places given by other witnesses about whom they might not otherwise know, or witnesses may shade their testimony to match the timing of travel, financial transactions, phone calls, and shipments reflected in the records. *Id.*

In order to preserve the independent integrity of its witnesses' testimony, the government has worked to ensure that its witnesses are not exposed to other parts of its investigative file, the accounts of other witnesses, or the full scope of exhibits it may offer at a retrial. *Id.* The release of these materials would undermine the government's efforts to present witness testimony that is uninfluenced by exposure to other evidence in the case and can therefore be independently corroborated by other witness accounts and exhibits at trial. *Id.* Additionally, premature release of witness statements and background materials in this category could prevent the government from effectively questioning witnesses in a manner that would allow jurors to assess their credibility because the witnesses may have already viewed records that counsel may use for impeachment purposes, including witness background materials, witness statements, and business records that might contradict witnesses' testimony. *Id.*

Further, the business records, witness statements, and witness background materials within this category (including summaries and analysis thereof) contain sensitive personal and private information about dozens of potential witnesses, including some witnesses who testified at Maxwell's first trial and many witnesses who were not called at Maxwell's first trial, but who may

be called to testify if Maxwell is granted a retrial.  *Id.* ¶ 14(b).  By their very nature, all of the witness statements and witness background materials necessarily include identifying information and sensitive details regarding numerous witnesses.  *Id.*  Similarly, the business records—including financial records, travel records, phone records, and shipping records—include the names, addresses, phone numbers, and other identifying information of numerous witnesses.  *Id.* The public release of this information could lead to the identification and intimidation of witnesses, who may decline to cooperate with the parties and be disinclined to testify if their personal information is released to the public.  *Id.*  Indeed, multiple witnesses at Maxwell's first trial testified under pseudonyms or just their first name to protect their privacy, and they only agreed to cooperate with the government's investigation because they understood that the government would take every effort to protect their privacy.  *Id.*  Those same witnesses likely would not have agreed to testify if their identities or sensitive information about them were publicly revealed.  *Id.* The premature release of these records could reasonably be expected to interfere with a potential retrial of Maxwell by causing witnesses to be identified in the media and face embarrassment and potential harassment from members of the public as a result.  *Id.*  Should these records be released, many witnesses, including some witnesses who agreed to testify at Maxwell's first trial and others who did not testify at Maxwell's first trial but may be called at a retrial, will likely decline to cooperate in trial preparation with the government and may refuse to testify at a retrial.  *Id.*

Given the harmful effects that disclosure of the first category of documents from the FBI's records would have on the government's ability to present witness testimony in any retrial of Maxwell, it is unsurprising that courts have recognized the effect on witness testimony as a cognizable basis to withhold records under Exemption 7(A).  *See, e.g.*, *Western Journalism Ctr. v. Office of Indep. Counsel*, 926 F. Supp. 189, 192 (D.D.C. 1996) (Exemption 7(A) applies where

"[w]itnesses with access to such information could easily alter, conform or construct their testimony depending upon the information disclosed"); *Tipograph v. Dep't of Just.*, 83 F. Supp. 3d 234, 239 (D.D.C. 2015) ("Courts allow withholding under Exemption 7(A), for example, when [p]ublic disclosure of information could result in . . . chilling and intimidation of witnesses.") (citations and internal quotation marks omitted).

Further, premature release of the records withheld under Exemption 7(A) could reasonably be expected to further impair the government's ability to present its case in court with respect to any retrial of Maxwell because it risks prejudicing the jury pool.  Third Comey Decl. ¶ 14(c).  The majority of records in this category—including phone records, bank records, travel records, and shipping records—were not admitted into evidence at Maxwell's first trial.  *Id.*  Similarly, many witnesses whose statements and background information fall within this category did not testify at Maxwell's first trial.  *Id.*  The premature release of these materials risks prejudicing the jury pool so as to hinder the government's ability to present its case in court in two respects.  *Id.*  First, to the extent materials within this category are never admitted at a retrial, the jury may wonder why those materials were absent from the trial and may suspect the government of trying to hide evidence from the jury, causing jurors to draw an unwarranted adverse inference against the government.  *Id.*  In this scenario, the jury may also improperly consider publicly released materials that were not introduced as evidence at the trial in their deliberations.  *Id.*  The materials in this category, including business records and witness statements, may seem relevant to a layperson but may be inadmissible at trial for various reasons under the Federal Rules of Evidence.  *Id.*  Potential jurors' consideration of the records that are being withheld under Exemption 7(A) but will not be presented at trial may impact the consideration jurors give to the actual evidence presented by the government.  *Id.*  If some or all of this evidence is excluded at trial, pre-trial publication of these

