UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RADAR ONLINE LLC and JAMES
ROBERTSON,

                    Plaintiffs,

        v.

FEDERAL BUREAU OF INVESTIGATION,

                    Defendant.

17 Civ. 3956 (PGG)

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
THE FEDERAL BUREAU OF INVESTIGATION'S RENEWED MOTION FOR
SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFFS' RENEWED
CROSS-MOTION FOR SUMMARY JUDGMENT**

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
Attorney for Defendant
86 Chambers Street, 3rd floor
New York, New York 10007
Tel: (212) 637-2691
Email:  allison.rovner@usdoj.gov

ALLISON M. ROVNER
Assistant United States Attorney

        – Of Counsel –

## PRELIMINARY STATEMENT

The Federal Bureau of Investigation ("FBI") properly withheld the records Plaintiffs seek pursuant to FOIA Exemption 7(A) on the basis that release of the records could reasonably be expected to interfere with the criminal prosecution of Jeffrey Epstein associate Ghislaine Maxwell that is now pending on appeal.  Contrary to Plaintiffs' contentions, the FBI has more than met its burden, and complied with the Court's Order regarding the parties' prior cross-motions for summary judgment, in categorizing the records and articulating a rational link between public disclosure of the records and the anticipated interference with the Maxwell prosecution.  Therefore, all of the information at issue was properly withheld under Exemption 7(A).  Should the Court deem it necessary to reach the issue of the applicability of other exemptions—including Exemptions 3, 5, 6, 7(C), 7(D), and 7(E)—the FBI's assertion of these exemptions was logical, plausible, and in accordance with the Court's Order.

For all these reasons, the Court should grant the FBI's renewed motion for summary judgment and deny Plaintiffs' renewed cross-motion.

## ARGUMENT

### I.    The FBI Properly Withheld Records and Information Under FOIA Exemption 7(A)

Contrary to Plaintiffs' contentions (Pls.' Br. 3-4), the FBI properly withheld all of the records pursuant to FOIA Exemption 7(A) given that premature release of the records could reasonably be expected to interfere with the pending prosecution of Ghislaine Maxwell.  *See* Def.'s Br. 5-16; 5 U.S.C. § 552 (b)(7)(A); *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 224, 232, 236 (1978).  As required by the Court's Order and case law, in the Third Comey Declaration and Second Seidel Declaration the FBI categorized the documents and provided a rational link between the categories of documents and harms to the pending Maxwell prosecution.  *See* Order, ECF No. 51 at 17-25; *see Robbins Tire*, 437 U.S. at 236 (showing of harm under Exemption 7(A) may be

made on a categorical basis); *Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Just.*, 746 F.3d 1082, 1098 (D.C. Cir. 2014) ("[A]n agency may satisfy its burden of proof 'by grouping documents in categories and offering generic reasons for withholding the documents in each category.'") (citing *Maydak v. U.S. Dep't of Just.*, 218 F.3d 760, 765 (D.C. Cir. 2000)).

Plaintiffs do not dispute that the FBI provided a reasonable categorization of the records, including by providing detailed descriptions of the records contained in each category.  *See* First Seidel Decl. ¶¶ 58-68; Second Seidel Decl. ¶¶ 15-16; Third Comey Decl. ¶¶ 11-16.  Rather, Plaintiffs—appearing to ignore the approximately ten pages addressing this in the Third Comey Declaration—argue that the FBI "offers nothing to substantiate how releasing records within that category [sic] will likely result in harm."  Pls.' Br. 3.  Plaintiffs' contentions are meritless.

As an initial matter, Plaintiffs make the unsupported assertion that release of records categorized as evidentiary/investigative materials and administrative materials would not harm the government's case in any retrial of Maxwell by impacting witness testimony, arguing that the information is already in the public domain and that the FBI has not explained how exposure to the material would influence witness testimony. Pls.' Br. 3.  The Court should give no credence to Plaintiffs' conclusory and speculative assertions.  As explained in the Third Declaration of Maurene Comey, one of the AUSAs prosecuting the criminal action against Maxwell, the majority of the records in these categories remain non-public and include information that is not known to potential witnesses at any retrial.  *See* Third Comey Decl. ¶¶ 14(a), 15(a).[1]  Premature release of the withheld categories of information could influence witness testimony by providing the opportunity for witnesses to shape their testimony to conform with other evidence gathered during

