UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RADAR ONLINE LLC and JAMES ROBERTSON,

      Plaintiffs,

 - against -

FEDERAL BUREAU OF INVESTIGATION,

      Defendant.

**ORDER**

17 Civ. 3956 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

  Plaintiffs Radar Online LLC and James Robertson bring this action under the Freedom of Information Act ("FOIA"), seeking records related to the FBI's investigation and prosecution of financier Jeffrey Epstein for child sex trafficking crimes. (See Am. Cmplt. (Dkt. No. 12)) Plaintiff Radar Online is an online investigative news outlet and Plaintiff Robertson is one of its senior editors. (Id. ¶¶ 2-3)

  Plaintiffs submitted their FOIA request to the Federal Bureau of Investigation ("FBI") on April 20, 2017. (Id. ¶ 10) Plaintiffs received no response, and filed this action on May 25, 2017. (Cmplt. (Dkt. No. 1)) The Amended Complaint was filed on August 28, 2017. (Am. Cmplt. (Dkt. No. 12)) After an initial case management conference on September 7, 2017, the FBI agreed to begin producing documents at a rate of 500 pages per month. The FBI has now processed 11,571 responsive pages, most of which were redacted in part or withheld in full based on certain exemptions to disclosure under FOIA. (Second Seidel Decl. (Dkt. No. 58) ¶ 3)

  In July 2019, Jeffrey Epstein was arrested and charged with new Federal offenses, at which point the FBI asserted Exemption 7(A) to FOIA – the exemption for "records or information compiled for law enforcement purposes[,] . . . [the disclosure of which] could

reasonably be expected to interfere with enforcement proceedings" 5 U.S.C. § 552(b)(7)(A) – over pages that were previously processed and withheld and over all "remaining responsive records." (Id. ¶ 7)

On December 10, 2020, this Court directed the parties to file cross-motions for summary judgment. (Dkt. No. 26)  In a September 19, 2023 order (the "Summary Judgment Order"), this Court granted in part and denied in part each side's cross-motion. (Summary Judgment Order (Dkt. No. 51))  In its Order, this Court directed the parties to file a joint letter addressing next steps, including a proposed schedule for the FBI's revised declarations and any renewed motions for summary judgment. (Id. at 54)[1]  On October 3, 2023, this Court set a briefing schedule for the parties' renewed cross-motions for summary judgment. (Dkt. No. 53)

For the reasons stated below, the FBI's motion for summary judgment will be granted, and Plaintiffs' motion for summary judgment will be denied.

## BACKGROUND[2]

### I.   FACTS

In support of its renewed summary judgment motion, the FBI submitted a revised declaration from Maureen Comey, an Assistant United States Attorney ("AUSA") in the United States Attorney's Office for the Southern District of New York. (Third Comey Decl. (Dkt. No. 59) ¶ 1), and a revised declaration from Michael G. Seidel, the Section Chief of the Record/Information Dissemination Section ("RIDS") of the FBI's Information Management Division ("IMD"). (Second Seidel Decl. (Dkt. No. 58) ¶ 1)

---

[1] The page numbers referenced in this opinion correspond to the page numbers designated by this District's Electronic Case Files ("ECF") system.
[2] The relevant facts and procedural history are set forth in greater detail in the Summary Judgment Order and are only summarized below. (Summary Judgment Order (Dkt. No. 51)) Familiarity with the Summary Judgment Order is assumed.

A.  **Plaintiffs' FOIA Request and the Instant Action**

Epstein was a financier who in June 2008 pleaded guilty to "a criminal charge of procuring prostitution of a minor," and served thirteen months of an eighteen-month sentence. (Second Seidel Decl. (Dkt. No. 58) ¶ 6)  On April 20, 2017, Plaintiff Robertson submitted a FOIA request to the FBI seeking "all documents relating to the FBI's investigation and prosecution" of Epstein.  (First Seidel Decl., Ex. A. (FOIA Request) (Dkt. No. 50-1) at 4)

On July 2, 2019, Epstein was indicted by a federal grand jury in this District on "one count of conspiracy to commit sex trafficking . . . [and] one count of sex trafficking." (Second Seidel Decl. (Dkt. No. 58) ¶ 6 (citing United States v. Epstein, 19 Cr. 490 (RMB) (S.D.N.Y.), Indictment (Dkt. No. 2)))  After the July 2, 2019 indictment, the FBI "began to categorically assert Exemption 7(A) with respect to information in the remaining documents it was processing . . . on the basis that release could negatively impact the then-pending prosecution of Jeffrey Epstein and any related investigations."  (Id. ¶ 7)  The FBI further "asserted Exemption 7(A) over all information that had been withheld under other exemptions prior to that date."  (Id.)