materials would risk exposing potential jurors to material they would otherwise not be shown during trial, which risks unduly influencing jurors' views of the case and would impair the government's ability to effectively and fairly present its case in court. *Id.* Second, if materials within this category are admitted at trial after being prematurely released, members of the jury could have preconceived notions of that evidence's relevance or importance. *Id.* This is especially concerning given the intense media scrutiny surrounding the *Maxwell* case and commentary that is likely to follow the release of any records of substance from the investigative file. *Id.*

The concern of harming the government's case in court by risking prejudice to the jury pool is a valid one, as evidenced by Congress' intent in amending Exemption 7(A) in 1974. As the Supreme Court recognized, "Senator Hart stated specifically that Exemption 7(A) would apply 'whenever the Government's case in court . . . would be harmed by the premature release of evidence or information. . . .'" *Robbins Tire*, 437 U.S. at 232 (citing 1975 Source Book at 333). In its Order on the parties' prior cross-motions, this Court observed that "the FBI's concerns regarding the effects of disclosure on jury impartiality are properly raised under Exemption 7(B), and not under Exemption 7(A)." Order at 22-23 n.10. As the Court noted, Exemption 7(B), 5 U.S.C. § 552(b)(7)(B), applies where disclosure "would deprive a person of a right to a fair trial or an impartial adjudication." *Id.* The Court reasoned that "[i]t appears unlikely that Congress intended that Exemption 7(A) apply to documents 'which could reasonably be expected to impair the . . . ability to seat a fair and impartial jury'" because "[t]hat reading of Exemption 7(A) would swallow Exemption 7(B), despite the latter's heightened standard and distinct requirements." *Id.* The government regrets any confusion caused by its articulation in its initial papers of the harm with respect to prejudicing the jury pool. To be clear, the harm the government is articulating through a risk of prejudicing the jury pool is the harm of prejudicing *the government's* ability to

present its criminal case in court—precisely the type of harm recognized by the Supreme Court and drafters of Exemption 7(A).

Indeed, rather than support that Exemption 7(B) was a carve out from Exemption 7(A) that applied whenever there was an impairment of an ability to seat a fair and impartial jury, the notes to Congress' amendment to Exemption 7(A) explain the difference between Exemption 7(A) and 7(B) as follows: "A fundamental difference between clause (A) and clause (B) is that, while the former is intended primarily to protect governmental functions, clause (B) protects the rights of private persons." 1975 Source Book at 518. This distinction is supported by the case law. The handful of cases addressing the assertion of Exemption 7(B) generally involve situations where the exemption is being asserted to protect the rights of non-governmental litigants to fair trials. *See, e.g.*, *Chiquita Brands Int'l Inc. v. S.E.C.*, 805 F.3d 289, 292, 294-95 (D.C. Cir. 2015) (applying exemption to private litigants); *New York Times Co. v. U.S. Dep't of Just.*, No. 16 Civ. 6120 (RMB), 2017 WL 4712636, at *24 (S.D.N.Y. Sept. 29, 2017) (asserting that release of documents could harm detainees' ability to receive a fair and impartial adjudication); *Dow Jones Co. v. FERC*, 219 F.R.D. 167, 174 (C.D. Cal. 2003) (referencing prejudice to individual private defendants in receiving fair trials). Here, by contrast, the government does not rely on Exemption 7(B), but rather properly asserts Exemption 7(A) so that its ability to prosecute its case in court is not impaired by a risk of prejudicing the jury pool through premature disclosure of the records.