---

[1] On the other hand, the government has already released information to Plaintiffs that instead falls within the category of public source/non-investigative harm materials and does not object to production of the public trial exhibits from Maxwell's first trial.  *Id.* ¶¶ 14(f), 16.

the investigation, including both records and witness statements. *Id.* ¶¶ 14(a), 15(a). For example, witnesses may shade their testimony to match the descriptions of events and places given by other witnesses about whom they might not otherwise know, or witnesses may shade their testimony to match the timing of travel, financial transactions, phone calls, and shipments reflected in the records. *Id.* Further, release of records revealing communications among investigators and cover sheets listing types of records contained within the investigative file risks revealing to witnesses the steps investigators took and the types of evidence obtained during the investigation. *Id.* at ¶ 15(a). In sum, premature release of the withheld categories of records would inhibit the government's ability to effectively question witnesses. *Id.* ¶¶ 14(a), 15(a); *see, e.g.*, *Western Journalism Ctr. v. Office of Indep. Counsel*, 926 F. Supp. 189, 192 (D.D.C. 1996) (Exemption 7(A) applies where "[w]itnesses with access to such information could easily alter, conform or construct their testimony depending upon the information disclosed").

Further, premature release of evidentiary/investigative and administrative materials—which contain identifying information and sensitive details about numerous witnesses—is also likely to harm the government's case in any retrial of Maxwell by making the witnesses unwilling to testify, thereby interfering with the government's ability to present witness testimony at trial. Third Comey Decl. ¶¶ 14(b), 15(a). Public release of such identifying and sensitive information could lead to the intimidation and harassment of witnesses, who may decline to cooperate with the government and be disinclined to testify if their personal information is released to the public. *Id.* Contrary to Plaintiffs' contention (Pls.' Br. 4), Exemption 7(A) is intended to protect against precisely such harm. *See, e.g.*, *Robbins Tire*, 437 U.S. at 232 (Congress intended that "Exemption 7(A) would apply 'whenever the Government's case in court . . . would be harmed by the premature release of evidence or information. . . .'" (citing Administration of the Freedom of Information Act, H.R.Rep.No.92–1419 (1972), reprinted in House Committee on Government Operations and

Senate Committee on the Judiciary, Freedom of Information Act and Amendments of 1974 (Pub.L. 93–502) Source Book, 94th Cong., 1st Sess., 15 (Joint Comm. Print 1975) (hereinafter cited as 1975 Source Book) at 333, *available at* https://www.justice.gov/oip/foia-legislative-materials)); *Tipograph v. Dep't of Just.*, 83 F. Supp. 3d 234, 239 (D.D.C. 2015) ("Courts allow withholding under Exemption 7(A), for example, when [p]ublic disclosure of information could result in . . . chilling and intimidation of witnesses.") (citations and internal quotation marks omitted).  Indeed, in *Robbins Tire*, the Supreme Court specifically addressed and validated the assertion of Exemption 7(A) to prevent witness intimidation and harassment that could have a chilling effect on testimony—the same harm at issue here.  *See Robbins Tire*, 437 U.S. at 239-42.[2]

Plaintiffs do not meaningfully dispute the other reasons the FBI provided for withholding evidentiary/investigative and administrative materials under Exemption 7(A), but instead tersely and incorrectly claim that the Court previously rejected these reasons.  *See* Pls.' Br. 3.  First, as explained in the Third Comey Declaration and in the FBI's opening brief, premature release of the records contained within these categories (including phone records, bank records, travel records, and shipping records, witness statements, shipping records, FBI's communications and internal documentation, and grand jury subpoenas) could be reasonably expected to further impair the government's ability to present its case in court with respect to any retrial of Maxwell because it risks prejudicing the jury pool.  Third Comey Decl. ¶¶ 14(c), 15(b); Def.'s Br. 11-13, 15-16.  For example, premature release of the records could cause the jury to draw unwarranted adverse