Epstein committed suicide at the Metropolitan Correction Center in Manhattan on August 10, 2019, while the charges against him were pending.  (Id. (citing United States v. Epstein, 19 Cr. 490 (RMB), Nolle Prosequi (Dkt. No. 52)))

B.  **The Prosecution of Ghislaine Maxwell**

On June 29, 2020, Ghislaine Maxwell was indicted by a grand jury in this District on "one count of conspiracy to entice minors to travel to engage in illegal sex acts"; "one count of enticement of a minor to travel to engage in illegal sex acts"; "one count of conspiracy to transport minors with intent to engage in criminal sexual activity"; "one count of transportation

3

of a minor with intent to engage in criminal sexual activity"; "and two counts of perjury." (Third Comey Decl. (Dkt. No. 59) ¶ 6)

On December 29, 2021, a jury found Maxwell guilty of enticing a minor to travel to engage in illegal sex acts, transporting minors with the intent to engage in criminal sexual activity, and three related conspiracy counts. (Third Comey Decl. (Dkt. No. 59) ¶ 8; 20 Cr. 330, Dkt. Sheet at Dec. 29, 2021) On June 28, 2022, Maxwell was sentenced to 20 years' imprisonment. (Third Comey Decl. (Dkt. No. 59) ¶ 8; 20 Cr. 330, Judgment (Dkt. No. 696))

On July 7, 2022, Maxwell appealed her conviction to the Second Circuit. (Third Comey Decl. (Dkt. No. 59) ¶ 9) Maxwell seeks, inter alia, "a new trial based on alleged juror misconduct and alleged evidentiary issues." (Id.) Her appeal remains pending. (Id. ¶ 8)

## II.     THE SEPTEMBER 19, 2023 SUMMARY JUDGMENT ORDER

In its September 19, 2023 Order, this Court granted the FBI summary judgment as to records withheld under Exemption 3 pursuant to the Child Victims' Act (Summary Judgment Order (Dkt. No. 51) at 26); Exemption 5 for attorney work-product privilege (id. at 31-33); Exemptions 6 and 7(C) to protect persons from an unwarranted invasion of personal privacy (id. at 33-42); Exemption 7(D) to protect confidential information provided by local law enforcement agencies (id. at 47-48); and Exemption 7(E) to protect against disclosure of law enforcement techniques, procedures, and guidelines. (Id. at 48-51)

As to Exemption 7(A), this Court found that the FBI's invocation of this Exemption was timely and that the requested records were compiled for law enforcement purposes and related to a pending or prospective law enforcement proceeding. (Id. at 11-18) The FBI, however, "ha[d] not explicitly linked any of the document categories – whether Seidel's or Comey's – to the four types of potential harm cited in the 2021 Comey declaration."

4

(Id. at 21)  As a result, this Court denied the FBI's motion for summary judgment without prejudice as to Exemption 7(A) because the FBI had not demonstrated that the disclosure of the requested records would interfere with pending or prospective law enforcement proceedings. (Id. at 18-25)

This Court also denied without prejudice the FBI's motion for summary judgment as to records withheld under Exemption 3 pursuant to the Juvenile Justice and Delinquency Act, 18 U.S.C. § 5038, which shields the arrest information and criminal history of third-party juveniles, and Fed. R. Crim. P. 6(e), which shields matters occurring before the grand jury.  (Id. at 26-31)

Finally, this Court denied without prejudice the FBI's motion for summary judgment as to records withheld under Exemption 7(D) for the protection of information provided under an explicit or implicit assurance of confidentiality, and for information provided by foreign agencies.  (Id. at 42-47)