Finally, although the majority of materials, including testifying witness statements, material subject to disclosure pursuant to *Giglio v. United States*, 405 U.S. 150 (1972), and material subject to disclosure pursuant to Federal Rule of Criminal Procedure 16, have already been produced to Maxwell as part of the criminal discovery process, some files in this category have not been produced to her, such as internal FBI analyses of records and work product resulting from

those analyses.  Third Comey Decl. ¶ 14(d)-(e).  Disclosure of these materials would thus allow Maxwell to have greater access to the investigatory files than she would otherwise have through the criminal discovery process.  *Id.* at ¶ 14(d).  As the Supreme Court has recognized, "'prevent[ing] harm to the government's case in court by not allowing an opposing litigant earlier or greater access to investigatory files than he would otherwise have'" was a chief legislative concern in enacting Exemption 7(A).  *See Robbins Tire*, 437 U.S. at 227 (citing 1975 Source Book at 332).   Further, given the risks of prejudice with respect to witnesses and the jury should the materials produced to Maxwell be released to the public, the government's productions to Maxwell have been subject to a Protective Order, entered by Judge Nathan, which prohibits the defense from disseminating Government productions to the public or the press.  Third Comey Decl. ¶ 14(e); *see Maxwell*, No. 20 Cr. 330, ECF No. 36.   Releasing the materials through FOIA would contravene the efforts made by the parties and the Court to avoid the risks of prejudice with respect to witnesses and the jury.[2]

### 2.  Administrative Materials

Release of those documents categorized as Administrative Materials could also reasonably be expected to harm the government's case with respect a retrial of Maxwell in multiple respects. First, release of records pertaining to grand jury subpoenas, organizational documents such as cover sheets, and internal communications among investigators about the status of the investigation and investigative steps will allow potential witnesses to consider specific evidence and the volume of evidence prior to trial, which may influence their testimony in a manner similar to that outlined above with respect to the first category.  Third Comey Decl. ¶ 15(a).  Similarly,

---

[2] The government has no objection to the release of the small fraction of materials in the first category that were admitted as public exhibits at Maxwell's first trial.  Third Comey Decl. ¶ 14(f). The government has already made these exhibits available to the press upon request.  *Id.*

release of records revealing communications among investigators and cover sheets listing types of records contained within the investigative file risks revealing to witnesses the steps investigators took and the types of evidence obtained during the investigation. *Id.* Pretrial exposure to such information risks influencing witness testimony in a manner similar to that outlined above with respect to the first category. *Id.* In addition, certain materials within this category include identifying information for witnesses. *Id.* For example, certain of the grand jury subpoenas, cover sheets, internal communications, and communications among law enforcement investigators include the names and other identifying information of witnesses. *Id.* The release of those materials would thus identify witnesses and subject them to possible embarrassment and harassment, which, for the same reasons discussed with respect to the first category above, could lead witnesses to refuse to cooperate with trial preparation and decline to testify at a retrial. *Id.* Accordingly, the effect that premature release of the records would have on witness testimony is a valid basis for the FBI's withholding of the records under Exemption 7(A). *See, e.g., Western Journalism Ctr.*, 926 F. Supp. at 192; *Tipograph*, 83 F. Supp. 3d at 239.

Additionally, as with the first category, premature release of information in the second category would hinder the government's ability to present its case in court by threatening to prejudice the jury pool. Third Comey Decl. ¶ 15(b). Should potential jurors be able to view the FBI's communications regarding the investigation, forms, and grand jury subpoenas, they will know who the FBI contacted during its investigation, information that was disclosed by witnesses, including witnesses who will not testify at trial, and the type and volume of evidence that was gathered by the FBI. *Id.* Jurors may improperly consider this information in conjunction with the actual evidence that is presented at trial. *Id.* For example, records used to identify or catalog evidence would reveal to potential jurors the evidence in the government's possession and

potentially the date such evidence was obtained.  *Id.*  Similarly, transmittal forms or routing slips may contain the names of witnesses or timeframe during which the FBI was in focused on a specific individual.  *Id.*  Records containing communications with other government agencies may reveal the sources of information and may cause jurors to give more or less weight to certain evidence.  *Id.*  In addition, release of these records may cause jurors to speculate about the evidence that will be used at trial and cause them to alter their views of the evidence presented at trial.  *Id.* Accordingly, given that the government's case in court would be harmed if release of the records prejudiced the jury pool, the FBI properly withheld the records under Exemption 7(A).  *See, e.g.*, *Robbins Tire*, 437 U.S. at 232 (citing 1975 Source Book at 333).

Finally, many of the materials within this second category, including grand jury subpoenas, cover sheets, internal FBI communications, and communications with other law enforcement agents, were not discoverable and therefore not produced to Maxwell.  Third Comey Decl. ¶ 15(c). Disclosure of these materials would thus allow Maxwell to have greater access to the investigatory files than she would otherwise have through the criminal discovery process, which constitutes an additional valid basis for withholding the materials under Exemption 7(A).  *Id.*; *see Robbins Tire*, 437 U.S. at 227 (citing 1975 Source Book at 332).  To the extent some of these materials have been produced to Maxwell, they are subject to Judge Nathan's Protective Order.  Third Comey Decl. ¶ 15(c); *see Maxwell*, No. 20 Cr. 330, ECF No. 36.