---

[2] To the extent Plaintiffs assert in their discussion of Exemption 7(A) that Exemptions other than 7(A) under 5 U.S.C. § 552(b)(7) disappear when the Maxwell prosecution ends, they are wrong. *See* Pls.' Br. 4; *see, e.g.*, *ACLU v. NSA*, 925 F.3d 576, 603 (2d Cir. 2019) (reaffirming "general rule" that "a FOIA decision is evaluated as of the time it was made and not at the time of a court's review"); *Aug. v. Fed. Bureau of Investigation*, 328 F.3d 697, 701 (D.C. Cir. 2003) (recognizing that unlike Exemption 7(A), the FBI could assert Exemptions 7(C), 7(D), and 7(F) if law enforcement proceedings had ended).

inferences against the government to the extent materials are not admitted at a retrial or allow the jury to improperly consider in their deliberations publicly released materials that were not introduced at trial rather than the actual evidence presented by the government at trial. *Id.* Release of the information would also inform prospective jurors of the type and volume of evidence gathered by the FBI, which jurors may improperly consider in conjunction with the actual evidence presented at trial. *Id.* ¶ 15(b). Further, to the extent materials prematurely released were introduced at trial, this could cause members of the jury to have preconceived notions of that evidence's relevance or importance, which is of particular concern given the media scrutiny surrounding the *Maxwell* case. *Id.* ¶¶ 14(c), 15(b). For the reasons explained in the FBI's opening brief, which Plaintiffs do not dispute, the concern of harming the government's case in court by risking prejudice to the jury pool is a valid one, as evidenced by Congress' intent in amending Exemption 7(A) in 1974; Congress intended that Exemption 7(A) would apply 'whenever the Government's case in court . . . would be harmed by the premature release of evidence or information. . .'", as it surely would if the jury pool were prejudiced. *See Robbins Tire*, 437 U.S. at 232 (citing 1975 Source Book at 333); Def.'s Br. 12-13.

Further, although the majority of records in the category of evidentiary/investigative materials have already been produced to Maxwell as part of the criminal discovery process relating to her first trial, some files in this category have not been produced to her, such as internal FBI analyses of records and work product resulting from those analyses. Third Comey Decl. ¶ 14(d)-(e); Def.'s Br. 13-14. Moreover, many of the materials in the category of administrative materials, including grand jury subpoenas, cover sheets, internal FBI communications, and communications with other law enforcement agents, were not discoverable and therefore not produced to Maxwell. Third Comey Decl. ¶ 15(c); Def.'s Br. 16. Disclosure of these materials would thus allow Maxwell to have greater access to the investigatory files than she would otherwise have through the criminal

discovery process, which constitutes an additional valid basis for withholding the materials under Exemption 7(A). Third Comey Decl. ¶¶ 14(d)-(e), 16; *Robbins Tire*, 437 U.S. at 227 ("'prevent[ing] harm to the government's case in court by not allowing an opposing litigant earlier or greater access to investigatory files than he would otherwise have'" was a chief legislative concern in enacting Exemption 7(A)) (citing 1975 Source Book at 332). Plaintiffs' apparent contention that the fact that Maxwell already has access to some records somehow undermines the assertion of harm is unavailing. *See* Pls.' Br. 3. This harm applies to those records to which Maxwell does not have access, as summarized above and in the Third Comey Declaration. With respect to those records to which she does have access, the other harms articulated above and in the Third Comey Declaration justify the withholding. Indeed, given the risks of prejudice with respect to witnesses and the jury should the materials produced to Maxwell be released to the public, the government's productions to Maxwell have been subject to a Protective Order, entered by Judge Nathan, which prohibits the defense from disseminating Government productions to the public or the press. Third Comey Decl. ¶¶ 14(e), 15(c); *see USA v. Maxwell*, No. 20 Cr. 330, ECF No. 36. Plaintiffs' brief ignores this reality.

Finally, contrary to Plaintiffs' contentions (Pls.' Br. 3), the Third Comey Declaration explains why to the extent there is non-exempt information contained in the records withheld under Exemption 7(A), that information is intertwined with exempt information and cannot reasonably be segregated without risking interference with the Maxwell prosecution, referencing the harms described above. Third Comey Decl. ¶ 17. "The agency is entitled to a presumption that it complied with its obligation to disclose reasonably segregable material." *Conti v. U.S. Dep't of Homeland Sec.,* No. 12 Civ. 5827 (AT), 2014 WL 1274517, at *25 (S.D.N.Y. Mar. 24, 2014) (citing *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007)); *see also Bishop v. U.S. Dep't of Homeland Sec.*, 45 F. Supp. 3d 380, 393-94 (S.D.N.Y. 2014) (same). Moreover, in

justifying its segregability analysis, an agency "should not be forced to provide such a detailed justification that would itself compromise the secret nature of potentially exempt information." *Roman v. CIA*, No. 11 Civ. 2390 (JFB) (WDW), 2012 WL 6138487, at *7 (E.D.N.Y. Dec. 11, 2012) (quoting *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977)).  The FBI has more than met its burden here.