As noted above, in the Summary Judgment Order, this Court directed the parties to submit a joint letter as to next steps, and to propose a "schedule for the FBI's submission of revised declarations, as well as any renewed motions for summary judgment."  (Id. at 54)  After the parties submitted a joint letter (Dkt. No. 52), this Court issued an October 3, 2023 order setting a briefing schedule for the parties' renewed cross-motions for summary judgment.  (Dkt. No. 53)

On January 30, 2024, the parties filed their renewed cross-motions for summary judgment. (Dkt. Nos. 56, 61)

## DISCUSSION

### I. LEGAL STANDARDS

#### A. Rule 56 Standard

Summary judgment is warranted where the moving party shows that "there is no genuine dispute as to any material fact" and that it "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir. 2008). "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994) (citing Dister v. Cont'l Grp., Inc., 859 F.2d 1108, 1114 (2d Cir. 1988)).

In deciding a summary judgment motion, the Court "'resolve[s] all ambiguities, and credit[s] all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment.'" Spinelli v. City of New York, 579 F.3d 160, 166 (2d Cir. 2009) (quoting Brown v. Henderson, 257 F.3d 246, 251 (2d Cir. 2001) (internal quotation marks and citation omitted)). However, a "'party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment. . . . [M]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist.'" Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (alterations in original) (quoting Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995)).

6

"The same standard[s] appl[y] where, as here, the parties file[] cross-motions for summary judgment. . . ." Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir. 2001). "[W]hen both parties move for summary judgment, asserting the absence of any genuine issues of material fact, a court need not enter judgment for either party. Rather, each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." Id. (internal citations omitted).

B. **Summary Judgment in FOIA Cases**

"Summary judgment is the procedural vehicle by which most FOIA actions are resolved." Jones-Edwards v. Appeal Bd. of Nat. Sec. Agency Cent. Sec. Agency, 352 F. Supp. 2d 420, 423 (S.D.N.Y. 2005). "In order to prevail on a motion for summary judgment in a FOIA case, the defending agency has the burden of showing that [1] its search was adequate[,] and [2] any withheld documents fall within an exemption to the FOIA." Carney v. U.S. Dept. of Justice, 19 F.3d 807, 812 (2d Cir. 1994).

A government agency may sustain its burden through "'[a]ffidavits or declarations [that] supply[] facts indicating that the agency has conducted a thorough search and [that] giv[e] reasonably detailed explanations why any withheld documents fall within an exemption.'" Associated Press v. U.S. Dept. of Justice, 2007 WL 737476, at *3 (S.D.N.Y. Mar. 7, 2007) (quoting Carney, 19 F.3d at 812); accord Garcia v. U.S. Dept. of Justice, Office of Info. & Privacy, 181 F. Supp. 2d 356, 366 (S.D.N.Y. 2002). "'[T]he general rule in this Circuit is that in FOIA actions, agency affidavits alone will support a grant of summary judgment,' and Local Civil Rule 56.1 statements are not required." N.Y. Times Co. v. U.S. Dept. of Justice, 872 F. Supp. 2d 309, 314 (S.D.N.Y. 2012) (quoting Ferguson v. FBI, 1995 WL 329307, at *2 (S.D.N.Y.

June 1, 1995), aff'd, 83 F.3d 41 (2d Cir. 1996)). "Affidavits submitted by an agency are presumed to have been made in good faith." Garcia, 181 F. Supp. 2d at 366.

"[D]iscovery relating to the agency's search and the exemptions it claims for withholding records generally is unnecessary if the agency's submissions are adequate on their face." Carney, 19 F.3d at 812. "A district court . . . may grant summary judgment in favor of an agency 'on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith.'" Grand Cent. P'ship, Inc. v. Cuomo, 166 F.3d 473, 478 (2d Cir. 1999) (emphasis in original) (quoting Gallant v. N.L.R.B., 26 F.3d 168, 171 (D.C. Cir. 1994)). A plaintiff may avoid summary judgment and obtain discovery where, "once the agency has satisfied its burden, the plaintiff . . . make[s] a showing of bad faith on the part of the agency . . . or provide[s] some tangible evidence that an exemption claimed by the agency should not apply." Conti v. U.S. Dept. of Homeland Sec., 2014 WL 1274517, at *10 (S.D.N.Y. Mar. 24, 2014).