## III.   Applicability of Other FOIA Exemptions to the Categorically-Withheld Records

As discussed above, the Court has already granted the FBI summary judgment with respect to Exemptions 6, 7(C), 7(E), Exemptions 3 as it pertains to the Child Victims' and Child Witnesses' Rights Act, 18 U.S.C. § 3509, and Exemption 7(D) as it pertains to information provided by local law enforcement agencies.  Order at 26, 31-42, 47-50.  The FBI's initial

summary judgment motion did not provide a detailed description of the categorically-withheld documents under Exemption 7(A), as no *Vaughn* index was required and the FBI cannot reveal the volume and precise nature of such documents without thereby revealing information protected by Exemption 7(A).  ECF No. 38 at 12 n.4; Second Seidel Decl. ¶ 10.  The FBI did review the records categorically withheld in connection with the first summary judgment motion, however, and additionally asserted Exemptions 3, 5, 6, 7(C), 7(D), and 7(E) with respect to information contained in those records.  ECF No. 38 at 12 n.4.  The FBI also requested that it be provided with the opportunity to provide further detail with respect to specific records as necessary to adjudicate its assertion of these exemptions with respect to the categorically-withheld documents if the Court concluded that Exemption 7(A) did not apply.

The FBI wishes to clarify that with respect to the types of information on which it prevailed on summary judgment, the Court's ruling extends to the same or similar information insofar as it is contained in the categorically-withheld documents.  For the avoidance of doubt, the Third Comey Declaration therefore makes clear that such similar or same information is contained in the categorically-withheld documents.  *See* Third Comey Decl. ¶¶ 18-23.  As an example, the categorically-withheld records include documents that contain the names, images, and identifying information of child victims and child witnesses within the investigation into Epstein's sexual abuse of minors, *id.* ¶ 20, which the Court has already ruled are properly withheld under Exemption 3 as protected by the Child Victims' Act.  Order at 26.  As another example, the categorically-withheld records also include "the names and identifying information of third parties of investigative interest; FBI special agents and victim specialists; third party victims; local law enforcement and other local government personnel; third parties merely mentioned; non-FBI federal government personnel; and third parties who provided information,"

Third Comey Decl. ¶ 22, which the Court has determined are properly withheld under Exemptions 6 and 7(C).  Order at 33-42.  Accordingly, it is the FBI's understanding that the Court's holdings on exemptions apply equally to such information as it appears in the categorically-withheld records.

## IV.    The FBI Properly Withheld Information Under Exemption 3

FOIA Exemption 3 applies to records "specifically exempted from disclosure by statute," provided that the statute "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue."  5 U.S.C. § 552(b)(3).  In evaluating an agency's invocation of FOIA Exemption 3, courts must consider whether the statute identified by the agency is a statute of exemption as contemplated by Exemption 3, and whether the withheld material satisfies the criteria of the exemption statute.  *CIA v. Sims*, 471 U.S. 159, 167 (1985).

As this Court previously recognized, information that falls within the ambit of Federal Rule of Criminal Procedure 6(e) is protected under Exemption 3.  Opinion at 27.  In the Second Circuit, the relevant inquiry is whether the information at issue "may tend to reveal what transpired before" the grand jury.  *U.S. v. Eastern Air Lines, Inc.*, 923 F.2d 241, 244 (2d Cir. 1991); *see also Lopez v. Dep't of Justice*, 393 F.3d 1345, 1349 (D.C. Cir. 2005).

In its Opinion, the Court recognized that certain types of documents fall squarely within the ambit of Rule 6(e)—namely, those that would explicitly reveal the identities of witnesses and the sources of information the grand jury relied on to develop the facts of the investigation, the strategy and direction of the investigation including where the grand jury sought evidence, and the steps the grand jury took in its investigation.  Opinion at 27, 29; *see also Grynberg v. U.S. Dep't of Just.*, 758 F. App'x 162, 164 (2d Cir. 2019); *Hodge v. FBI*, 703 F.3d 575, 580 (D.C. Cir. 2013); *Senate of Puerto Rico v. U.S. Dep't of Just.*, 823 F.2d 574, 582 (D.C. Cir.