## II.    The FBI Properly Withheld Records and Information Under Other FOIA Exemptions

Because the FBI properly withheld all of the information under Exemption 7(A), the Court need not reach the applicability of the other exemptions.  However, for the reasons explained in the FBI's opening brief and in the FBI's prior declarations (and as previously found by the Court with respect to many of these exemptions), the FBI properly withheld information under Exemptions 3, 5, 6, 7(C), 7(D), and 7(E) as well.  *See, e.g.*, Def.s' Br. 16-25; Order at 26, 31-42, 47-50.  Plaintiffs only dispute the FBI's withholdings of three categories of records under Exemption 3 relating to grand jury proceedings and two categories of records under Exemption 7(D) withheld based on inferred confidentiality.  *See* Pls.' Br. 4-5.  Plaintiffs' arguments in support of their contentions are meritless.

With respect to Exemption 3, information that falls within the ambit of Federal Rule of Criminal Procedure 6(e)'s protection of the secrecy of the grand jury process is protected under Exemption 3.  Order at 27.  In the Second Circuit, the relevant inquiry is whether the information at issue "may tend to reveal what transpired before" the grand jury.  *U.S. v. Eastern Air Lines, Inc.*, 923 F.2d 241, 244 (2d Cir. 1991); *see also Lopez v. Dep't of Justice*, 393 F.3d 1345, 1349 (D.C. Cir. 2005).  Plaintiffs' unsupported contention that the FBI has not sufficiently explained why the three categories of records outlined in the Second Seidel Declaration should be protected is incorrect.  See Pls.' Br. 4.

In its Order regarding the parties' initial cross-motions for summary judgment, the Court required the FBI to categorize the records withheld pursuant to Rule 6(e) so that the Court could determine which categories of records were properly exempt under Exemption 3.  *See* Order at 30.  The Second Seidel Declaration and Third Comey Declaration more than comply with the Court's Order.  *See* Second Seidel Decl. ¶¶ 19-24; Third Comey Decl. ¶ 19(b)-(e).

With respect to the withholdings of the categories of records that Plaintiffs dispute, in the Second Seidel Declaration the FBI outlined three categories of grand jury materials that it withheld pursuant to Exemption 3: FBI interviews and reporting summaries of named individuals subpoenaed to obtain details as to their forthcoming grand jury testimony; federal grand jury testimony transcripts and testimony summaries of named individuals who testified before the federal grand jury; and federal grand jury subpoenas, cost reimbursement requests, and FBI reporting summaries and documents containing detailed information concerning the federal grand jury subpoenas, including to whom they were directed, and the type of information subpoenaed.  Second Seidel Decl. ¶ 23; *see also* Third Comey Decl. ¶ 19(b)-(d).  The FBI further explained that disclosure of these records would explicitly reveal the identities of witnesses and the sources of information the grand jury relied on to develop the facts of the investigation, the strategy and direction of the investigation including where the grand jury sought evidence, and the steps the grand jury took in its investigation.  *See id.*  These concerns are precisely the concerns that the Court—based on abundant case law—recognized as giving rise to protection under Exemption 3 pursuant to Rule 6(e).  *See* Order at 27, 29; *see also Grynberg v. U.S. Dep't of Just.*, 758 F. App'x 162, 164 (2d Cir. 2019); *Hodge v. FBI*, 703 F.3d 575, 580 (D.C. Cir. 2013); *Senate of Puerto Rico v. U.S. Dep't of Just.*, 823 F.2d 574, 582 (D.C. Cir. 1987); *John Doe Corp. v. John Doe Agency*, 850 F.2d 105, 109 (2d Cir. 1988), *rev'd on*

*other grounds*, 493 U.S. 146 (1989).[3]