## II.     FOIA EXEMPTION 7(A)

The FBI again argues that all of the withheld records responsive to Plaintiffs' FOIA request were properly withheld under Exemption 7(A) to FOIA. (See Def. Br. (Dkt. No. 57) at 10-21; Second Comey Decl. (Dkt. No. 47); Third Comey Decl. (Dkt. No. 59)) Plaintiff responds that the FBI's declarations do not link any of the document categories to potential harms. (Pltf. Br. (Dkt. No. 62) at 3-4) According to Plaintiffs, "[w]hile [the FBI declarations] now divide[] the material at issue into a greater number of categories, [they] offer[] nothing to substantiate how releasing records within that category will likely result in harm." (Id. at 3 (emphasis in original))

8

A.      **Applicable Law**

Exemption 7(A) to FOIA permits government agencies to withhold "records or information compiled for law enforcement purposes" where "the production of such law enforcement records or information . . . could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). "This exemption 'prevent[s] harm to the government's case in court by not allowing litigants earlier or greater access to agency investigatory files than they would otherwise have.'" N.Y. Times Co. v. United States Dept. of Justice, 2016 WL 5946711, at *7 (S.D.N.Y. Aug. 18, 2016) (quoting Conti, 2014 WL 1274517, at *22). "[I]f the exemption applies, it 'will justify denial of release, not only to the objects of the investigation and any pending or prospective enforcement actions, but to third parties as well.'" Stein v. U.S. Sec. & Exch. Comm'n, 2017 WL 3141903, at *11 (D.D.C. July 24, 2017) (quoting Kanter v. IRS, 433 F. Supp. 812, 817 (N.D. Ill. 1977)).

In order to demonstrate that Exemption 7(A) applies, the government must show that (1) "the requested records were compiled for law enforcement purposes," Local 32B-32J, Serv. Employees Int'l Union, AFL-CIO v. Gen. Servs. Admin., 1998 WL 726000, at *7 (S.D.N.Y. Oct. 15, 1998) (internal quotation marks omitted); (2) "a law enforcement proceeding is pending or prospective," Amnesty Int'l USA v. C.I.A., 728 F. Supp. 2d 479, 525 (S.D.N.Y. 2010); and (3) "release of the information could reasonably be expected to cause some articulable harm." Id.

"'[A]lthough [courts] give deference to an agency's predictive judgment of the harm that will result from disclosure of information, it is not sufficient for the agency to simply assert that disclosure will interfere with enforcement proceedings; it must rather demonstrate how disclosure will do so.'" Stein, 2017 WL 3141903, at *9 (quoting Citizens for Responsibility

9

& Ethics in Wash. v. U.S. Dept. of Justice ("CREW I"), 746 F.3d 1082, 1096 (D.C. Cir. 2014)) (emphasis in CREW I). "Ultimately, the government must 'allow[] the court to trace a rational link between the nature of the document and the alleged likely interference.'" N.Y. Times Co., 2016 WL 5946711, at *7 (quoting Ctr. for Nat'l Sec. Studies v. U.S. Dept. of Justice, 331 F.3d 918, 940 (D.C. Cir. 2003)).

### B. Interference with Law Enforcement Proceedings and the Applicability of Exemption 7(A)

The FBI contends that "the records responsive to the FOIA requests withheld in full or in part . . . [a]ll . . . fall within the scope of Exemption 7(A)" (Third Comey Decl. (Dkt. No. 59) ¶ 11), because their "public disclosure . . . could reasonably be expected to interfere with the pending prosecution of [Ghislaine] Maxwell." (Id. ¶ 12)

In previously denying the FBI summary judgment as to the applicability of Exemption 7(A), this Court noted that (1) the Seidel and Comey Declarations submitted in support of this request categorized the documents at issue inconsistently; and (2) "the FBI has not explicitly linked any of the document categories . . . to the four types of potential harm cited in the [First] Comey declaration." (Summary Judgment Order (Dkt. No. 51) at 21)

The First Comey Declaration grouped the responsive records sought by Plaintiffs and withheld by the FBI into three categories: (1) "[i]nterview forms, reports and notes . . . of interviews with individuals, including victims"; (2) "Federal Grand Jury Subpoenas and Subpoenaed information"; and (3) "documents provided by state and local law enforcement agencies, . . . . background information for witnesses . . . and subjects for the investigation[,] communications within the FBI [and between the FBI and other agencies] regarding the investigation[,] organizational documents, . . . the sources from and techniques through which