1987); *John Doe Corp. v. John Doe Agency*, 850 F.2d 105, 109 (2d Cir. 1988), *rev'd on other grounds*, 493 U.S. 146 (1989).  These are precisely the types of records on the FBI's *Vaughn* index—*i.e.*, those records processed prior to Epstein's arrest before the categorical assertion of Exemption 7(A)—for which it has asserted Exemption pursuant as protected by Rule 6(e).

As explained in the Second Seidel Declaration, the first category of records that the FBI withheld as protected grand jury materials includes FBI interviews and reporting summaries of named individuals subpoenaed to obtain details as to their forthcoming grand jury testimony. Second Seidel Decl. ¶ 23.  The second category the FBI withheld pursuant to this exemption includes federal grand jury testimony transcripts and testimony summaries of named individuals who testified before the federal grand jury.  The third category of withheld information includes federal grand jury subpoenas, cost reimbursement requests, and FBI reporting summaries and documents containing detailed information concerning the federal grand jury subpoenas, including to whom they were directed, and the type of information subpoenaed.  These types of records are also included within the records categorically withheld pursuant to Exemption 7(A).  *See* Third Comey Decl. ¶ 19(b)-(d).

In its Opinion, the Court also suggested that documents that were obtained via grand jury subpoena are not automatically exempt from disclosure.  Opinion at 28-30.  Although the FBI did not assert Exemption 3 over any document that was a grand jury return in the documents processed prior to Epstein's arrest, it does assert Exemption 3 over such documents (as well as over the FBI's analyses of them) that were categorically withheld under Exemption 7(A).  *See* Third Comey ¶ 19(a) & (e).

Specifically, the grand jury returns in the FBI's file includes business records—such as financial records, phone records, shipment records, and travel records—produced in response

to grand jury subpoenas. *Id.* at ¶ 19(a). These records (and the FBI's analyses of them) are identifiable as grand jury materials and would therefore reveal the sources of information relied upon by the grand jury and the strategy and direction of its investigation. *Id.* at ¶ 19(a) & (e). Many of the business records are accompanied by cover sheets identifying the records as subpoena returns, by copies of the subpoenas requiring the production of the records, by cover letters from the businesses referencing the receipt of a subpoena, and/or by invoices from the subpoenaed companies' subpoena compliance departments, indicating that the records were produced in response to a grand jury subpoena. *Id.* Moreover, even if divorced from these cover materials that make it explicit that the documents in question are grand jury returns, it would be readily apparent that such records had been obtained by grand jury subpoena. As the AUSA prosecuting Maxwell explained, companies such as financial institutions, phone service providers, shipping companies, and travel companies do not ordinarily provide their business records voluntarily to investigators; rather, these companies insist on legal process, typically a subpoena, before providing their confidential business records. *Id.* Accordingly, the production of such records from within the FBI's files would reasonably lead an observer to correctly infer that these records were obtained through grand jury subpoenas, thus revealing details of the grand jury's investigation. *Id.* Indeed, as noted by one court in this district, "[i]n the context of this criminal investigation, the Government's possession of these records establishes a strong likelihood that they were produced pursuant to a grand jury subpoena." *Grynberg v. U.S. Dep't of Just.*, 302 F. Supp. 3d 532, 538 (S.D.N.Y. 2018), *aff'd sub nom. Grynberg*, 758 F. App'x 162. *See also In re Grand Jury Proc.*, 851 F.2d 860, 866 (6th Cir. 1988) ("The general rule [is] that confidential documentary information not otherwise public obtained by the grand jury by coercive means is presumed to be 'matters occurring before the grand jury' just as much as

testimony before the grand jury."); *In re Grand Jury Investigation B-15-1*, No. 16-mc-4, 2016 WL 110002, at *4 (D. Conn. Jan. 8, 2016) (holding that Rule 6(e) protected grand jury returns).