With respect to Plaintiffs' challenge to the FBI's withholdings under Exemption 7(D) based on inferred confidentiality (Pls.' Br. 4-5),[4] the FBI explained that it inferred confidentiality of the witnesses and information with respect to two categories of documents: a probable cause affidavit of the Palm Beach Police Department ("PBPD") (Category A), and PBPD's summaries, notes, and interviews of multiple underage victims regarding their sexual exploitation as minors and as witnesses to the exploitation (Category B). Second Seidel Decl. ¶ 31. Regarding Category A, the FBI determined that because the PBPD obscured the individuals' identities, it was an indication that the local law enforcement agency wanted the information the witnesses provided (which could also identify the witness) to remain confidential, and the FBI continues to protect the confidentiality of these individuals and the information they provided. *Id.* As to Category B, the FBI determined that confidentiality of names and information that could also identify the witnesses could be inferred as the witnesses were minors and because of the details provided concerning the sexual exploitation of minor children, and with respect to one source, an obscuring of the individual's identity. *Id.* As the Court already recognized in discussing another exemption, "given the nature of Epstein and Maxwell's conduct towards the alleged victims, it is almost certain that the records sought by Plaintiffs contain highly sensitive material about . . . victims and witnesses" that should be protected. Order at 41. The same holds true under Exemption 7(D).

---

[3] Plaintiffs do not contest the FBI's assertion of Exemption 3 over grand jury returns that were categorically withheld under Exemption 7(A). For the reasons explained in the FBI's opening brief and Third Comey Declaration, the FBI has also properly asserted Exemption 3 over these records. *See* Def.s' Br. 19-21; Third Comey Decl. ¶¶ 19(a) & (e); *Grynberg v. U.S. Dep't of Just.*, 302 F. Supp. 3d 532, 538 (S.D.N.Y. 2018), *aff'd sub nom. Grynberg*, 758 F. App'x 162; *In re Grand Jury Proc.*, 851 F.2d 860, 866 (6th Cir. 1988).

[4] Plaintiffs do not challenge the FBI's withholdings under Exemption 7(D) based on express grants of confidentiality. For the reasons explained in the FBI's opening brief, the FBI properly withheld these records. *See* Def.'s Br. 22-23.

The FBI also inferred that the witnesses in both categories spoke under conditions of confidentiality based on the fact that the crimes involved the sexual exploitation of minors and because the witnesses could reasonably fear retaliation from Epstein. *Id.* ¶¶ 29-32. Contrary to Plaintiffs' contention (Pls.' Br. 5), the fact that Epstein is dead does not change whether the information was provided under circumstances in which confidentiality should be inferred. *See* Def.'s Br. 21-22; *Diamond v. FBI*, 707 F.2d 75, 76-77 (2d Cir. 1983) (documents do not lose their 7(D) exemption due to the passage of time); *Adamowicz v. IRS*, 402 Fed. App'x 648, 653 (2d Cir. 2010) (confidentiality can only be waived by the source).[5]

Accordingly, the FBI's withholdings pursuant to Exemptions 3, 5, 6, 7(C), 7(D), and 7(E) were proper.

---

[5] In any event, Plaintiffs' challenge to the FBI's withholding of two categories of records based on inferred confidentiality is largely immaterial as all of these records were also withheld pursuant to exemptions on which the Court has already granted the FBI summary judgment, including Exemption 3 as it pertains to records withheld under the Child Victims' and Child Witnesses' Rights Act, 18 U.S.C. § 3509 and Exemptions 6 and 7(C). *See* Order at 26, 33-42; Second Seidel Decl. ¶ 33.

**CONCLUSION**

For the foregoing reasons, the Court should grant the FBI's renewed motion for summary

judgment and deny Plaintiffs' renewed cross-motion for summary judgment.

Dated:  New York, New York
        January 16, 2024

                                Respectfully submitted,

                                DAMIAN WILLIAMS
                                United States Attorney for the
                                Southern District of New York
                                Counsel for Defendant

                    By:      /s/ Allison M. Rovner
                                ALLISON M. ROVNER
                                Assistant United States Attorney
                                86 Chambers Street, 3rd floor
                                New York, New York 10007
                                Telephone: (212) 637-2691
                                Email:  allison.rovner@usdoj.gov