10

such information and evidence was gathered[,] . . . the methods used to analyze the information and evidence, . . . and the focus of the investigation." (First Comey Decl. (Dkt. No. 39) ¶ 11)

The First Seidel Declaration – on the other hand – speaks of nine "types of responsive records"[3] and three "functional categories of information":

(1) "Evidentiary/Investigative Materials," including "confidential witness statements" and "information exchanged between the FBI and its local law enforcement partners";

(2) "Administrative [M]aterials," including internal agency "reporting communications" pertaining to an investigation, and other "standardized forms used for a variety of purposes"; and

(3) "public source material," including news articles and court transcripts which have already been "released . . . to Plaintiffs." (First Seidel Decl. (Dkt. No. 50) ¶¶ 58-68 (capitalization altered))  This Court pointed out that "[t]he document categories in the [First] Seidel [D]eclaration and in the [First] Comey Declaration do not match, and documents falling within each of the Comey categories likely span multiple categories described by Seidel." (Summary Judgment Order (Dkt. No. 51) at 21)

The FBI now relies on the First Seidel Declaration's three "functional categories of information" – (1) Evidentiary/Investigative materials, (2) Administrative Materials, and (3) Public Source/Non-Investigative Harm.  (First Seidel Decl. (Dkt. No. 50) ¶ 59) – and the Third Comey Declaration submitted in support of the FBI's instant motion adopts the same categorization.  (See Third Comey Decl. (Dkt. No. 59) 13)  With the Government's

---

[3] (1) "FD-1057 - Electronic Communication"; (2) "Interview Forms (FD-302)"; (3) "Handwritten Interview Notes"; (4) "State and Local Law Enforcement Documents"; (5) "Documents Implementing Sensitive Investigative Techniques"; (6) "Federal Grand Jury Subpoenas/Subpoenaed Information"; (7) "FD-340, IA Envelopes"; (8) "Other Investigative Documents"; and (9) "Internet Printouts." (First Seidel Decl. (Dkt. No. 50) ¶¶ 58-68 (formatting altered))

categorization of responsive documents now consistent, this Court can move on to consider whether the FBI has linked these document categories to potential harms and explained how those harms could "reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A).

As to the harm that would result from disclosure, the FBI notes that "the Maxwell criminal prosecution is still pending on appeal," and "[i]f the Second Circuit grants Maxwell the relief she seeks, there could be a new trial." (Third Comey Decl. (Dkt. No. 59) ¶ 12) Accordingly, "public disclosure of the FBI's records relating to the investigation and prosecution of Epstein that were withheld in full or in part under Exemption 7(A) could reasonably be expected to interfere with the pending prosecution of Maxwell." (Id.)

As discussed below, in the FBI's revised declarations filed in support of the instant motion, the Bureau now lists the potential harms that may arise from public disclosure, and does so as to each category of documents.

The first category of documents – Evidentiary/Investigative Materials – "includes copies of records or evidence, analysis of that evidence, and derivative communications summarizing or otherwise referencing evidence." (Third Comey Decl. (Dkt. No. 59) ¶ 14) This category includes business records and "documents and evidence provided by witnesses to law enforcement," as well as information regarding those witnesses. (Id.)

The second category of documents – Administrative Materials – consists of

> internal communications among investigators within the FBI providing updates regarding the status of the investigation, including witness interviews and discussion of evidence gathered during the investigation; communications between the FBI and other government agencies regarding the investigation; grand jury subpoenas identifying the names of witnesses and documents sought during the investigation; and organizational documents such as envelopes used to organize and store documents and other evidentiary documents, bulky exhibit

12

cover sheets, transmittal forms, and letter routing slips, some of which contain the names of witnesses, including victim-witnesses, and subjects of the investigation. (Id. ¶ 15)

As for the harm that would result from disclosure of the Evidentiary/Investigative Materials and the Administrative Materials, the FBI states that disclosure would (1) impact witness testimony, (2) impact witnesses' willingness to testify, (3) prejudice the jury pool "so as to hinder the Government's ability to present its case in court,"[4] (4) provide Maxwell with greater access "to the investigatory files than she would otherwise have during the criminal