Accordingly, the FBI properly withheld pursuant to Exemption 3 information tending to reveal what transpired before the grand jury.[3]

## V.    The FBI Properly Withheld Information Under Exemption 7(D)

Exemption 7(D) exempts from disclosure agency records "compiled for law enforcement purposes . . . by criminal law enforcement authority in the course of a criminal investigation" if release of those records "could reasonably be expected to disclose" the identity of, or information provided by, a "confidential source." 5 U.S.C. § 552(b)(7)(D); *see also U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 171 (1993). "[A] source is confidential within the meaning of Exemption 7(D) if the source 'provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred.'" *Landano*, 508 U.S. at 172. The promised confidentiality can only be waived by the source. *Adamowicz v. IRS*, 402 Fed. App'x 648, 653 (2d Cir. 2010); *see also Ferguson v. FBI*, 957 F.2d 1059, 1068 (2d Cir. 1992) ("[W]e reject the idea that subsequent disclosures of the identity of a confidential source . . . requires full disclosure of information provided by such a source."). The status of the investigation does not change the applicability of this exemption. *Diamond v. FBI*, 707 F.2d 75, 76-77 (2d Cir.

---

[3] With respect to Exemption 3, the Court also held that the FBI had not provided a sufficient explanation for withholding documents pursuant to the Juvenile Justice and Delinquency Act, 18 U.S.C. § 5038. Upon further review of the documents that it withheld under this Act, the FBI realized that it inadvertently miscoded the withheld documents and that the documents instead should have been withheld pursuant to the Child Victims' Act. Second Seidel Decl. ¶ 26. The FBI had already asserted the Child Victims' Act with respect to most pages also withheld under the Juvenile Justice and Delinquency Act and now asserts the Child Victims' Act as the basis for withholding several additional pages, as outlined in the Second Seidel Declaration. *Id.* The Court already granted the FBI summary judgment with respect to documents withheld under the Child Victims' Act. *See* Order at 26.

1983) (documents do not lose their 7(D) exemption due to the passage of time).

Here, the FBI properly withheld the names and identifying information of confidential sources based on express and implied assurances of confidentiality. With respect to an express grant of confidentiality, prior to Epstein's arrest, the FBI withheld three categories of documents. First, the FBI withheld a category of documents (Category A), consisting of investigatory information obtained by local law enforcement in Florida through administrative subpoenas served on corporations relating to their investigation of exploitation of minors by Epstein. Second Seidel Decl. ¶ 36. The face of the documents reflect that the state investigators received this information in confidence and that the corporations sought and received confidentiality for their assistance. *Id.* Given that the state law enforcement granted confidentiality, the FBI continues the granting of this confidentiality. *Id.* The FBI also withheld a second category of information (Category B) based on an express grant of confidentiality. *Id.* With respect to this category, an individual during an interview with the FBI agreed to provide information and documentation concerning human trafficking of children by Epstein on the basis that the individual be treated as a confidential witness and that the information they provided be kept in confidence. *Id.* Third, although the FBI had initially withheld information on several pages provided by a foreign government agency under an implied assurance of confidentiality, the FBI now withholds the information under an express grant of confidentiality, as indicated by the face of the document. *See* Second Seidel Decl. ¶¶ 39-41.[4] Within the documents categorically withheld under Exemption 7(A) following Epstein's arrest, the FBI also withheld documents pertaining to adult victims and witnesses based

---

[4] The Court held that the FBI had provided an insufficient explanation for withholding other documents provided by a foreign government agency. See Order at 46-47. On further review, the FBI withdraws this basis for withholding with respect to all documents other than the one noted above and instead relies on other the other exemptions it has asserted with respect to this information. *See* Second Seidel Decl. ¶ 39.

on express assurances of confidentiality, as indicated on the face of the documents. *See* Third Comey Decl. ¶ 21. The FBI therefore reasonably protected these categories of information given the express assurance and to prevent a chilling effect on the FBI's ability to obtain information in the future from these and other sources. *See* Second Seidel Decl. ¶ 28; Order at 44 (citing *Campbell v. DOJ*, 164 F.3d 20, 34 (D.C. Cir. 1998)).

With respect to inferred confidentiality, the FBI determined that confidentiality could be inferred with respect to two categories of documents that it processed prior to Epstein's arrest. First, it inferred confidentiality with respect to a probable cause affidavit of the Palm Beach Police Department ("PBPD") (Category A). Second Seidel Decl. ¶ 31. The investigation concerned a sexual battery investigation involving Epstein, and others, in 2005, at the residence of Jeffrey Epstein, and the affidavit summarizes sworn statements from multiple victims and witnesses. *Id.* The FBI determined these victims and witnesses' confidentiality can be inferred as the PBPD determined to obscure all the individuals' identities, and the underage victims and witnesses are addressed by code names in the affidavit, rather than by actual name. *Id.* Given that the local law enforcement used coded representations of individuals names, this is an indication that the local law enforcement agency wanted this information to remain confidential, and the FBI continues to protect the confidentiality of these individuals. *Id.* Second, the FBI also determined that confidentiality could be inferred with respect to summaries, notes, and interviews of multiple underage victims regarding their exploitation as minors and as witnesses to the exploitation (Category B). *Id.* The FBI reached this decision because the witnesses were minors and the details provided concerning the sexual exploitation of minor children, and with respect to one source, an obscuring of the individual's identity. *Id.* As explained in the Third Comey Declaration,