---

[4] In connection with its previous summary judgment motion, the FBI described the harm that would result from disclosure as "impair[ing] the Government's (and the defendant's) ability to seat a fair and impartial jury in Maxwell." (First Comey Decl. (Dkt. No. 39) ¶¶ 17-19) In denying the FBI's motion as to Exemption 7(A), this Court noted that "the FBI's concerns regarding the effects of disclosure on jury impartiality are properly raised under Exemption 7(B), and not under Exemption 7(A)." (Summary Judgment Order (Dkt. No. 51) at 22 n.10) "Exemption 7(B) applies . . . when the disclosure of law enforcement records would deprive a person of the right to 'a fair trial or an impartial adjudication[,]' . . . [and] the word 'trial' means the ultimate determination of factual and legal claims by judge or jury in a judicial proceeding." Chiquita Brands Int'l Inc. v. S.E.C., 805 F.3d 289, 295 (D.C. Cir. 2015) (quoting 5 U.S.C. § 552(b)(7)(B)); see also Washington Post Co. v. U.S. Dep't of Just., 863 F.2d 96, 101 (D.C. Cir. 1988) ("The exemption[] . . . was meant to prevent disclosures from conferring an unfair advantage upon one party to an adversary proceeding or leading to prejudicial publicity in pending cases that might inflame jurors or distort administrative judgment.").

In connection with its current motion, the FBI states that "the harm the government is articulating through a risk of prejudicing the jury pool is the harm of prejudicing the government's ability to present its criminal case in court." (Def. Br. (Dkt. No. 57) at 17-18 (emphasis in original)) In this regard, the Government states that because the "majority of records in this category . . . were not admitted into evidence at Maxwell's first trial[,] . . . the jury may wonder why those materials were absent from the trial and may suspect the government of trying to hide evidence from the jury, causing jurors to draw an unwarranted adverse inference against the government." (Id. at 16 (citing Third Comey Decl. (Dkt. No. 59) ¶ 14(c))) Accordingly, the harm now identified by the FBI is not prejudice to the parties' right to a fair and impartial jury, but instead unfair prejudice to the Government in presenting its case. This type of potential harm is properly raised under Exemption 7(A).

13

discovery process," and (5) violate the Protective Order entered in the underlying case. (Id. ¶¶ 14(a)-(e), 15(a)-(d))

In response, Plaintiffs renew their argument that the FBI has not linked the document categories to any potential harm. (Pltf. Br. (Dkt. No. 62) at 3) According to Plaintiffs, "the FBI insists that these are simply the kinds of documents that would tend to cause harm if released, without engaging the reality on the ground that the target of the investigation has seen millions of records and was convicted in one of the most high-profile trials in U.S. history." (Id.) Plaintiffs also point out that "there is no new substantive factual information offered" in the revised declarations or the FBI's current motion for summary judgment. (Id.)

The standard for application of Exemption 7(A) is not whether the "target of the investigation has seen millions of records," however, or whether an agency has proffered "substantive factual information" in support of a claimed exemption. Instead, an agency "must explain to the court how the release of each category would interfere with enforcement proceedings." Tipograph v. Dep't of Just., 83 F. Supp. 3d 234, 239 (D.D.C. 2015) (quoting Bevis v. Dep't of State, 801 F.2d 1386, 1389-90 (D.C.Cir. 1986)). "The agency need not justify the withholding of each document with specific facts," however. Robbins Geller Rudman & Dowd LLP v. United States Sec. & Exch. Comm'n, 419 F. Supp. 3d 523, 530 (E.D.N.Y. 2019). Instead, the agency need only make a showing that "allow[s] the court to be able to 'trace a rational link between the nature of the document and the alleged likely interference.'" Id. (quoting N.Y. Times Co., 2016 WL 5946711, at *7).