confidentiality could reasonably be inferred with respect to similar documents contained within the records categorically withheld under Exemption 7(A).  *See* Third Comey Decl. ¶ 21.

With respect to all categories of inferred confidentiality, the witnesses could reasonably fear retaliation at the time they provided this information.  *See* Second Seidel Decl. at ¶ 32.  Epstein was a very wealthy man, with an abundance of resources and political connections that could be used to destroy or harm these victims and the witnesses' futures, including by posing financial hardships, to include adverse employment decisions.  *Id.*  Being associated with, and or being a victim of, Epstein has a lasting effect that could encumber victims and witnesses' education, employment, and personal lives, for the rest of their lives.  *Id.*  Therefore, the FBI reasonably inferred that the witnesses spoke under the condition of confidentiality.  *Id.*; *see* Order at 44-46 (citing *Landano*, 508 U.S. at 179).  Accordingly, the FBI's withholdings pursuant to Exemptions 7(D) were proper.

## VI.   The FBI Satisfied Its Duty to Segregate and Release Any Non-Exempt Information

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection."  5 U.S.C. § 552(b).  Nonexempt portions of documents may "be withheld if they are inextricably intertwined with the exempt portions."  *Conti v. U.S. Dep't of Homeland Sec.*, No. 12 Civ. 5827 (AT), 2014 WL 1274517, at *25 (S.D.N.Y. Mar. 24, 2014) (quotation marks omitted).  "The agency is entitled to a presumption that it complied with its obligation to disclose reasonably segregable material."  *Conti,* 2014 WL 1274517, at *25 (citing *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007)); *see also Bishop v. U.S. Dep't of Homeland Sec.*, 45 F. Supp. 3d 380, 393-94 (S.D.N.Y. 2014) (same).  Moreover, in justifying its segregability analysis, an agency "should not be forced to provide such a detailed justification that would itself

24

compromise the secret nature of potentially exempt information." *Roman v. CIA*, No. 11 Civ. 2390 (JFB) (WDW), 2012 WL 6138487, at *7 (E.D.N.Y. Dec. 11, 2012) (quoting *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977)).

In the present case, FBI has already produced 1,232 pages of records, with appropriate redactions, in response to the Radar Online's FOIA requests. Second Seidel Decl. ¶ 3. Here, the records withheld in full by the FBI do not contain any reasonably segregable non-exempt information. Second Seidel Decl. ¶¶ 9-10, 42-43; Third Comey Decl. ¶ 17. With respect to records withheld in full pursuant to Exemption 7(A), the Third Comey Declaration explains why each category of records is exempt from disclosure, and further states that, to the extent there is non-exempt information contained in the records withheld under Exemption 7(A), that information is intertwined with exempt information and cannot reasonably be segregated without risking interference with the Maxwell prosecution, referencing the harms described above. Third Comey Decl. ¶ 17. Records also withheld under other exemptions are either privileged in their entirety or any non-exempt information is inextricably intertwined with exempt information. Second Seidel Decl. ¶¶ 9-10. Accordingly, the FBI has complied with its obligation to reasonably segregate any non-exempt portions of the records withheld in full and has sufficiently justified its withholdings.

## CONCLUSION

For the foregoing reasons, the Court should grant the FBI's renewed motion for summary judgment.

25

Dated:  New York, New York
        December 7, 2023

                                    Respectfully submitted,

                                    DAMIAN WILLIAMS
                                    United States Attorney for the
                                    Southern District of New York
                                    Counsel for Defendant

                        By:      /s/ Allison M. Rovner
                                 _____
                                 ALLISON M. ROVNER
                                 Assistant United States Attorney
                                 86 Chambers Street, 3rd floor
                                 New York, New York 10007
                                 Telephone: (212) 637-2691
                                 Email:  allison.rovner@usdoj.gov