The FBI has met that burden here. Unlike in its previous motion (see Summary Judgment Order (Dkt. No. 51) at 22-23), the FBI has described the contents of each category and linked specific harms that would result from the public disclosure of the documents in each

14

category. For example, the FBI has explained that public disclosure of the Evidentiary/Investigative Materials "could influence the testimony of witnesses by providing the opportunity for witnesses to shape their testimony to conform with other evidence gathered during the investigation, including both records and witness statements." (Third Comey Decl. (Dkt. No. 59) ¶ 14(a)) Disclosure of the Evidentiary/Investigative Materials could also have a chilling effect on witnesses because "[t]he public release of this information could lead to the identification and intimidation of witnesses, who may decline to cooperate with the parties and be disinclined to testify if their personal information is released to the public." (Id. ¶ 14(b)) Public disclosure could also cause unfair prejudice to the Government at a retrial, based on the fact that certain documents were available to the Government but not offered at the first trial. Finally, public disclosure would provide Maxwell with greater access to investigatory materials than she would otherwise have. (Id. ¶¶ 14(c)-(e), 15(a)-(d))

"Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." Larson v. Dep't of State, 565 F.3d 857, 862 (D.C. Cir. 2009) (internal citation and quotations omitted). Given the information contained within each category, and the potential harm that could result from public disclosure – as described in the Second Seidel Declaration and the Third Comey Declaration – the FBI has adequately demonstrated the necessary logical and plausible connection between disclosure and harm.

Plaintiffs argue, however, that

> (1) much of the evidence is already the subject of public record from the prior trial and other civil proceedings; (2) much of the evidence is otherwise in the public domain; and (3) the government makes no effort to segregate this material or particularize how the exposure of this material would influence witness testimony.

(Pltf. Br. (Dkt. No. 62) at 3)

The FBI has explained, however, that the exhibits admitted at trial "represent a small fraction of the documents contained in [the Evidentiary/Investigative Materials] category." The Government further represents that it "has made available to the press upon request copies of all publicly admitted exhibits from the trial" and is willing to "provide a copy of those publicly filed exhibits to the Plaintiffs upon request." (Third Comey Decl. (Dkt. No. 59) ¶ 14(f)) In connection with the instant FOIA application, the FBI has also reviewed responsive records "on a document-by-document basis" (Second Seidel Decl. (Dkt. No. 58) at 2) and has separated "publicly available news reporting and other open source materials that are already accessible online through public sources" into a third category that "ha[s] already been produced to Plaintiffs." (Third Comey Decl. (Dkt. No. 59) ¶ 16) Finally, "an agency may satisfy its burden of proof 'by grouping documents in categories and offering generic reasons for withholding the documents in each category.'" CREW I, 746 F.3d at 1098 (quoting Maydak, 218 F.3d at 765).

> Where an agency wishes to adopt the generic approach, [it] has a three-fold task. First, it must define its categories functionally. Second, it must conduct a document-by-document review in order to assign documents to the proper category. Finally, it must explain to the court how the release of each category would interfere with enforcement proceedings.

Id., 746 F.3d at 1098 (quoting Bevis, 801 F.2d at 1389-90). As discussed above, the FBI has "defined its categories functionally"; it has performed "a document-by-document review in order to assign documents to the proper category"; and it has explained how the disclosure of each category would interfere with enforcement proceedings.

In connection with the harm element, the FBI has explained that the public disclosure of the materials at issue could influence witness testimony by "providing the opportunity for witnesses to shape their testimony to conform with [what is set forth in the non-public records]." (Third Comey Decl. (Dkt. No. 59) ¶¶ 14(a), 15(a)) "Courts allow withholding

16

under Exemption 7(A) [where] . . . '[p]ublic disclosure of information could result in destruction of evidence, chilling and intimidation of witnesses, and revelation of the scope and nature of the Government's investigation.'" Tipograph, 83 F. Supp. 3d at 239 (quoting Solar Sources, Inc. v. United States, 142 F.3d 1033, 1039 (7th Cir. 1998)). Indeed, "Exemption 7 was designed to prevent harm to the government's case in court by not allowing litigants earlier or greater access to agency investigatory files than they would otherwise have." Conti, 2014 WL 1274517, at *22 (citing Robbins Tire & Rubber Co., 437 U.S. at 224-25); see also New York Times, 2016 WL 5946711, at *13 ("Such explanations are sufficient to establish that the withholdings conceal records compiled for law enforcement purposes that disclose techniques and procedures for law enforcement investigations, and, therefore, justify nondisclosure.").

    These paradigmatic harms are among the harms that the FBI now alleges would result from disclosure of the Evidentiary/Investigative Materials and the Administrative Materials. While the FBI previously failed to link these potential harms to each document category, it has now done so. There is no need for the FBI to further "particularize how the exposure of this material would influence witness testimony." (Pltf. Br. (Dkt. No. 62) at 3) "[T]he record establishes that the release of the requested information could reasonably be expected to cause articulable harm." Cui v. Fed. Bureau of Investigation, 551 F. Supp. 3d 4, 24 (E.D.N.Y. 2021)

    This Court concludes that "[t]he [revised] declarations provide[] sufficient detail for the Court to trace a rational link between the information contained in the records and the potential interference with law enforcement proceedings," id. at 24, and the FBI has thus met its burden for withholding disclosure of the records under Exemption 7(A). Because "Exemption

17

7(A) continues to be asserted to protect all redacted information," (Second Seidel Decl. (Dkt. No. 58) ¶ 8), this Court need not evaluate the applicability of the other Exemptions.

## III.   SEGREGABILITY

"FOIA . . . provides that '[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt.'" Conti, 2014 WL 1274517, at *25 (quoting 5 U.S.C. § 552(b)). "[T]he agency must provide a detailed justification for its decision that non-exempt material is not segregable," but "is entitled to a presumption that it complied with its obligation to disclose reasonably segregable material." Id. (citing Mead Data Cent., Inc. v. U.S. Dept. of Air Force, 566 F.2d 242, 261 (D.C. Cir. 1977)). "[T]o justify withholding an entire document[,] the DOJ . . . must demonstrate that [it] cannot delineate between exempt and non-exempt information therein." Ayyad v. U.S. Dept. of Justice, 2002 WL 654133, at *2 (S.D.N.Y. Apr. 18, 2002).

Here, the FBI states that it has reviewed responsive records on a "document-by-document basis" and conducted a segregability review concerning 11,571 responsive pages. (Second Seidel Decl. (Dkt. No. 58) at 2, 20-21). The FBI further represents that "to the extent there is non-exempt information contained in the records withheld under Exemption 7(A), that information is intertwined with exempt information and cannot reasonably be segregated without risking interference with the Maxwell prosecution, referencing the harms described [previously]." (Def. Br. (Dkt. No. 57) at 30; Third Comey Decl. (Dkt. No. 59) ¶ 17) According to the FBI, "[t]he media coverage of speculation and theories about Maxwell's association with Epstein makes the segregation of any possibly non-exempt information particularly difficult because providing information pertaining to Epstein without complete context can reasonably be

expected to contribute to the dissemination of speculation and theories about the Maxwell case." (Third Comey Decl. (Dkt. No. 59) ¶ 17)

"An agency's explanation that records are exempt in their entirety is sufficient to satisfy its segregability obligations with respect to the documents withheld under Exemption 7(A)." New York Times Co. v. United States Dep't of Just., 390 F. Supp. 3d 499, 519 (S.D.N.Y. 2019); Stein v. U.S. Sec. & Exch. Comm'n, 266 F. Supp. 3d 326, 353 (D.D.C. 2017) ("[T]he SEC has sufficiently described two categories of documents that it has withheld under Exemption 7(A) in their entirety, and explained that it is not possible to segregate non-exempt information from these documents, except as the Court has described above.  This is sufficient to satisfy the agency's segregability obligations with respect to the documents withheld under Exemption 7(A)."); Dillon v. Dep't of Just., 102 F. Supp. 3d 272, 298 (D.D.C. 2015) (concluding that the FBI satisfied its segregability obligation under FOIA by stating that it had "carefully reviewed the material withheld" and explained that "segregability is not possible because [the records] are exempt from disclosure [in their entirety] pursuant to Exemption 7(A)" (second alteration in original)).  This Court concludes that the FBI has satisfied its segregability burden with respect to the documents withheld in full under Exemption 7(A).

## **CONCLUSION**

For the reasons stated above, Defendant's motion for summary judgment (Dkt. No. 56) is granted, and Plaintiffs' cross-motion for summary judgment (Dkt. No. 61) is denied.

The Clerk of Court is directed to terminate the motions (Dkt. Nos. 56, 61) and to close this case.

Dated: New York, New York
      June 25, 2024                    SO ORDERED.

*Paul G. Gardephe*
Paul G. Gardephe
United States District Judge